**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARL D. CACHIA, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: |
| Plaintiff, | CLASS ACTION |
| vs. | <u>DEMAND FOR JURY TRIAL</u> |
| BELLUS HEALTH INC., ROBERTO BELLINI and FRANCOIS DESJARDIS, | |
| Defendants. | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF**
**THE FEDERAL SECURITIES LAWS**

Plaintiff Carl D. Cachia ("Plaintiff" or "Mr. Cachia"), by his attorneys, on behalf of himself and on behalf of all others similarly situated, makes these allegations against BELLUS Health Inc. ("BELLUS" or the "Company"), Roberto Bellini ("Bellini"), and François Desjardins ("Desjardins") (collectively, "Defendants") based upon personal knowledge as to his own acts and on information and belief as to all other matters. Plaintiff based this information and belief on, among other things, the investigation conducted by counsel, which includes a review of: U.S. Securities and Exchange Commission ("SEC") filings by the Company; securities analysts' reports and advisories; the Company's press releases and other public statements; media reports; and other publicly available information. Counsel's investigation into the matters alleged herein is ongoing and many relevant facts are known only to Defendants or are exclusively within their custody or control. Plaintiff's investigation indicates substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired BELLUS securities between September 5, 2019 and July 5, 2020, inclusive (the "Class Period"), and were damaged thereby. This Action seeks to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      BELLUS is a clinical-stage biopharmaceutical company whose lead product is BLU-5937, which is being developed for the treatment of chronic cough (one that lasts over eight weeks) and other afferent hypersensitization-related disorders.

3.      There is no FDA-approved treatment for chronic cough, but research has indicated that roughly 10% of adults develop chronic cough during their lives. Thus, a large opportunity exists for drugmakers that can obtain FDA approval for a treatment.

4.     Merck & Co. ("Merck") has been leading the race to develop the first U.S. Food and Drug Administration ("FDA") approved treatment for chronic cough. In March 2020, Merck announced that its experimental drug, Gefapixant, had met its primary endpoint in two Phase 2 studies. However, side effects of taste alteration or loss of taste were reported in 80% of the patients on Gefapixant.

5.     Although it was behind Merck in the clinical development process, BELLUS's sole drug product, BLU-5937, uses a similar mechanism to treat chronic cough in that both work by blocking P2X3 receptors.[1] Throughout the Class Period, Defendants touted that because BLU-5937 was more selective than Gefapixant, it would come with a better safety profile and would not have the side effects of taste alteration or loss of taste. As a result, Defendants misled investors into believing that the Phase 2 study for Bellus's BLU-5937 would demonstrate the same level of efficacy as, but a higher level of safety than, Merck's Gefapixant.

6.     Defendants knew, but failed to disclose, that BLU-5937 had a much higher risk of failing to demonstrate efficacy for chronic cough. Accordingly, despite Merck's successful Phase 2 study, BLU-5937 had a high risk of failing its Phase 2 study.

7.     Before markets opened on July 6, 2020, Defendants revealed the truth about BLU-5937's efficacy. They announced that the drug had failed a Phase 2 study of chronic cough patients for whom other treatments had not worked. Specifically, BLU-5937 was not significantly better than a placebo at reducing the frequency at which patients coughed. The Phase 2 trial showed a "clinically meaningful and highly statistically significant" effect only on a subset of patients who had high cough counts (around 32 per day), so the Company was planning a Phase 2b trial focused

---

[1] P2X3 receptors are natural mediators of pain, inducers of neurogenic inflammation, and known to play a role in the cough reflex.

on those patients.[2]

8.      On this news, indicating that Bellus had fallen even further behind Merck in developing an FDA-approved treatment for refractory chronic cough, the Company's stock price plummeted over 75% to close at $2.97 on July 8, 2020 on heavy trading volume.

9.      In short, Defendants' scheme: (i) deceived the investing public regarding BELLUS's business, operations, drug products, drug product development, competition, and present and future business prospects; (ii) facilitated the Company's September 2019 public offering ("Offering"); (iii) created artificial demand for the BELLUS common shares sold in the Offering; (iv) enabled the Company to receive approximately $70 million in net proceeds from the sale of BELLUS common stock in the Offering; and (v) caused Plaintiff and the Class to purchase BELLUS publicly traded common stock at artificially inflated prices.

10.      As a result of Defendants' materially misleading statements and omissions that obscured the true facts throughout the Class Period until they were revealed on July 6, 2020, causing a precipitous decline in the market value of BELLUS's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.      JURISDICTION AND VENUE

11.      The claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

12.      This Court has jurisdiction over the subject matter of this action under § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States of America.

---

[2] Unless otherwise noted, internal citations are omitted and emphasis is added throughout.

13.     Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa(c), and 28 U.S.C. § 1391(b)-(d). Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

14.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, without limitation, the U.S. mail, interstate telephone and other electronic communications, and the facilities of the NASDAQ Global Select Market ("NASDAQ"), a national securities exchange.

III.    **PARTIES**

15.     Plaintiff Cacchia, as set forth in the accompanying certification incorporated by reference herein, purchased BELLUS Class A Common Stock (hereinafter "common stock" or "common shares") during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and material omissions alleged herein.

16.     Defendant BELLUS is a clinical-stage biopharmaceutical company developing novel therapeutics for the treatment of chronic cough and other hypersensitization-related disorders. The Canadian Company was incorporated on April 12, 2012, under the Canada Business Corporations Act, as successor of BELLUS Health Inc., a company incorporated on June 17, 1993 (formerly known as Neurochem Inc. prior to April 15, 2008). The Company has two wholly-owned subsidiaries, BELLUS Health Cough Inc., which is also incorporated under the Canada Business Corporations Act, and BELLUS Health Corp. incorporated under the laws of the state of Delaware. The Company maintains its headquarters in Laval, Québec and its common stock is listed and trades on the NASDAQ under the ticker symbol "BLU."

17.    Defendant Bellini is, and has been since January 1, 2010, the President and Chief Executive Officer ("CEO") of BELLUS.

18.    Defendant Desjardins is, and has been since 2009, the Vice President, Finance of BELLUS.

19.    Defendants Bellini and Desjardins are collectively referred to hereinafter as the "Individual Defendants."

20.    Because of the Individual Defendants' executive positions, they each had access to the undisclosed adverse information about BELLUS's business, operations, services, competition, competitive market trends, and present and future business prospects *via* internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof.

21.    Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, drug products, drug product development, competition, and present and future business prospects, as alleged herein. In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and/or misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and/or misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

22.    As officers and controlling persons of a publicly held company whose common stock is registered with the SEC pursuant to the Exchange Act and trades on the NASDAQ, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's

operations, business, drug products, drug product development, competition, and present and future business prospects. In addition, the Individual Defendants each had a duty to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded common shares would be based upon truthful and accurate information. Defendants' false and/or misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

23.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

24.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of BELLUS shares by disseminating materially false and/or misleading statements and/or concealing material adverse facts.

IV.     SUBSTANTIVE ALLEGATIONS

25.     In 2012, AstraZeneca AB ("AstraZeneca") assigned the BLU-5937 and related P2X3 antagonists intellectual property assets (the "BLU-5937 Assets") to adMare BioInnovations' NEOMED Institute ("adMare"). In 2017, adMare licensed the exclusive rights to develop and commercialize the BLU-5937 Assets to BELLUS, and in March 2020, adMare sold the BLU-5937 Assets to BELLUS.

26.     By July 9, 2018, BELLUS had initiated healthy adult dosing in a Phase 1 clinical study for BLU-5937, the main objectives of which was to assess the safety, tolerability (including taste perception) and pharmacokinetic profile of BLU-5937.[3] This was a randomized, double-blind, placebo-controlled study of orally administered BLU-5937 in up to 90 healthy adults.

27.     On November 19, 2018, BELLUS announced positive top-line results from the clinical Phase 1 study for BLU-5937 demonstrating a good safety and tolerability profile, as well as a pharmacokinetic profile supporting twice-a-day ("BID") dosing.[4] At the anticipated therapeutic doses of 50 to 100 mg, BLU-5937 did not cause any loss of taste perception; only 1 of 24 subjects reported transient taste alteration. Based on this data, the Company intended to advance BLU-5937 into a clinical Phase 2 study in chronic cough patients beginning in mid-2019.

28.     By April 30, 2019, the FDA had accepted the Company's Investigational New Drug ("IND") application, clearing the start of its Phase 2 study for BLU-5937 in chronic cough patients in the United States.[5] The Phase 2 study was a randomized, double-blind, placebo-controlled crossover, and dose-escalation study to assess the efficacy, safety, and tolerability of BLU-5937, in addition to helping confirm the optimal dose regimen.

29.     By July 30, 2019, the first patient had been enrolled in the RELIEF (A Randomized, Double-blind, Placebo-Controlled, Crossover, Dose Escalation Study of BLU-5937 in Subjects

---

[3] *BELLUS Health Initiates Phase 1 Clinical Study for its Chronic Cough Drug Candidate, BLU-5937*, BELLUS HEALTH INC. (July 9, 2018), https://ir.bellushealth.com/node/6336/pdf.

[4] *BELLUS Health Announces Positive Top-Line Phase 1 Results for its Chronic Cough Drug Candidate BLU-5937*, BELLUS HEALTH INC. (Nov. 19, 2018), https://ir.bellushealth.com/node/6301/pdf.

[5] *BELLUS Health Announces Clearance of U.S. IND for BLU-5937 Phase 2 Study in Chronic Cough Patients*, BELLUS HEALTH INC. (Apr. 3, 2019), https://ir.bellushealth.com/node/6276/pdf.

with Unexplained or Refractory Chronic Cough) Phase 2 study of BLU-5937 in chronic cough.[6] The Company had also begun developing BLU-5937 for the treatment of chronic pruritus and expected to initiate the clinical Phase 2 study in chronic pruritus associated with atopic dermatitis ("AD"), also known as eczema, in 2020.

30.     On September 3, 2019, BELLUS announced the filing of a preliminary prospectus supplement (the "Supplement") to its short form base shelf prospectus dated July 26, 2019 (the "Base Prospectus") in connection with a proposed US $60 million public offering of its common shares (the Offering), and the filing of an application to list its common shares on the NASDAQ in the United States under the ticker "BLU."[7] The Supplement and accompanying Base Prospectus were also filed with the SEC as part of a registration statement on Form F-10 (the "Registration Statement"), in accordance with the Multijurisdictional Disclosure System ("MDS") established between Canada and the United States. The Company intended to use the net proceeds of the Offering primarily to fund research and development activities, general and administrative expenses, working capital needs and other general corporate purposes.

31.     At the time of the Offering, unbeknownst to investors, because BLU-5937 was a highly selective P2X3 antagonist, it had a higher risk of failing to demonstrate efficacy for chronic cough than the leader of the pack of new drugs vying to be the first FDA approved therapy for suppressing chronic cough – Merck's P2X3 antagonist, Gefapixant. Accordingly, even though Merck had had a successful Phase 2 study, BLU-5937 had a high risk of failing BELLUS's Phase

---

[6] *BELLUS Health Announces Clearance of U.S. IND for BLU-5937 Phase 2 Study in Chronic Cough Patients*, BELLUS HEALTH INC. (Apr. 3, 2019), https://ir.bellushealth.com/node/6276/pdf.

[7] *BELLUS Health Announces the Launch of a US$60 Million Public Offering of Common Shares in Canada and the United States and the Filing of an Application to List Its Common Shares on Nasdaq*, BELLUS HEALTH INC. (Sept. 3, 2019), https://ir.bellushealth.com/node/6986/pdf.

2 study.

32.     During the Class Period, Defendants were well aware that Merck was ahead of BELLUS in the clinical path towards obtaining FDA approval, but assured investors that the Company's drug, BLU-5937, would come with a better safety profile as it was highly selective and thus would not have the side effects of taste alteration or loss of taste which were reported in 80% of patients on Gefapixant. As a result, investors were misled into believing that the Phase 2 study for BELLUS's BLU-5937 would demonstrate the same level of efficacy as, but a higher level of safety than, Merck's Gefapixant.

33.     That investors used Merck's clinical studies as a barometer for BELLUS's clinical studies was demonstrated when shares in the Company rose almost 11% after Merck released top-line efficacy results on March 17, 2020 from two ongoing Phase 3 trials (COUGH-1 and COUGH-2) evaluating the efficacy and safety of Gefapixant.[8] In these studies, the primary efficacy endpoints were met for the Gefapixant 45 mg twice daily treatment arms – demonstrating a statistically significant decrease in 24-hour coughs per hour (average hourly cough frequency based on 24-hour sound recordings) versus placebo at 12 (COUGH-1) and 24 weeks (COUGH-2).

## V.   DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

34.     The Class Period begins on September 5, 2019, the first day BELLUS common stock began publicly trading on the NASDAQ. That day, the SEC declared effective the

---

[8] Phil Taylor, *Merck's chronic cough drug gefapixant clears phase 3 test*, PHARMAPHORUM TM (Mar. 18, 2020) https://pharmaphorum.com/news/mercks-chronic-cough-drug-gefapixant-clears-phase-3-test/; *Merck Announces Top-Line Results from Phase 3 Trials Evaluating Gefapixant, an Investigational Treatment for Refractory or Unexplained Chronic Cough*, BUSINESS WIRE (Mar. 17, 2020 06:45 AM ET), https://www.businesswire.com/news/home/20200317005183/en/Merck-Announces-Top-Line-Results-Phase-3-Trials.

Registration Statement containing the Supplement and Base Prospectus filed with the SEC in accordance with the MDS.[9] The Registration Statement remained alive and uncorrected throughout the Class Period.

35.     The Registration Statement contained materially false and/or misleading statements about Bellus BLU-5937 and how it compared to Merck's Gefapixant, stating in relevant part:

> Our product candidate, **BLU-5937, is a twice daily oral small molecule, specifically designed to be** a **highly selective** inhibitor of the P2X3 receptor, a clinically validated target linked to hypersensitivity. We are developing BLU-5937 for the treatment of chronic cough and chronic pruritus, or chronic itch. These hypersensitization-related disorders, which share a common pathophysiology that is mediated through the P2X3 receptor, represent areas of significant unmet medical need and potentially large market opportunities.
>
> In November 2018, we reported positive results from our Phase 1 clinical trial in 90 healthy volunteers, in which we observed that **BLU-5937 had a favorable tolerability and safety profile at all doses tested**. At doses of 50 mg to 100 mg, there was only one subject out of 24 (5%) who reported taste alteration, which was transient, sporadic and only occurred on the first day of dosing. None of the 24 subjects (0%) reported any taste loss. We believe that doses of 50 mg to 100 mg administered twice-daily (BID) would result in the desired level of therapeutic activity. **In contrast, gefapixant, a product candidate in development by Merck & Co., was reported to cause taste alteration and/or taste loss in up to 80% of patients at the therapeutically relevant dose of 50 mg BID in a Phase 2 clinical trial.**

36.     The Registration Statement specifically provided information about the clinical development of gefapixant as support for the expected efficacy and safety of BLU-5937:

> Merck & Co.'s gefapixant, a low selectivity P2X3 inhibitor, is the most advanced in clinical development and is currently undergoing clinical evaluation in two Phase 3 trials. **Gefapixant is a non-narcotic, low selectivity P2X3 inhibitor which has been shown to alleviate refractory chronic cough symptoms and improve patients' quality of life in Phase 2 clinical studies. Gefapixant's potent antitussive effect comes coupled with a significant tolerability issue in the form of taste alteration and partial or complete taste loss for a significant proportion of patients.**

---

[9] BELLUS Health Inc., Prospectus Supplement (Form SUPPL) (Sept. 5, 2019), https://www.sec.gov/Archives/edgar/data/1259942/000114420419043567/tv528906-suppl.htm.

Results from an initial Phase 2, double-blind clinical trial in patients with refractory chronic cough showed that treatment with a high dose of gefapixant (600 mg BID) led to a significant reduction in mean daytime cough frequency compared with placebo. A subsequent dose-escalation trial confirmed the clinical activity of gefapixant in refractory chronic cough patients even when testing a much lower dose (50 mg BID). Across all Phase 2 trials, dose-dependent taste alteration and taste loss was the most commonly reported adverse event. In a Phase 2b trial in which 50 mg gefapixant was given twice daily, 81% of patients reported taste side effects, 48% of patients reported taste alteration, 24% had partial loss of taste and 21% had complete taste loss.

We believe that a highly selective P2X3 antagonist has the potential to reduce cough in patients with chronic cough, while maintaining taste function by not inhibiting P2X2/3 receptors.

37.     The Registration Statement further stated that:

We believe that BLU-5937 has best-in-class selectivity for the homotrimeric P2X3 receptor, or "P2X3". Given this selectivity, we believe that BLU-5937 has the potential to significantly alleviate refractory chronic cough and chronic pruritus symptoms while limiting or potentially eliminating the taste loss and taste alteration observed with *the most advanced P2X3 receptor inhibitor in development, Merck & Co.'s gefapixant, which has low selectivity for P2X3.*

38.     In addition, the Registration Statement provided generic statements of "intense" competition and other companies' drug development that "*could* render" BELLUS's current and future drug product(s) "non-competitive," but failed to disclose the imminent and known risk of BLU-5937 not being able to meet, much less beat, the clinical results that the Company's top competitor had achieved at the time of the Offering, which would have severe negative consequences for the Company's business, operations, and financial prospects. The Registration Statement stated, in relevant part:

There are multiple companies developing products at varying stages of development specifically intended to treat chronic cough including Merck & Co., Bayer AG, Shionogi Inc., Attenua Inc. and NeRRe Therapeutics Ltd, some of which have substantially greater product development capabilities and financial, scientific, marketing, and human resources than us. Of these companies, Merck, Bayer and Shionogi are developing P2X3 antagonists for chronic cough that *could* compete directly with BLU-5937.

12

39.     Instead of disclosing the truth, the Registration Statement simply touted how BLU-5937 was different and better than other P2X3 inhibitors based on its high selectivity:

**BLU-5937, Our Highly Selective P2X3 Inhibitor Product Candidate**

We are developing BLU-5937, a potent, ***highly selective***, orally bioavailable small molecule inhibitor of the P2X3 receptor, as an oral therapy to reduce cough frequency in chronic cough patients. Advances in the understanding of possible mechanisms underlying chronic cough have paved the way for product candidates targeting the P2X3 receptors, such as BLU-5937.

We believe BLU-5937's characteristics shown in preclinical studies and a Phase 1 trial position it as a differentiated treatment option in the P2X3 inhibitors class. These include:

- ***potent*** inhibitor of P2X3 that has the potential to significantly alleviate refractory chronic cough symptoms;

- ***highly selective*** for P2X3 that has the potential to significantly reduce or eliminate taste side effects; and

- orally bioavailable and has a half-life that supports dosing as a tablet twice daily.

40.     On March 19, 2020, the Company announced the completion of "patient enrollment for the RELIEF trial, its dose-escalation, placebo-controlled Phase 2 trial of BLU-5937 in patients with refractory chronic cough."[10] Defendant Bellini is quoted as noting that "[c]ompleting patient enrollment for the RELIEF trial is an important achievement in the BLU-5937 development program," and "BLU-5937 has the potential to address a significant unmet medical need in chronic cough, and we believe our compound may be ***better tolerated than competitor candidates due to its high selectivity, potentially reducing cough frequency with little to no taste alteration***."

---

[10] *BELLUS Health Announces Completion of Enrollment in Phase 2 RELIEF Trial of BLU-5937 for the Treatment of Refractory Chronic Cough*, BUSINESS WIRE (Mar. 19, 2020 07:00 AM ET), https://www.businesswire.com/news/home/20200319005092/en/BELLUS-Health-Announces-Completion-Enrollment-Phase-2.

41.     On April 6, 2020, the Company announced the completion of "patient dosing in its Phase 2 RELIEF clinical trial of BLU-5937 for the treatment of refractory chronic cough," explaining that "[w]ith 52 patients having completed dosing, *the RELIEF trial is powered at more than 80% to see a 30% difference between BLU-5937 and placebo in awake cough frequency*."[11] Defendant Bellini is also quoted as stating that "[w]ith 52 patients completing dosing, the RELIEF trial is the largest crossover study conducted in refractory chronic cough, *providing the powering needed to evaluate efficacy and safety of BLU-5937*," and "[g]iven the *robust number of patients* and the impact of the Covid-19 pandemic, we concluded that it was prudent to close the trial [early] as our primary focus is the safety and well-being of our trial participants, clinical investigators and their site staffs."

42.     The statements referenced in ¶¶ 35-41 *supra* were materially false and misleading when made because they misrepresented and failed to disclose the adverse facts about the potential efficacy of BLU-5937, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants knew, but failed to disclose, that while BLU-5937's "high selectivity" contributed to the drug causing little to no taste alteration in chronic cough patients, that high selectivity also contributed to the drug potentially being less efficacious and thus likely not be able to meet the primary endpoint of the Company's Phase 2 trial.

## VI.     THE TRUTH WAS REVEALED

43.     Before markets opened on July 6, 2020, BELLUS announced the "topline results from its Phase 2 RELIEF trial of BLU-5937 in patients with refractory chronic cough," revealing that the trial "*did not achieve statistical significance* for the primary endpoint of reduction in

---

[11] *BELLUS Health Announces Completion of Dosing in Phase 2 RELIEF Trial with BLU-5937 for the Treatment of Refractory Chronic Cough*, BUSINESS WIRE (Apr. 6, 2020 05:00 PM ET), https://www.businesswire.com/news/home/20200406005773/en/BELLUS-Health-Announces-Completion-Dosing-Phase-2.

placebo-adjusted cough frequency at any dose tested."[12] Only "[a] clinically meaningful and highly statistically significant placebo-adjusted reduction in cough frequency was achieved in a pre-specified sub-group of high cough count patients (all patients at or above the baseline median average of 32.4 coughs per hour)," so the Company intended to move "forward into an adaptive Phase 2b trial enriched for higher cough count patients. We expect to begin this trial in the fourth quarter of 2020." On this news, the Company's stock price plummeted over **75%** from the Class Period high of $12.02 on June 29, 2020 to close at $2.97 on July 8, 2020 on extremely heavy trading volume.

44.     As noted in a July 6, 2020 article titled, "Why Bellus Health Stock Tanked 69.2% Today" by Todd Campbell of The Motley Fool, shares of the Company "were falling 69.2% at 2:40 p.m. EST on Monday following its announcement that a ***phase 2 trial of BLU-5937 as a treatment for refractory chronic cough has missed its mark***."[13] Mr. Campbell further noted that "[t]he long-shot hope could be that management is able to launch another study comprising patients with high cough counts that pans out, but there's no telling if or when such a trial would actually begin enrolling anyone."

45.     Similarly, in a July 6, 2020 article titled "Bellus stock drops 72% after highly anticipated drug disappoints in human trials," Sean Silcoff of The Globe and Mail reported that the Company was "planning a follow-on study later this year on ***250 patients*** to further explore

---

[12] *BELLUS Health Announces Topline Results from its Phase 2 RELIEF Trial of BLU-5937 for the Treatment of Refractory Chronic Cough*, BELLUS HEALTH INC. (July 6, 2020), https://ir.bellushealth.com/node/9651/pdf.

[13] Todd Campbell, *Why Bellus Health Stock Tanked 69.2% Today*, THE MOTLEY FOOL (July 6, 2020), https://www.fool.com/investing/2020/07/06/why-bellus-health-is-tanking-63-today.aspx.

the drug's effectiveness among those that responded best in the first study."[14] The article also

quoted BELLUS Board of Directors member Clarissa Desjardins as stating that "We are very much

reassured we have a drug here …. But *it's going to take longer and cost more money*."

## VII.   ADDITIONAL SCIENTER ALLEGATIONS

46.    As alleged herein, Defendants acted with scienter in that they knew that the public

documents and statements issued or disseminated in the name of the Company were materially

false and/or misleading; knew that such statements or documents would be issued or disseminated

to the investing public; and knowingly and substantially participated or acquiesced in the issuance

or dissemination of such statements or documents as primary violations of the federal securities

laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding

BELLUS and its lead drug product, BLU-5937, their control over, and/or receipt and/or

modification of BELLUS's allegedly materially misleading misstatements and/or their

associations with the Company, which made them privy to confidential proprietary information

concerning BELLUS, participated in the fraudulent scheme alleged herein.

47.    The fraudulent scheme described herein could not have been perpetrated during the

Class Period without the knowledge and complicity of, or at least the reckless disregard by,

personnel at the highest levels of the Company, including the Individual Defendants. Given their

executive level positions with BELLUS, the Individual Defendants controlled the contents of

BELLUS's public statements during the Class Period. The Individual Defendants were each

provided with or had access to the information alleged herein to be false and/or misleading prior

to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause

---

[14] Sean Silcoff, *Bellus stock drops 72% after highly anticipated drug disappoints in human trials*, THE GLOBE AND MAIL (July 6, 2020), https://www.theglobeandmail.com/business/article-bellus-stock-drops-72-after-highly-anticipated-drug-disappoints-in/.

it to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the Individual Defendants was responsible for the accuracy of BELLUS's corporate statements and is, therefore, responsible and liable for the representations contained therein.

48.     Plaintiff also alleges that scienter of the Individual Defendants (who, as executive officers of the Company, knew or recklessly ignored facts related to the core operations of BELLUS) can be imputed to BELLUS.

49.     Further evidencing their scienter, the Individual Defendants are intimately involved and acutely aware of the science behind how and why P2X3 antagonists in general, and BLU-5937 in particular, are able to treat chronic cough, as indicated by their Class Period statements.

50.     Given Defendants' knowledge of what the high selectivity of BLU-5937 potentially meant not only for its side effects, but its efficacy, and their misleading statements about BLU-5937's competitive advantages made contemporaneously with that knowledge, Defendants' materially false and/or misleading statements alleged herein were made willfully and caused BELLUS common stock to trade at artificially inflated prices during the Class Period.

## VIII.   APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

51.     During the Class Period, the artificial inflation of BELLUS's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about BELLUS's business, prospects, and operations. These material misstatements

and/or omissions created an unrealistically positive assessment of BELLUS and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

52.     At all relevant times, the market for BELLUS's common stock was an efficient market for the following reasons, among others:

a.      BELLUS common stock met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.      Over 78 million shares of BELLUS stock were outstanding, owned and/or publicly traded on the NASDAQ by hundreds, if not thousands, of persons;

c.      As a regulated issuer, BELLUS filed periodic public reports with the SEC and/or the NASDAQ;

d.      BELLUS regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

e.      BELLUS was followed by at least 8 securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports were publicly available and entered the public marketplace.

f.      Multiple market makers made a market in BELLUS's common stock during the Class Period; and

g.      The price of BELLUS's common stock responded quickly to incorporate and reflect new public information concerning BELLUS during the Class Period.

53.      As a result of the foregoing, the market for BELLUS's securities promptly digested current information regarding BELLUS from all publicly available sources and reflected such information in BELLUS's share price. Under these circumstances, all purchasers of BELLUS's securities during the Class Period suffered similar injury through their purchase of BELLUS's securities at artificially inflated prices and a presumption of reliance applies.

54.      A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## IX.    NO SAFE HARBOR

55.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and

conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of BELLUS who knew that the statement was false when made.

## X.   CAUSES OF ACTION

### COUNT I
### Violation of § 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

56.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase BELLUS's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each Defendant, took the actions set forth herein.

58.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for BELLUS's securities in violation of § 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about BELLUS's financial well-being and prospects, as specified herein.

60.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of BELLUS's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about BELLUS and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

61.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or

reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

62.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing BELLUS's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

63.   As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of BELLUS's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that

was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired BELLUS's securities during the Class Period at artificially high prices and were damaged thereby.

64.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that BELLUS was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their BELLUS securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II
### Violation of § 20(a) of The Exchange Act
### (Against the Individual Defendants)

67.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     Individual Defendants acted as controlling persons of BELLUS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence

and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of BELLUS and, thus, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.     As set forth above, BELLUS and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)     Declaring this Action to be a proper class action pursuant to Federal Rule of Civil Procedure ("Rule") 23, certifying Plaintiff as Class Representatives pursuant to Rule 23(c), and appointing Roche Freedman LLP as Class Counsel pursuant to Rule 23(g);

b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c)      Awarding Plaintiff's reasonable costs and expenses, including attorneys' fees, expert fees, and its other costs and expenses; and

d)      Awarding such equitable, injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal rule of Civil Procedure 38(b), Plaintiff hereby respectfully demands a trial by jury for all claims.

Dated: March 16, 2021                              Respectfully submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides
Velvel (Devin) Freedman (*pro hac* forthcoming)
Ivy T. Ngo (*pro hac* forthcoming)
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 971-5943
Facsimile: (646) 392-8842
Email: ceconomides@rcfllp.com
          vel@rcfllp.com
          ingo@rcfllp.com

*Counsel for Plaintiff Carl D. Cacchia and the Proposed Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Plaintiff Carl D. Cacchia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 16, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Constantine P. Economides*
Constantine P. Economides

**CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

1.      I, Carl Cachia, make this declaration pursuant to §27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or §21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against BELLUS Health Inc. ("BELLUS" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire BELLUS securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired BELLUS securities during the class period**,** including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet (Schedule "A") lists all of my transactions in BELLUS securities during the Class Period, as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this day of

_____3/12/2021_____.

DocuSigned by:

*Carl Cachia*

2D1B324F24824C2...

Carl Cachia

# SCHEDULE A

Carl D. Cachia Transactions in
BELLUS Health Inc. ("BLU")

| Date | Transaction | Quantity | Price per Share |
|------|-------------|----------|-----------------|
| 04/22/2020 | Bought | 100 | $9.21 |
| 04/22/2020 | Bought | 100 | $9.20 |
| 04/22/2020 | Bought | 2,202 | $9.23 |
| 04/22/2020 | Sold | 2,402 | $9.42 |
| 06/02/2020 | Bought | 200 | $10.46 |
| 06/02/2020 | Bought | 200 | $10.508 |
| 06/02/2020 | Bought | 200 | $10.45 |
| 06/02/2020 | Bought | 1,000 | $10.509 |
| 06/02/2020 | Bought | 1,900 | $10.51 |
| 06/03/2020 | Bought | 200 | $10.598 |
| 06/03/2020 | Bought | 2,800 | $10.545 |
| 06/03/2020 | Bought | 1,500 | $10.60 |
| 06/03/2020 | Bought | 100 | $10.438 |
| 06/03/2020 | Bought | 600 | $10.44 |
| 06/03/2020 | Bought | 1,309 | $10.45 |
| 06/03/2020 | Bought | 2,700 | $10.449 |
| 06/03/2020 | Bought | 185 | $10.46 |
| 06/03/2020 | Bought | 300 | $10.479 |
| 06/03/2020 | Bought | 1,200 | $10.48 |
| 06/03/2020 | Bought | 1,315 | $10.469 |
| 06/03/2020 | Bought | 1,600 | $10.47 |
| 06/03/2020 | Bought | 700 | $10.49 |
| 06/03/2020 | Bought | 2,991 | $10.51 |
| 06/03/2020 | Bought | 300 | $14.33 |
| 06/03/2020 | Bought | 200 | $14.33 |
| 06/03/2020 | Bought | 600 | $14.34 |
| 06/03/2020 | Bought | 100 | $14.34 |
| 06/03/2020 | Bought | 400 | $14.31 |
| 06/03/2020 | Bought | 300 | $14.31 |
| 06/03/2020 | Bought | 4,300 | $14.32 |
| 06/03/2020 | Bought | 300 | $14.19 |
| 06/03/2020 | Bought | 100 | $14.19 |

| 06/03/2020 | Bought | 200 | $14.21 |
|---|---|---|---|
| 06/03/2020 | Bought | 200 | $14.23 |
| 06/03/2020 | Bought | 300 | $14.20 |
| 06/03/2020 | Bought | 800 | $14.22 |
| 06/03/2020 | Bought | 200 | $14.26 |
| 06/03/2020 | Bought | 300 | $14.20 |
| 06/03/2020 | Bought | 100 | $14.21 |
| 06/03/2020 | Bought | 500 | $14.27 |
| 06/03/2020 | Bought | 4,800 | $14.30 |
| 06/03/2020 | Sold | 100 | $14.26 |
| 06/03/2020 | Sold | 100 | $14.26 |
| 06/03/2020 | Sold | 100 | $14.18 |
| 06/03/2020 | Sold | 100 | $14.17 |
| 06/03/2020 | Sold | 300 | $14.25 |
| 06/03/2020 | Sold | 600 | $14.24 |
| 06/03/2020 | Sold | 100 | $14.28 |
| 06/03/2020 | Sold | 800 | $14.05 |
| 06/03/2020 | Sold | 500 | $14.25 |
| 06/03/2020 | Sold | 500 | $14.25 |
| 06/03/2020 | Sold | 100 | $14.20 |
| 06/03/2020 | Sold | 200 | $14.14 |
| 06/03/2020 | Sold | 200 | $14.11 |
| 06/03/2020 | Sold | 200 | $14.10 |
| 06/03/2020 | Sold | 100 | $14.24 |
| 06/03/2020 | Sold | 100 | $14.15 |
| 06/03/2020 | Sold | 100 | $14.14 |
| 06/03/2020 | Sold | 100 | $14.13 |
| 06/03/2020 | Sold | 100 | $14.07 |
| 06/03/2020 | Sold | 100 | $14.18 |
| 06/03/2020 | Sold | 100 | $14.10 |
| 06/03/2020 | Sold | 200 | $14.12 |
| 06/03/2020 | Sold | 900 | $14.13 |
| 06/03/2020 | Sold | 1,100 | $14.14 |
| 06/03/2020 | Sold | 500 | $14.15 |
| 06/03/2020 | Sold | 100 | $14.07 |
| 06/03/2020 | Sold | 200 | $14.05 |
| 06/03/2020 | Sold | 800 | $14.04 |
| 06/03/2020 | Sold | 2,700 | $14.06 |
| 06/03/2020 | Sold | 400 | $14.09 |

| 06/03/2020 | Sold | 100 | $14.04 |
|---|---|---|---|
| 06/03/2020 | Sold | 100 | $14.03 |
| 06/03/2020 | Sold | 100 | $14.02 |
| 06/03/2020 | Sold | 300 | $14.05 |
| 06/03/2020 | Sold | 100 | $14.04 |
| 06/03/2020 | Sold | 100 | $14.01 |
| 06/03/2020 | Sold | 1,000 | $14.02 |
| 06/03/2020 | Sold | 700 | $14.03 |
| 06/12/2020 | Bought | 100 | $10.295 |
| 06/12/2020 | Bought | 400 | $10.29 |
| 06/12/2020 | Bought | 500 | $10.31 |
| 06/26/2020 | Sold | 350 | $10.26 |
| 06/26/2020 | Sold | 150 | $10.24 |
| 06/29/2020 | Sold | 300 | $9.71 |
| 06/29/2020 | Sold | 250 | $9.896 |
| 07/01/2020 | Sold | 200 | $9.529 |
| 07/06/2020 | Bought | 2,400 | $11.37 |
| 07/06/2020 | Bought | 2,600 | $11.389 |
| 07/06/2020 | Bought | 5,000 | $11.389 |
| 07/06/2020 | Sold | 200 | $11.37 |
| 07/06/2020 | Sold | 8,900 | $11.37 |
| 07/06/2020 | Sold | 900 | $11.40 |
| 07/06/2020 | Sold | 5,000 | $11.57 |
| 07/06/2020 | Sold | 350 | $11.57 |
| 07/06/2020 | Sold | 4,100 | $11.57 |
| 07/06/2020 | Sold | 300 | $11.58 |
| 07/07/2020 | Bought | 5,000 | $11.42 |
| 07/07/2020 | Bought | 5,000 | $11.45 |
| 07/07/2020 | Sold | 200 | $11.71 |
| 07/07/2020 | Sold | 900 | $11.72 |
| 07/07/2020 | Sold | 3,600 | $11.69 |
| 07/07/2020 | Sold | 300 | $11.74 |
| 07/07/2020 | Sold | 200 | $11.67 |
| 07/07/2020 | Sold | 1,200 | $11.70 |
| 07/07/2020 | Sold | 3,300 | $11.67 |
| 07/07/2020 | Sold | 300 | $11.72 |
| 07/08/2020 | Sold | 11,000 | $2.89 |