**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CARL D. CACHIA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BELLUS HEALTH INC., ROBERTO BELLINI, FRANÇOIS DESJARDINS, DR. CATHERINE BONUCCELLI, DR. JACKY SMITH, JEFFERIES LLC, COWEN AND COMPANY, LLC, GUGGENHEIM SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, and BLOOM BURTON SECURITIES INC.,<br><br>    Defendants. | No. 1:21-CV-02278-GBD<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**(LEAVE TO FILE ADDITIONAL PAGES GRANTED FEBRUARY 23, 2022)** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF BELLUS DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Caroline H. Bullerjahn
Courtney D. Orazio (*pro hac vice*)
Tucker DeVoe (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
cbullerjahn@goodwinlaw.com
corazio@goodwinlaw.com
tdevoe@goodwinlaw.com

*Attorneys for Defendants BELLUS Health,
Inc., Roberto Bellini, François Desjardins,
and Dr. Catherine Bonuccelli*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT........................................................................................................................... 2

I.       PLAINTIFF HAS NOT ALLEGED STATUTORY STANDING................................ 2

   A.   The AC Does Not Plead A Domestic Transaction...........................................3

   B.   Plaintiff Has Waived Any Argument Against Dismissal On This Ground. ..............6

II.      PLAINTIFF HAS NOT ALLEGED PERSONAL JURISDICTION.......................... 6

III.     PLAINTIFF HAS NOT ADEQUATELY PLEADED SCIENTER. ........................... 7

   A.   The AC Fails To Plead Motive To Commit Fraud. .......................................7

   B.   The AC Fails To Plead Conscious Misbehavior Or Recklessness. ...........................9

   C.   Plaintiff Has Not Established Corporate Scienter. .....................................11

   D.   The Non-Fraudulent Inference Arising From Plaintiff's Allegations Is Far
        More Compelling. ........................................................................12

IV.      PLAINTIFF HAS NOT ALLEGED ANY MATERIALLY MISLEADING
         STATEMENTS OR OMISSIONS................................................................ 13

   A.   Plaintiff's New Omission Theory Fails. ..................................................14

   B.   Plaintiff's Sub-Arguments, Labeled A-F, Fail To Save Plaintiff's Deficient
        Claims..................................................................................17

V.       PLAINTIFF'S SECURITIES ACT CLAIMS ARE TIME-BARRED. ..................... 19

CONCLUSION ..................................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Abely v. Aeterna Zentaris Inc.*,
    2013 WL 2399869 (S.D.N.Y. May 29, 2013) ...................................................................13, 19

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)........................................................................................4, 5

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018).........................................................................3, 19

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    __ F.4d __, 2022 WL 727149 (2d Cir. Mar. 11, 2022)................................................13, 18, 19

*Attestor Value Master Fund v. Republic of Argentina*,
    940 F.3d 825 (2d Cir. 2019).............................................................................................6

*In re Bank of America AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 Fed. App'x 93 (2d Cir. 2014) ......................8

*Benfield v. Mocatta Metals Corp.*,
    26 F.3d 19, 23 (2d Cir. 1994) ........................................................................................20

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..........................................................................................3, 4

*ECA, Loc. 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)....................................................................................7, 9, 12

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    141 S. Ct. 1017 (2021) ...............................................................................................6, 7

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000)..............................................................................................17

*Gillis v. QRX Pharma Ltd.*,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016).....................................................................................8

*Guzman v. Macy's Retail Holdings, Inc.*,
    2010 WL 1222044 (S.D.N.Y. Mar. 29, 2010) ...........................................................................6

*Ho v. Duoyuan Glob. Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) (Daniels, J.) ....................................................................5

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020)...............................................................................................12

ii

*Johnson v. Sequans Commc'ns S.A.*,
  2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) ................................................................14

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) ...............................................................19

*Micholle v. Ophthotech Corp.*,
  2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019) ...........................................................18

*Midwest Operating Engineers Pension Tr. Fund v. Alkermes Pub. Ltd. Co.*,
  2021 WL 5782079 (2d Cir. Dec. 7, 2021) .................................................................10

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ....................................................................................... *passim*

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
  2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ...........................................................20

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ....................................................................................................18

*In re OSG Sec. Litig.*,
  971 F. Supp. 2d 387 (S.D.N.Y. 2013) ..........................................................................8

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 449 (S.D.N.Y. 2005) ..........................................................................6

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015) ..........................................................................4

*Roberts v. Bennaceur*,
  658 F. App'x 611 (2d Cir. 2016) ...................................................................................6

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) .........................................................................................13

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015) ..........................................................................11

*Schaffer v. Horizon Pharma PLC*,
  2018 WL 481883 (S.D.N.Y. 2018) ...............................................................................9

*Schentag v. Nebgen*,
  2018 WL 3104092 (S.D.N.Y. June 21, 2018) ..............................................................4

*Skiadas v. Acer Therapeutics Inc.*,
  2020 WL 3268495 (S.D.N.Y. June 16, 2020) ..............................................................8

*Slayton v. American Express Co.*,
  460 F.3d 215 (2d Cir. 2006) ..................................................................................20

*In re Smart Techs., Inc. S'holder Litig.*,
  295 F.R.D. 50 (S.D.N.Y. 2013) .................................................................................4

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) ..................................................................................12

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)...............................................................................13, 17

*Tung v. Bristol-Myers Squibb Co.*,
  412 F. Supp. 3d 453 (S.D.N.Y. 2019)............................................................9, 18, 19

*In re TVIX Sec. Litig.*,
  25 F. Supp. 3d 444 (S.D.N.Y.), *aff'd sub nom. Elite Aviation LLC v. Credit
  Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) ..............................................................16

*Villare v. Abiomed, Inc.*,
  2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021).........................................................11

*In re Wells Fargo & Co. Sec. Litig.*,
  2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)....................................................17, 18

*Xiang v. Inovalon Holdings, Inc.*,
  327 F.R.D. 510 (S.D.N.Y. 2018) ............................................................................5, 6

*Yannes v. SCWorx Corp.*,
  2021 WL 2555437 (S.D.N.Y. June 21, 2021) .........................................................10

*Zagami v. Cellceutix Corp.*,
  2016 WL 3199531 (S.D.N.Y. June 8, 2016) .........................................................2, 13

## PRELIMINARY STATEMENT

As set forth in the BELLUS Defendants'[1] opening memorandum ("Memorandum" or "Mem." (ECF No. 55)), Plaintiff has not pleaded statutory standing under the Exchange Act or Securities Act, as required under *Morrison v. Nat'l Australia Bank Ltd.*, because he fails to allege a domestic transaction in securities of BELLUS, a Canadian-cross-listed company.  561 U.S. 247 (2010).  Incredibly, Plaintiff ***failed to address this issue at all*** in his brief ("Opposition" or "Opp." (ECF No. 67)), nor claimed that he could cure this failure in a subsequent complaint.  Plaintiff has thus not only lost the issue, but has also waived argument otherwise.  This threshold pleading failure alone requires that the Amended Complaint ("AC") be dismissed in its entirety.

Moreover, the Opposition confirms that Plaintiff's theory of securities fraud amounts to nothing more than non-actionable hindsight and second guessing.  Plaintiff argues that Defendants should have known and disclosed that BELLUS's RELIEF trial was allegedly poorly designed because participants' average baseline cough frequency (*i.e.*, how often per hour a patient coughed prior to the study) was lower than participants in competitors' trials.  This argument fails for multiple independent reasons.   First, the average baseline cough frequency for RELIEF participants was ***not even knowable*** until after the trial was fully enrolled, which did not happen until late in the Class Period and ***after*** the issuance of the Prospectus—the only document upon which Plaintiff's Securities Act claims are based.  Dismissal of the Securities Act counts is thus warranted and straightforward.  Second, Plaintiff does not plead that any competitor's prior study even correlated cough frequency with trial success.  Instead, Plaintiff claims Defendants somehow should have known that their statements about the RELIEF trial were misleading based on information that Defendants did not know, and could not have known, until ***after*** completing that

---

[1]  The remaining Defendants are BELLUS, three of its executives, and RELIEF's independent principal investigator, Dr. Jacky Smith.  The arguments here apply globally; for convenience, this brief refers to all of them as "Defendants."

trial. This nonsensical hindsight allegation dooms Plaintiff's Securities Act and Exchange Act claims alike.

Nor does the Opposition rebut the numerous, independent reasons for dismissal set forth in Defendants' Memorandum, which include:[2]

- *No Statutory Standing (All Claims):* Plaintiff does not allege that his purchase of BELLUS's stock was in the U.S., a fatal failure given that the U.S. securities laws do not apply abroad.

- *No Personal Jurisdiction (All Claims):* Plaintiff fails to allege a nexus between his stock trades and the U.S., requiring dismissal.

- *No Scienter (Exchange Act Claims):* The AC contains no particularized facts supporting even a plausible inference of scienter, much less the requisite "strong inference." Plaintiff has not alleged a motive to commit fraud. Nor has he alleged any *facts*—*e.g.*, confidential witness statements, documents, or other particular allegations—to show that Defendants knew, or were reckless in not knowing, that any statement was false or misleading when made. Moreover, the non-fraudulent inference is far more compelling than any gesture at scienter here.

- *No Materially Misleading Statement (All Claims):* Plaintiff does not, and cannot, point to a single presently-existing fact necessary to make Defendants' truthful statements or forward-looking, optimistic opinions not misleading. For instance, Plaintiff's claim "BELLUS was testing [BLU-5937] on a different type of patient (*i.e.*, those with lower cough frequency)" (Opp. at 2) is untrue. The AC pleads that the median cough frequency of one competitor trial was 28.9, whereas in the RELIEF trial, it was 32.4. (AC ¶¶ 84, 199.) The minimum frequency in that competitor trial was 0.4 per hour; RELIEF's was 10. (AC ¶¶ 55, 82 & n.17; Ex. 30 at 124.) Instead, Plaintiff's entire theory is premised on second-guessing BELLUS's *strategic* and *scientific judgment calls* in designing the RELIEF trial. But, as this Court's precedents confirm, "securities law is not 'a tool to second guess how clinical trials are designed and managed.'" *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *12 (S.D.N.Y. June 8, 2016).

- *Barred By The Statute of Limitations (Securities Act Claims):* The Securities Act's one-year limitations period ran prior to the filing of the AC. The AC's Securities Act allegations do not "relate back" because its "design flaw" theory based on cough frequency is entirely new.

## ARGUMENT

### I.   PLAINTIFF HAS NOT ALLEGED STATUTORY STANDING.

This issue is straightforward: because Plaintiff has not alleged how his purchase of

---

[2] Defendants rest on the arguments made in their opening Memorandum concerning loss causation (Mem. at 25-27); the pleading standard applicable to Plaintiff's Securities Act claims (because these claims sound in fraud, they are subject to the same pleading standard as the Exchange Act claims) (*id*. at 27-28); and control person liability (Plaintiff does not contest that if his substantive counts fail, so too do his control person claims) (*id.* at 35).

BELLUS securities is connected to the United States, his claims must be dismissed (Mem. at 32-35), as the securities laws of the United States do not apply to transactions in securities outside of its borders. *Morrison*, 561 U.S. at 265 ("[T]here is no affirmative indication in the Exchange Act that § 10(b) applies extraterritorially, and we therefore conclude that it does not."); *id.* at 268 ("The same focus on domestic transactions is evident in the Securities Act of 1933 . . . enacted by the same Congress as the Exchange Act, and forming part of the same comprehensive regulation of securities trading."). Here, BELLUS securities are traded in both the United States and Canada. (*See* AC ¶¶ 101-03 & n.27; Ex. 3 at S-65.)[3] Yet the AC pleads nothing about how or where Plaintiff acquired BELLUS stock (*see* ¶ 20), a pleading deficiency so obvious that Defendants frankly expected that Plaintiff would attempt to cure it. But Plaintiff did not, nor does his Opposition offer any argument against dismissal. Thus, Plaintiff's claims must be dismissed, and he has waived asserting statutory standing.

### A. The AC Does Not Plead A Domestic Transaction.

In *Morrison*, the Supreme Court affirmed the dismissal of a Section 10(b) securities fraud claim concerning an Australian company that traded on an Australian exchange, with American Depository Receipts traded on the New York Stock Exchange. 561 U.S. at 251, 266, 273. Following *Morrison*, the Second Circuit encountered precisely the question relevant here: "whether the bar on extraterritorial application of the United States securities laws, as set forth in [*Morrison*], precludes claims arising out of foreign-issued securities purchased on foreign exchanges, but cross-listed on a domestic exchange (the so-called 'listing theory')." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 176 (2d Cir. 2014). The

---

[3] Plaintiff does not challenge this fact, which is set forth in BELLUS's Prospectus, a document quoted in the AC and thus "incorporated into the AC by reference." *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 743 n.1 (S.D.N.Y. 2018).

Second Circuit rejected the "listing theory" and affirmed dismissal for lack of statutory standing, holding that "*Morrison* does not support the application of § 10(b) of the Exchange Act to claims by a foreign purchaser of foreign-issued shares on a foreign exchange simply because those shares are also listed on a domestic exchange." *Id.* at 181. The Second Circuit also extended this ruling to **domestic** purchasers (*i.e.*, people in the U.S. who purchase on foreign exchanges), concluding that "the mere placement of a buy order in the United States for the purchase of foreign securities on a foreign exchange" was not "sufficient to allege that . . . the U.S. securities laws govern the purchase of those securities." *Id.*

*Morrison*'s requirement—that even a domestic plaintiff must plead a purchase of **U.S. securities on a domestic exchange**—"applies equally to Securities Act claims," *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 55 (S.D.N.Y. 2013); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 386 (S.D.N.Y. 2015) (same), and "the mere assertion that transactions 'took place in the United States' is insufficient to adequately plead the existence of domestic transactions" under either statute. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012); *Schentag v. Nebgen*, 2018 WL 3104092, at *11 (S.D.N.Y. June 21, 2018) ("The Second Circuit has applied the *Morrison* test to claims brought under both the Securities Act and the Exchange Act."). Here, Plaintiff does not plead even that much. The AC contains only two conclusory sentences concerning Plaintiff's alleged purchase of BELLUS shares:

> Plaintiff Cachia purchased or acquired BELLUS securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the disclosures and/or materialization of Defendants' conduct alleged herein. In addition, Plaintiff Cachia purchased BELLUS common stock traceable to the Company's false and/or misleading IPO Documents and was damaged thereby.

(AC ¶ 20.) Neither sentence alleges that Plaintiff purchased BELLUS stock domestically. First, because BELLUS stock is traded on both NASDAQ in the United States and TSX in Canada (AC

4

¶¶ 101-03 & n.27; Ex. 3 at S-65), Plaintiff's conclusory claim that he "purchased or acquired BELLUS securities" does not itself "giv[e] rise to the plausible inference that irrevocable liability was incurred or title was transferred within the United States." *Absolute Activist*, 677 F.3d at 69. So too with his second sentence. While Plaintiff alleges that his share purchase was "traceable" to the Prospectus and related documents, he does not say *where* his purchase took place—and, notably, BELLUS's U.S. "offering of common shares [was] made *concurrently in certain provinces of Canada* . . . ." (Ex. 3 at S-1 (emphasis added).) Yet Plaintiff does not plead that *his shares* were actually sold in the United States (as opposed to Canada), or that *he* purchased *his shares* in the United States (as opposed to Canada). Plaintiff has thus failed to plead a domestic transaction consistent with *Morrison*, and the Opposition does nothing to alter this conclusion. *Absolute Activist*, 677 F.3d at 60 ("[A]llegations that the [securities] were heavily marketed in the United States and that United States investors were harmed by the defendants' actions . . . do not satisfy the transactional test announced in *Morrison*.").

Two other issues specific to the Securities Act claims also require their dismissal. First, Section 11 requires that a plaintiff "trace [his] shares to an allegedly misleading registration statement." *Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 520 (S.D.N.Y. 2018). (Mem. at 33-35.) "[P]laintiffs are not entitled to a presumption of traceability." *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 561 (S.D.N.Y. 2012) (Daniels, J.). Here, the AC pleads only a single conclusory statement that Plaintiff's alleged purchase was "traceable" to the Prospectus, (AC ¶ 20), while pleading *no* facts regarding how many shares Plaintiff allegedly purchased, or when, or whether and how such shares are temporally related to the issuing of the Prospectus. Plaintiff's conclusory allegation should not be credited. Second, the AC itself precludes Plaintiff's Section 12(a)(2) claim. (Mem. at 32-33.) A "Section 12(a)(2) plaintiff must establish that it purchased

the security directly from defendants through the public offering at issue." *Inovalon*, 327 F.R.D. at 520. Yet Plaintiff pleads the opposite, alleging that he "did not buy in the IPO directly from BELLUS." (AC Count IV at n.77.) This admission also independently requires dismissal.

**B.      Plaintiff Has Waived Any Argument Against Dismissal On This Ground.**

Where Defendants raise a pleading deficiency at the motion to dismiss stage, and "Plaintiff does not address this argument in [his] opposition brief, [he] [] has waived this claim." *Guzman v. Macy's Retail Holdings, Inc.*, 2010 WL 1222044, at *8 (S.D.N.Y. Mar. 29, 2010). Here, Plaintiff not only briefed numerous legal and factual issues in his Opposition, he obtained 15 additional pages to make his arguments. (ECF No. 39; ECF No. 65.) He had every opportunity to argue that his claims could withstand *Morrison,* but chose not to. *See Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) ("[A] party may forfeit a right or defense by actively litigating other issues and forgoing the opportunity to litigate that right or defense."). Nor does Plaintiff preserve anything with the Opposition's final sentence, "request[ing] leave to amend" should the Court grant Defendants' motion to dismiss. "A plaintiff need not be given leave to amend if it fails to specify . . . to the district court . . . how amendment would cure the pleading deficiencies in its complaint." *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (affirming denial of leave to amend). At bottom, Plaintiff has waived the chance to argue that he has standing in this litigation, and his claims should be dismissed.

## II.      PLAINTIFF HAS NOT ALLEGED PERSONAL JURISDICTION.

The AC should also be dismissed for Plaintiff's failure to allege a nexus between his claims and the United States. This Court's decision in *In re Parmalat Sec. Litig.*, is on all fours: there, the Court dismissed plaintiffs' claims for lack of personal jurisdiction where, like Plaintiff here, they failed to allege stock purchases in the United States. 376 F. Supp. 2d 449, 456-57 (S.D.N.Y. 2005). The Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Judicial*

6

*District Court* is not to the contrary. 141 S. Ct. 1017 (2021). There, the Supreme Court held that Ford could not avoid suit in Minnesota or Montana because the plaintiffs were injured ***in those states***. *Id*. at 1023. That is exactly what is missing here: Plaintiff has not connected ***his*** injury to New York, and there is thus no basis for personal jurisdiction over these claims.[4]

### III.   <u>PLAINTIFF HAS NOT ADEQUATELY PLEADED SCIENTER.</u>

The AC does not come close to satisfying Plaintiff's obligation to plead facts giving rise to a "*strong* inference" that "the defendant[s] acted with . . . an intent to deceive, manipulate, or defraud," *ECA, Loc. 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.,* 553 F.3d 187, 198 (2d Cir. 2009) (emphasis in original), and the Opposition does nothing to change this. Plaintiff has failed to show either (1) "motive and opportunity," or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Where, as here, Plaintiff "cannot make the motive showing"—relying solely on generic, inadequate allegations that Defendants were purportedly motivated to ensure the Company's survival (*see* Opp. at 31-33)—Plaintiff faces the "correspondingly greater" burden to establish a "strong inference" that Defendants knew or recklessly disregarded information that their statements were false or misleading when made. *ECA*, 553 F.3d at 198-99. The Opposition fails to do so. Finally, Plaintiff fails to satisfy his burden to allege an inference of scienter that is not merely plausible, but is "at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 198. Here, the nonfraudulent inference is far more compelling: Defendants reasonably believed in the RELIEF study's design and execution, and transparently represented that reasonable optimism to the market.

### A.   The AC Fails To Plead Motive To Commit Fraud.

Plaintiff's sole motive argument rests on the Opposition's generalized claim that

---

[4] While the Opposition's heading on this issue is titled, "Plaintiff Purchased BELLUS on US-Based Exchanges," there is no support for this cursory statement in the text of the argument or anywhere in the AC. (*See* Opp. at 38.)

Defendants purportedly were in "need[] of fundraising." (Opp. at 31-32.) But Courts in this Circuit have repeatedly held that company "survival" or "the alleged motive to raise capital is a generic one insufficient to support scienter." *In re Bank of America AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 585 n. 8 (S.D.N.Y. 2013), *aff'd*, 566 Fed. App'x 93 (2d Cir. 2014); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 408 (S.D.N.Y. 2013) (allegation that offering was "critical to [the company's] very survival" was "too generalized a motive to plead securities fraud").[5]

Lacking *any* facts in the AC to support this conclusory argument, the Opposition attempts to rely on a single, inapposite case, *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495 (S.D.N.Y. June 16, 2020), that does nothing to salvage Plaintiff's theory. In *Skiadas*, the plaintiff pointed to defendant's *specific* need for short-term liquidity to survive until the FDA rendered a decision, in the near term, as to whether to approve the defendant's drug. *Id.* at *10-11. Here, Plaintiff points to no such facts and for good reason: as BELLUS described in the Prospectus, at the time of the challenged statements, only the first Phase 2 trial into BLU-5937 had begun, and BELLUS would need *at least* two further clinical trials before potentially seeking FDA approval, years later and long after the conclusion of the RELIEF trial. (Ex. 3 at S-44.)[6] Thus, Plaintiff's "motive" argument boils down to the illogical idea that BELLUS would spend "substantial time and resources in clinical studies . . . that it knew were doomed to fail" in a way the market would necessarily learn about before any potential FDA approval. *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600-01 (S.D.N.Y. 2016). As courts have repeatedly held, that argument is fundamentally "implausible" and cannot support scienter. *Id.* (granting motion to dismiss).

---

[5] Plaintiff's argument that there was allegedly scienter because BELLUS "needed money to commercialize" BLU-5937, and announced its planned IPO "[w]hile in the middle of the RELIEF study," (Opp. at 29) is a similar motive argument that fails for the same reasons.

[6] Indeed, BELLUS just completed its Phase 2b study, announcing positive and statistically significant results in December 2021. (Ex. 36.) The Company's first Phase 3 trials are expected to start later in 2022. (*Id.*)

**B.      The AC Fails To Plead Conscious Misbehavior Or Recklessness.**

Plaintiff contends that Defendants "knew of or were reckless to the differences between the RELIEF trial of BLU-5937 and competitors' studies," the latter of which allegedly included patients with "known material differences as to cough frequency" in comparison to RELIEF participants. (Opp. at 25, 31.) But this conclusory assertion does not satisfy Plaintiff's obligation under the PSLRA to "plead with particularity *facts* giving rise to a strong inference" of scienter. *ECA*, 553 F.3d at 198 (emphasis added). Indeed, Plaintiff's cough-frequency-theory fails right out of the gate, because Plaintiff pleads no *facts* that Defendants even knew of the average cough frequency for participants in RELIEF, a double-blind trial, before BELLUS disclosed RELIEF's results on July 6, 2020 (nor did such a participant cough frequency average *exist* before March 19, 2020, when RELIEF trial enrollment concluded). Moreover, Plaintiff pleads no facts known to Defendants indicating that participants' cough frequency (which Defendants are not even alleged to have known) undermined Defendants' statements about RELIEF. Plaintiff does not plead, for example, that competitor studies showed, or that Defendants otherwise knew, that a higher cough frequency correlated with higher drug efficacy—much less "identify *with specificity* the documents or way in which [] contrary information was communicated to Defendants." *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *11 (S.D.N.Y. 2018) (emphasis added). None of Plaintiff's scienter arguments in the Opposition (at 25-31) change this conclusion:

***First***, Plaintiff contends that Defendants somehow had scienter merely because they are an "experienced team." (Opp. at 25-26.) Plaintiff does not cite a single case suggesting that this cursory assertion could possibly support scienter. Nor could he, as it is well established that "conclusory allegations of knowledge"—such as "allegations of a defendant's skill or experience"—"do not suffice." *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 460 (S.D.N.Y. 2019) (dismissing Section 10(b) claim).

9

***Second,*** Plaintiff contends, without citation to any factual support, that Defendants knew or should have known about the RELIEF participants' cough frequency because the information was supposedly "reasonably available." (Opp. at 26-27.) But, as Plaintiff's own cited cases make clear, a plaintiff must specifically allege that the information was, ***in fact***, available to defendants. *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *4-5 (S.D.N.Y. June 21, 2021).[7] Plaintiff alleges nothing of the sort. While Plaintiff points to the fact BELLUS is a small company, he does not, for example, allege that BELLUS employees personally conducted the trial—and, in fact, they did not. (Ex. 3 at S-10 ("We rely on third parties to conduct preclinical studies and clinical trials for BLU-5937").) Further, even if Plaintiff ***had*** adequately pleaded that Defendants knew RELIEF participants' average baseline cough frequency, this would still do nothing to establish scienter, because Plaintiff points to ***no*** "reasonably available" information establishing that Defendants' cautious optimism regarding the RELIEF trial was in any way misplaced or misleading due to this information. *Cf. Midwest Operating Engineers Pension Tr. Fund v. Alkermes Pub. Ltd. Co.*, 2021 WL 5782079, at *3 (2d Cir. Dec. 7, 2021) ("This is not an instance of the Defendants hiding from investors that the FDA considered the utilization of the [trial design to be] an absolute barrier to [the drug's] approval."). (*See* Mem. at 15-16.)

***Third***, Plaintiff's contention that there is scienter because BLU-5937 is a "core operation" is without merit. (Opp. at 28-29.) While Plaintiff claims vaguely that BLU-5937 is significant to BELLUS, he does not plead why ***a statistic about participants in a double-blind study prior to***

---

[7] *Yannes* itself is highly distinguishable. There, the Court concluded that the plaintiff had sufficiently pleaded that defendants knew (or recklessly ignored) that a key supplier could not fulfill its supply agreement where contemporaneous and publicly-available reports stated (a) that the supplier was not authorized to sell the product in question and (b) that the supplier was helmed by a convicted felon who had previously defrauded customers. 2021 WL 2555437, at *4-5. Moreover, defendants had claimed to have conducted substantial due diligence before choosing a supplier. *Id.* Those specific, concrete facts contradicted defendants' statements that the supplier had "all the attributes" needed, including "proper [] authorization" and "enough capacity." *Id.* at *5. By contrast, here, the AC lacks ***any*** specific facts contradicting Defendants' statements regarding the RELIEF trial.

*unblinding*—the basis for the AC's allegations here—is a core operation.  Further, even assuming the core operations doctrine is valid, it alone cannot support scienter, and "the import [of BLU-5937] cannot substitute for specific factual allegations linking the [d]efendants to the alleged fraud."  *Villare v. Abiomed, Inc.*, 2021 WL 4311749 at *23 (S.D.N.Y. Sept. 21, 2021).[8]

*Fourth*, Plaintiff contends that, by speaking knowledgeably to investors about the RELIEF trial and competitor studies, "Defendants either had direct knowledge of the [RELIEF] patient enrollment issue or refused to see the obvious about facts they had a duty to know and monitor." (Opp. at 29-31.)  But Plaintiff does not, and cannot, connect the two.  Describing competitors' trials requires no knowledge of how the RELIEF trial enrolled patients.  And discussing the RELIEF trial's enrollment criteria says nothing about the trial's (then non-existent) results.  Nor would it even have been *possible* for Defendants to make any such connection: RELIEF was *double-blind*, meaning that no Defendant knew or could have known the trial's outcome, or the impact of enrollment on that outcome, before completion.  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 519 n.4 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

### C.     Plaintiff Has Not Established Corporate Scienter.

Having failed to allege a strong inference of scienter as to any individual Defendant, Plaintiff falls back on an attempt to invoke the "corporate scienter" doctrine to impute collective corporate scienter to BELLUS.  (Opp. at 32-33.)  Even assuming this theory is viable, it applies only in "exceedingly rare instances" where a fraudulent statement is "so 'dramatic' that collective corporate scienter may be inferred," or where a plaintiff makes "particularized allegations that senior officers ignored . . . warnings," such that their knowledge may be imputed to the

---

[8]  Defendants preserve their argument that the core operations doctrine is inapplicable after the enactment of the PSLRA.  *See Villare*, 2021 WL 4311749 at *23.

corporation. *Jackson v. Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020).[9] This is not one of those "exceedingly rare instances": Plaintiff pleads no such "dramatic" statement; no "allegations of warnings" or "connective tissue between [individuals who knew of issues] and the alleged misstatements," *id.* at 99; and ultimately no facts indicating that anyone at BELLUS had reason to doubt Defendants' statements, such that scienter could be imputed to BELLUS.

### D. The Non-Fraudulent Inference Arising From Plaintiff's Allegations Is Far More Compelling.

Plaintiff has failed to raise ***any*** inference of scienter, much less one "at least as compelling as any opposing inference of nonfraudulent intent." *ECA*, 553 F.3d at 198. (*See* Mem. at 17-18.) Here, the opposing inference of nonfraudulent intent is far more compelling: namely, that BELLUS undertook a Phase 2 study, that Defendants believed in, to "assess the safety, tolerability, and efficacy of BLU-5937 in chronic cough patients."[10] That inference is well-supported by BELLUS's transparent public disclosures regarding RELIEF's design and enrollment criteria,[11] and by BELLUS's repeated warnings about the risks associated with BLU-5937 and RELIEF's potential outcome.[12] Far from the "foregone conclusion" of success Plaintiff claims (AC ¶ 5), BELLUS disclosed that RELIEF was "powered at more than 80% to see a 30% difference between BLU-5937 and placebo in awake cough frequency"—*i.e.*, BELLUS disclosed RELIEF ***would*** fail at least 1 out of 5 times, even if the drug worked, and Defendants were not promising that it did work. (AC ¶ 158; Ex. 26.) The securities laws do not require Defendants "to take a gloomy,

---

[9] The circuits are divided over whether corporate scienter can ever be inferred absent individual scienter. *Compare, e.g.*, *Jackson*, 960 F.3d at 98-99 (allowing for this possibility), *with Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (rejecting possibility). Defendants preserve the argument that corporate scienter cannot be levied here, though for all of the reasons herein, this Court need not reach that issue to dismiss the AC.

[10] *See, e.g.*, Ex. 5; Ex. 6; Ex. 8 ("The RELIEF study is a dose-escalation, placebo-controlled, and crossover design to assess the efficacy, safety, and tolerability of BLU-5937, a highly selective P2X3 antagonist, at four doses; 25, 50, 100 and 200 mg, administered orally, twice-daily").

[11] *See, e.g.*, Ex. 3 at S-42 ("The key inclusion criteria in the RELIEF trial are that patients must have . . . a cough count of >= 10 per hour (Awake Cough Count at Screening)").

[12] *See, e.g.,* Ex. 3 at S-10, S-12-14, S-33-35; *see also* Ex. 2 (chart of risk disclosures).

fearful or defeatist view of the future," and Defendants fairly balanced their optimism with their caution. *See Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

## IV.   PLAINTIFF HAS NOT ALLEGED ANY MATERIALLY MISLEADING STATEMENTS OR OMISSIONS.

Rather than addressing, much less refuting, Defendants' arguments that the AC fails to plead any actionable misstatement or omission, Plaintiff's Opposition simply introduces a new—equally deficient—disclosure theory. In the AC, Plaintiff originally alleged that BELLUS failed to disclose that RELIEF's "low cough frequency" as compared to competitors' studies was a "design flaw" that created "a high risk [that RELIEF] would not meet its primary endpoint." (*See, e.g.*, AC ¶ 140.) As set forth in Defendants' Memorandum, this theory fails to state a disclosure claim for numerous independent reasons:

- Plaintiff's omission-based "design flaw" theory is inaccurate. No competitor trial even *included* a minimum cough frequency requirement for enrolling participants—meaning that the only thing such trials could have "taught" was that a higher cough threshold was *unnecessary* for successful enrollment.[13] Further, the AC fails to plead that any study revealed better results in patients with higher cough frequency. In other words, the AC pleads no facts suggesting that RELIEF was designed for failure based on its cough frequency threshold. (Mem. at 20.)

- Defendants repeatedly *disclosed* the alleged "design flaw" on which the AC is premised: a 10 cough per hour threshold, and BELLUS's competitors disclosed their own trial results and designs. Even if facts from those trials "cut[] the other way," that does nothing to render misleading Defendants' (a) accurate statements about the RELIEF trial or (b) statements of opinion about RELIEF. *Tongue*, 816 F.3d at 211-12 (affirming dismissal where defendants withheld from investors FDA's "grave concerns" about clinical trial design). (Mem. at 20-21.)

- By challenging BELLUS's choice to set a particular enrollment criterion, Plaintiff is engaging in precisely the "second guess[ing]" of scientific judgment that this Court has repeatedly rejected. *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *12 (S.D.N.Y. June 8, 2016); *Abely v. Aeterna Zentaris Inc.*, 2013 WL 2399869, at *8 (S.D.N.Y. May 29, 2013) (granting motion to dismiss where "plaintiff's critiques all go toward the design of the study," amounting "to a competing view of how the trial should have been designed, not [a] material misstatement or omission"); *see also Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, __ F.4d __, 2022 WL 727149, at *1 (2d Cir. Mar. 11, 2022) (explaining that challenged "parameter in

---

[13] Indeed, some studies referenced in the AC included patients with *lower* cough counts, by both minimum and median frequency, than RELIEF. (AC ¶ 82 & n.17; Ex. 30 at 124; AC ¶¶ 84, 199.)

13

the clinical trial . . . involves a trade-off" between "expand[ed] [] pool of patients to whom the drug can be prescribed if it succeeds" and "odds of success" in the trial).  (Mem. at 22.)

Perhaps seeing the writing on the wall, rather than responding to these arguments, Plaintiff changed course in the Opposition.  The Opposition posits, for the first time, that Plaintiff's securities claims are based on Defendants' failure to disclose that RELIEF's "mean cough frequency" was lower than that of competitors' studies,[14] and then cites a bevy of general legal principles, labeled A though F (*see* Opp. at 15-23).  For the reasons explained below, Plaintiff's new theory of liability is nonsensical, and neither this theory nor the catalogue of legal principles Plaintiff recites salvage Plaintiff's failure to plead an actionable misstatement or omission.

### A.       Plaintiff's New Omission Theory Fails.

Plaintiff's newly-concocted concept, that Defendants misleadingly omitted that the RELIEF trial's "mean cough frequency" was allegedly lower than competitors' studies (*see* Opp. at 13, 16), makes no sense for at least three reasons:

***First***, Defendants' statements must be judged by "by assessing the facts as they existed" at the time, *Johnson v. Sequans Commc'ns S.A.*, 2013 WL 214297, at \*12 (S.D.N.Y. Jan. 17, 2013)— but the "mean cough frequency for BELLUS's study" ***did not exist*** for most of the Class Period (which ended on July 6, 2020).  Specifically, calculating a "mean cough frequency" for all trial participants necessarily requires all trial participants to be ***enrolled***—but RELIEF's enrollment was not completed until March 2020, and dosing was not completed until April 2020.  (AC ¶ 156; Ex. 9; AC ¶ 158; Ex. 26.)  Until then, it was ***not possible to calculate or know*** RELIEF participants' "mean cough frequency."  At the very least, therefore, every pre-April 2020 statement in the AC is not actionable, because the allegedly omitted information did not yet ***exist***.  This

---

[14]  Opp. at 17 ("***This*** is the omission necessary to make Defendants' statements not misleading."); *id*. at 13 ("Unlike BELLUS, the competitors had tested their drugs on more patients with higher cough frequencies.").

timing issue alone dooms Plaintiff's Securities Act claims, which are based solely on alleged omissions in Prospectus materials that BELLUS issued in September 2019—months before the allegedly omitted information even existed.

*Second*, a post-enrollment trial population statistic of average coughs per hour is not a trial *design* feature at all.  Defendants did not choose a particular average baseline cough frequency for its study population, and Plaintiff does not plead that they did.  Rather, BELLUS designed a trial to test a study population based on particular inclusion and exclusion criteria, which Defendants disclosed publicly and summarized accurately in the Prospectus and subsequent materials.  (AC ¶ 96 & n.25; Ex. 7; Ex. 3 at S-42; Mem. at 4-5 (describing criteria).)  BELLUS's trial design and enrollment criteria, moreover, *were* consistent with competitors' (double-blind, with participants receiving escalating doses or placebo in each half of the trial).  Indeed, some patients in competitor trials had *lower* cough counts than in RELIEF (as low as 0.4/hr, only *4%* of BELLUS's minimum, AC ¶ 82 & n.17; Ex. 30 at 124).  Put differently, reaching a particular average baseline cough frequency was not part of *anyone's* trial design, and *every* RELIEF patient enrolled fell within the acceptable cough frequency range for competitors' trials.  (Mem. at 7 (chart of trial criteria).)

Nor did Defendants' accurate statements regarding RELIEF's minimum threshold of 10 coughs per hour somehow cause "investors to believe that the mean cough frequency for BELLUS's study would be about the same, if not higher, than competitors' mean cough frequency." (Opp. at 17.)  Plaintiff does not point to a single statement by any Defendant regarding the RELIEF population's expected average cough frequency—because no such statements exist.  By telling the market that the trial's minimum cough frequency was 10, Defendants were saying just that: participants' cough frequencies would be "higher" than 10, not "higher" than some other unidentified number.  These wholly accurate statements were in no way misleading.

15

**Third**, even if Defendants **had** known of RELIEF participants' mean baseline cough frequency, Plaintiff fails to plead, and the Opposition fails to explain, how such knowledge would render any of Defendants' statements misleading.  The RELIEF trial's median cough frequency was actually **higher** than that of another successful trial, and no trial had ever correlated baseline cough frequency to efficacy for this class of drugs or revealed better results in patients with higher cough frequency.  (Mem. at 15-16 & n.17.)  Plaintiff's claim thus amounts to a non-actionable, "backward-looking assessment" of Defendants' statements, made "with the benefit of 20/20 hindsight" knowledge that the RELIEF trial was unsuccessful particularly in the less-frequent coughers.  *See In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 450 (S.D.N.Y.), *aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) (dismissing Section 11 claims).

Apart from these issues, the Opposition repeats two downright falsehoods from the AC, both debunked by documents incorporated into the AC itself.  First, Plaintiff claims that Defendants "stunn[ed] investors" on April 6, 2020 because they suggested "a small Ph[ase] 2b [trial] may be necessary."  (Opp. at 10 (quoting AC ¶ 196).)  In actuality, as Defendants explained in their opening Memorandum, BELLUS's September 2019 **Prospectus** had warned, months earlier, that BELLUS "**expect[ed]** to initiate **either a Phase 2b** or a Phase 2/3 trial" after RELIEF. (Ex. 3 at S-4 (emphasis added); *see* Mem. at 8, 26.)  Second, Plaintiff again claims that "Defendants conveyed that [] competitors' successful trials were **proof** that BLU-5937 was effective."  (Opp. at 16 (emphasis added); *see* AC ¶ 5 ("efficacy was virtually a foregone conclusion").)  This claim blatantly misrepresents Defendants' statements, which were made as part of presentations that expressly **disclaimed** a direct comparison between RELIEF and competitor trials, (*see* Mem. at 22-23; Ex. 31; Ex. 32), and the Company's risk disclosures were explicit that "[t]he clinical effectiveness of BLU-5937 is not yet supported."  (Ex. 3 at S-12.)

**B.    Plaintiff's Sub-Arguments, Labeled A-F, Fail To Save Plaintiff's Deficient Claims.**

*A-Materiality & B-Truth On The Market (Opp. at 15-18)*: Both arguments are strawmen. The problem with Plaintiff's case is not materiality alone, but that Plaintiff does not—and cannot— plead that any of Defendants' statements were materially *misleading*.  Nor are Defendants invoking the "truth on the market" defense to argue that any "misrepresentation is immaterial" because the "information [wa]s already known to the market." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000).  To the contrary, Defendants *made no misrepresentations* at all.

*C-Opinion Statements (Opp. at 18-20)*: The Opposition states only that an opinion statement is not a "magic shield against liability." (Opp. at 18-19 (quoting *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at *9-10 (S.D.N.Y. Sept. 30, 2021)).)  Defendants do not argue otherwise.  Rather, the AC fails to plead any actionable statement of opinion because Plaintiff fails to allege—as he must under Second Circuit precedent—any evidence of a "serious conflict" between specific facts and "Defendants' optimism." *Tongue*, 816 F.3d at 212.

Specifically, Plaintiff points to no fact that "serious[ly] conflict[s]" with the optimism Defendants had for RELIEF, which was well-founded: RELIEF's baseline cough frequency did not "conflict" with any of Defendants' statements (*see supra* at 9-10); no study had shown that lower cough frequency resulted in lower efficacy (*see* Mem. at 6-7); and the RELIEF trial was designed similarly to competitors' studies (*see id.*).  By comparison, in *Tongue*, the defendants failed to tell investors that *the government* had expressed "*grave concerns*" about whether a trial's design would generate useable results.  *Tongue*, 816 F.3d at 206 (emphasis added).  Yet even then, the Second Circuit rejected the claim due to the "absence of any serious conflict" between the government's skepticism and the defendants' optimism.  *Id.* at 212.  Here, Plaintiff has pointed to *no* contemporaneous facts and *no* concerns expressed by anyone regarding RELIEF's potential

17

success. Ultimately, "a statement of opinion is not misleading just because external facts show the opinion to be incorrect," *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188 (2015), and there is no basis to find the opinion statements here actionable. *See also Bristol-Myers Squibb*, __ F.4d __, 2022 WL 727149, at \*8 (affirming dismissal of Section 10(b) claims; "[a]lthough [plaintiffs] argue at length that the trial was riskier than [plaintiffs] (with hindsight) believe was necessary, they make no claim (and allege no facts indicating) that these statements of opinion were false").[15]

*D-Statutory Safe Harbor For Forward-Looking Statements & E-Risk Disclosures (Opp. at 20-22)*: Defendants specifically identified the statements that are forward-looking, protected by the safe harbor, and thus non-actionable. (*See* Ex. 1 (chart of alleged statements).) Rather than attempting to engage with, much less refute, Defendants' argument, Plaintiff simply states that the safe harbor does not apply to material omissions or "various statements" of fact that "are not forward looking." (Opp. at 21.) But he still claims to be pursuing affirmative misstatements (*see, e.g.*, Opp. at 14 ("misstatements and omissions")), and plainly many of Defendants' statements were not rooted in historical fact (*see, e.g.*, AC ¶ 143 ("The trial . . . is *expected* to build on the Phase 1 evidence") (emphasis added)), so neither argument is dispositive. The Opposition also ignores that Defendants' statements regarding RELIEF were accompanied by meaningful, cautionary disclosures. (Mem. at 23-24; Ex. 2 (chart of risk disclosures).) BELLUS affirmatively told the market that BELLUS's trials could fail (Ex. 3 at S-12); that additional Phase 2 trials may

---

[15] Both of Plaintiff's cited cases are inapposite for this reason as well. *In re Wells Fargo* dealt with a complaint that "clearly identified *specific material facts that conflict[ed]* with [defendant's] statement" that the company was on track to comply with a consent order, when in actuality defendant was on notice that the "plans were insufficient and [] materially incomplete." 2021 WL 4482102, at \*14 (emphasis added). Plaintiff's other case, *Micholle v. Ophthotech Corp.*, involved a pure factual contradiction. 2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019). On the one hand, defendants repeatedly claimed they had made "no meaningful changes to the inclusion and exclusion criteria" between two clinical trials. *Id.* at \*12. On the other hand, documents incorporated into the complaint showed that 17% of the relevant patient population would have been included in one trial but not the other. *Id.* Even then, despite this discrepancy, the Court described the matter as "a close question." *Id.* at \*11.

be needed (*id.* at S-37); and that competitors could outcompete BELLUS (*id.* at S-15, S-48). No more is required. *See Bristol-Myers Squibb*, __ F.4d __, 2022 WL 727149, at *7 (affirming dismissal where "[a]ll of the statements identified by [plaintiffs] were made on earnings calls or in presentations in which the relevant risk—that the trial may fail to reach its primary endpoint—was fully disclosed"); *Aratana*, 315 F. Supp. 3d at 760 (dismissing Section 11 claims where "statements satisfactorily armed investors with all the information necessary to evaluate the risks" regarding timeline for commercial release of company's drug).[16]

 ***F-Plaintiff's Catchall (Opp. at 22-23)***: In its final section, the Opposition fails wholly to address the extensive case law holding that disagreements concerning scientific or business judgment—which is all Plaintiff alleges here—"amount to a non-actionable critique of defendants' study design." *Abely*, 2013 WL 2399869, at *8. Elsewhere, the Opposition doubles down on the AC's "non-actionable critique," arguing that "if [BELLUS] had followed [its] competitors' study parameters," BELLUS "could have proven that BLU-5937 was effective." (Opp. at 14.) This is exactly the kind of armchair quarterbacking that has no place in the securities laws. *See In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, 2014 WL 585658, at *1 (S.D.N.Y. Feb. 14, 2014) ("It would indeed be unjust—and could lead to unfortunate consequences beyond a single lawsuit—if the securities laws become a tool to second guess how clinical trials are designed and managed.").

## V. PLAINTIFF'S SECURITIES ACT CLAIMS ARE TIME-BARRED.

 Contrary to Plaintiff's protestations, the AC's claims do not relate back to the claims asserted in the original complaint. First, Plaintiff does not even bother addressing Defendants'

---

[16] In *Bristol-Myers Squibb*, as here, the plaintiffs argued that—beyond making clear that the drug trial might fail—the company "had an obligation to disclose ***why*** the trial might fail—*i.e.*, [the specific enrollment criteria at issue]." __ F.4d __, 2022 WL 727149, at *7 (emphasis original). (*Cf.* Opp. at 22 ("Defendants do not identify risks disclosures warning . . . of lower cough frequency").) The Second Circuit rejected that argument out of hand, writing that plaintiffs "cite no law to support such an argument." __ F.4d __, 2022 WL 727149, at *7. The same is true here; Plaintiff cites no case requiring Defendants to predict the particular way(s) in which the RELIEF trial could be unsuccessful.

point that Dr. Bonuccelli was added to this case after the expiration of the limitations period. (Mem. at 30.)  Thus, any counterargument is waived.  Second, as detailed below, Plaintiff misreads the law concerning relation back, which is "only appropriate in securities actions where the new allegations relate to the same or similar conduct complained of in the original complaint."  *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010).

Here, the theory in the AC is new.  Specifically, Plaintiff's original complaint claimed that BELLUS misled investors about how BLU-5937's high selectivity for the P2X3 receptor allegedly led to the drug being less efficacious.  (*See, e.g.*,  Compl. ¶¶ 5, 31.)  In contrast, the AC drops the original complaint's premise that BLU-5937's selectivity negatively impacted the RELIEF trial, and instead claims—for the first time—that RELIEF's cough threshold was too low.  (*See, e.g.*, AC ¶¶ 55, 124.)  Plaintiff has completely changed the basis for his claims; thus, the AC does not relate back to the original complaint and is time-barred.

Plaintiff's two cases do not alter this conclusion.  In *Slayton v. American Express Co.*, the Second Circuit found that the allegations in an amended complaint were "expect[ed]" based on the allegations in the original.  460 F.3d 215, 228-29 (2d Cir. 2006).  Similarly, in *Benfield v. Mocatta Metals Corp.*, the Court held that proof of a RICO claim related back to a previously asserted securities claim because both concerned "the same or similar wrongful acts" and relied on common witnesses.  26 F.3d 19, 23 (2d Cir. 1994).  By contrast, here—as in *Noah*—Plaintiff's AC does not "relate to the same or similar conduct complained of in the original complaint," and dismissal is in order.  2010 WL 1372709, at *9.

## CONCLUSION

For all of these reasons, the Court should dismiss the AC with prejudice.

20

Dated: March 14, 2022

Respectfully submitted,

BELLUS HEALTH, INC., ROBERTO BELLINI,
FRANÇOIS DESJARDINS, AND DR.
CATHERINE BONUCCELLI

By their attorneys,

*/s/ Caroline H. Bullerjahn*
Caroline H. Bullerjahn
Courtney D. Orazio (*pro hac vice*)
Tucker DeVoe (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
cbullerjahn@goodwinlaw.com
corazio@goodwinlaw.com
tdevoe@goodwinlaw.com

*Attorneys for Defendants BELLUS Health, Inc.,*
*Roberto Bellini, François Desjardins, and Dr.*
*Catherine Bonuccelli*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all attorneys of record.

<u>/s/ Caroline H. Bullerjahn</u>
Caroline H. Bullerjahn
