**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARL D. CACHIA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BELLUS HEALTH INC., ROBERTO BELLINI, FRANÇOIS DESJARDINS, DR. CATHERINE BONUCCELLI, DR. JACKY SMITH, JEFFERIES LLC, COWEN AND COMPANY, LLC, GUGGENHEIM SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, and BLOOM BURTON SECURITIES INC.,<br><br>　　　　Defendants. | No. 1:21-CV-02278-GBD<br><br>Date of Service: March 14, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT DR. JACKY SMITH'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Defendant Dr. Jacky Smith respectfully submits this reply memorandum of law in further support of her motion to dismiss the Amended Complaint filed by plaintiff Carl D. Cachia ("Plaintiff").  Dr. Smith joins in the arguments made by Defendants BELLUS Health Inc. ("BELLUS," or "the Company"), Roberto Bellini, Dr. Catherine Bonuccelli, and Francois Desjardins (collectively with BELLUS, "Co-Defendants") in their reply memorandum of law in support of their motion to dismiss the Amended Complaint ("Co-Defendants' Reply," Dkt. No. 70), to the extent applicable.

## INTRODUCTION

Plaintiff's opposition to Dr. Smith's motion to dismiss confirms that Dr. Smith has no place in this litigation.  Plaintiff makes no effort to support his allegation that Dr. Smith should be held liable under the Exchange Act for allegedly actionable statements made by others.  For the few statements that Plaintiff attributes directly to Dr. Smith, Plaintiff's argument is premised on alleged financial motivations and knowledge supposedly possessed by company employees.  Yet that argument is inapplicable to Dr. Smith because the Amended Complaint does *not* allege that Dr. Smith was an employee of BELLUS.

Construing his allegations liberally, Plaintiff's claim against Dr. Smith relies on the mistaken assumptions that Dr. Smith knew or recklessly disregarded the fact that the average cough frequency of the patient population in the RELIEF study was *materially* different from the average cough frequency of the patient populations in prior competitors' studies, and that the RELIEF study would fail to produce a positive result as a consequence of that difference.  But neither assumption is alleged in the Amended Complaint.  Plaintiff does not allege that Dr. Smith knew, at the time of her statements, that the average cough frequency for RELIEF patients was materially different from competitors'.  Nor does Plaintiff allege that any competitor had reported results indicating that P2X3 receptor antagonists were only effective on patients with

1

even higher cough frequencies than those in the RELIEF study.  Any information about that potential relationship only came to light through the RELIEF study itself.  Thus Plaintiff's claim is tantamount to arguing that Dr. Smith should have known the outcome of the RELIEF study before it had even been completed.  This argument is absurd.

For these reasons and for the reasons set forth in Co-Defendants' Reply at Parts I, II, III, and IV, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I.      Plaintiff fails to state a claim under the Exchange Act.**

**A.  Plaintiff fails to plead facts giving rise to a strong inference of scienter.**

Dr. Smith joins in the arguments made by Co-Defendants in Part III of their Reply. Plaintiff's argument regarding Dr. Smith's scienter is particularly weak because the Amended Complaint does not allege that she is an employee of BELLUS and many of Plaintiff's arguments are based on this premise.  (*See e.g.*, Plaintiff's Omnibus Memorandum of Law in Opposition to the Motions to Dismiss, hereinafter "Pl. Br.," at 27, 28.)   For example, Plaintiff alleges that BELLUS had a motive to conceal information from investors about the likelihood of success of the RELIEF study because BELLUS "needed money."  (Pl. Br. at 32.)   As a mere "advisor" to BELLUS (AC ¶ 32) and not an employee, however, potential gain Dr. Smith may have stood to derive from BELLUS's fundraising (*see* Pl. Br. at 32)—if any—is too attenuated to support an inference that she had a motive to defraud investors.[1]  Rather, the non-fraudulent inference—that Dr. Smith designed a clinical trial that she believed had a good chance of success—is far more "cogent" and "compelling."  *See Tellabs, Inc. v. Makor Issues & Rights,*

---

[1] Moreover, Plaintiff has not alleged that Dr. Smith *knew* that "without an IPO and bolstered stock price, BELLUS could not continue seeking FDA approval," nor has he made any particularized allegations indicating that this statement was even true.  (Pl. Br. at 32.)

*Ltd.*, 551 US 308, 314 (2007). Plaintiff has also made no particularized allegations of motive as to Dr. Smith, and therefore fails to adequately plead that she acted with the requisite scienter through this avenue.

Plaintiff's attempt to establish a strong inference that Dr. Smith acted with "an intent to deceive, manipulate or defraud" by arguing that she acted recklessly is similarly baseless. *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F. 3d 187, 198 (2d Cir. 2009). Where a plaintiff fails to make a showing of motive, the "strength of the circumstantial allegations" showing a "strong inference of scienter . . . must be correspondingly greater." *Id. at* 199 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)). With respect to Dr. Smith specifically, Plaintiff contends that, because BELLUS described her as a "world-renowned expert in chronic cough" (Pl. Br. at 26), and because Dr. Smith was "Principal Investigator of BELLUS's Phase 2 RELIEF trial of BLU-5937 and/or Chairman of the Clinical Advisory Board and hosted at least two Key Opinion Leader ('KOL') meetings held by the Company" (*id.* at 27), Dr. Smith somehow: (1) "knew or had access to the cough frequency of the patients being enrolled in the RELIEF study" (*id.*), [2] and therefore (2) "knew of or recklessly ignored that the RELIEF study had *material* different patients, and in turn, *material* different risks as compared to competitors' successful studies." (*Id.* at 26 (emphasis added).)

---

[2] Plaintiff alleges in his response brief, without citation to the Amended Complaint or any other source, that BELLUS was a small company (with 32 employees as of February 2021) and that "[i]n that tight-knit environment," Dr. Smith and the Individual Defendants, "knew or had access to the cough frequency of the patients being enrolled in the RELIEF study." (Pl. Br. at 27.) Again, Plaintiff ignores the fact that Dr. Smith is not alleged to have been an employee of BELLUS, and Plaintiff does not cite any legal support for the claim that employees of a small company necessarily have access to highly specific details regarding the company's clinical trials.

3

Even assuming Plaintiff's first inference is credible—although it is not, based on his allegations—Plaintiff's second inference does not logically follow.  Plaintiff has not alleged that *anyone* knew, prior to the completion of the RELIEF study and analysis of its results, of the existence of *material* differences in the patient populations in the competitor trials and the BELLUS trial, or that such differences would be expected to cause a corresponding change in the outcome of the RELIEF study.  In other words, while the Amended Complaint alleges that the Merck trials and Shionogi trial had mean coughs per hour in the 40s and 50s (AC ¶¶ 4, 110), it does not allege the existence of data reflecting that those companies' drugs would have been less effective if the trial participants had a lower average cough frequency, much less that Dr. Smith had knowledge of any such (non-existent) data.[3]  By Plaintiff's own admission, he bears the burden to "identify the 'way in which [] contrary information was communicated to [d]efendants.'"  (Pl. Br. at 27 n.14 (citations omitted).)  But Plaintiff has done no such thing – he has not identified any source of information indicating that the average cough frequency of the patient population in the RELIEF study was likely to be insufficient to produce a positive result, let alone that Dr. Smith knew of or recklessly disregarded such information.  Accordingly, Plaintiff fails to allege the requisite "strong inference" of scienter.

### B.  Plaintiff fails to plead any actionable statements attributable to Dr. Smith.

Plaintiff has also failed to respond to Dr. Smith's arguments regarding the group pleading doctrine (Opening Br. 6-8), thus conceding that Dr. Smith cannot face liability under the PSLRA for statements made by others, as alleged in the Amended Complaint.  (*See* AC ¶ 37.)  As to statements that Dr. Smith was alleged to have made herself, Dr. Smith joins in the arguments

---

[3] And in at least one pre-RELIEF study by Merck, participants' median baseline cough frequency was 28.9 coughs per hour (AC ¶ 84), *less* than the RELIEF trial's median of 32.4 coughs per hour (AC ¶ 199), demonstrating the opposite conclusion.

4

made by Co-Defendants in Part IV of their Reply.  The handful of alleged misrepresentations that are attributed to Dr. Smith in the Amended Complaint occurred at a single event after the alleged "partial disclosure" in which BELLUS stated that "[i]f no minimum efficacy dose [was] observed, a small Ph[ase] 2b [might] be necessary," (AC ¶ 196), and none of the challenged statements was false or misleading.

For example, Plaintiff complains that "Defendants repeatedly flaunted competitors' data as support for BLU-5937," (Pl. Br. at 6) by making statements that "P2X3 receptor antagonists are a clinically validated target based on the work that has been done by Merck with their drug gefapixant, known as MK-7264 …."  (AC ¶ 166.)  Plaintiff now contends that Dr. Smith's statement "tout[ed] that [BLU-5937] had been 'clinically validated,'" (Pl. Br. at 16) but this is a complete mischaracterization of her words.  Dr. Smith clearly stated that the P2X3 receptor antagonists were a clinically validated target.  This factually accurate statement cannot be construed as misleading.

Similarly, Plaintiff takes issue with Dr. Smith's statement that the RELIEF study was "very similar to many of the other Phase II trials that have been done, except the larger numbers. . . . [B]aseline cough severity scores . . . if anything, **are at the higher end** and more comparable to those seen in the Shionogi study."  (Pl. Br. at 13 (quoting AC ¶ 167) (emphasis in original).)  Plaintiff complains that Dr. Smith and others "misleadingly represented that [BELLUS was] following the design of competitors' successful trials, and therefore, that there was a high likelihood of BELLUS also showing that BLU-5937 was effective in treating chronic cough."  (Pl. Br. at 13.)  Yet Plaintiff's selective quotation of Dr. Smith's statement is misleading; Dr. Smith's actual statement is not.  First, the "larger numbers" to which Dr. Smith was referring were the *larger number of patients* enrolled in the RELIEF study, as compared to competitors'

5

prior trials.  What Dr. Smith actually said was: "[RELIEF is] very similar to many of the other Phase II trials that have been done, except the larger numbers.  Other Phase IIa trials have been very much in 20 to 30 *patients*, whereas this is a total of 68."  (AC ¶ 167 (emphasis altered).) Plaintiff does not dispute the factual accuracy of this statement, nor does he explain how it is misleading (because it is not).  Second, by complaining about Dr. Smith's statement that baseline cough *severity* scores were at the "higher end," Plaintiff appears to conflate "cough severity score," a subjective measure of cough severity for a given patient, with "cough frequency," a literal counting of a given patient's number of cough.[4]  Dr. Smith explained that the RELIEF trial was "looking for patients who score more than 40 on a cough severity scale," (AC ¶ 167), which was identical to the enrollment criterion in one of Merck's trials (AC ¶ 79)—and many trials did not have that requirement at all.  (*See* Co-Defendant's Opening Brief at 7 (chart of enrollment criteria).)  Plaintiff does not dispute that "cough severity scores" for participants in the RELIEF study were at the "higher end" as compared to competitors' trials—particularly when some trials had no minimum severity at all—nor does he explain why this statement is misleading (because it is not).

Finally, Plaintiff complains that Dr. Smith caused the market to assume that the average cough frequency of the RELIEF study would be higher than those of competitors' studies because she stated that BELLUS was using a minimum cough frequency cutoff whereas competitors' studies had not.  (Pl. Br. at 17.)  BELLUS's public RELIEF trial protocol transparently and accurately stated that the company was using a cough frequency baseline of 10

---

[4] *See* Surinder S. Birring, MD & Arietta Spinou, MSc, "How Best To Measure Cough Clinically," available at https://kclpure.kcl.ac.uk/portal/files/120858084/How_best_to_measure_BIRRING_Epub25Mar2 015_GREEN_AAM.pdf (a version of this article was later published in *Current Opinion in Pharmacology*).

coughs per hour.  (*See* Co-Defendant's Opening Brief at 20.)  According to Plaintiff, the average cough frequency of BELLUS's competitors' trials was also in the public domain.  (Pl. Br. at 9.) Given that the minimum cough frequency requirement for the BELLUS trial was significantly lower than the average cough frequency of patients in competitors' trials, the Amended Complaint's own allegations make clear that it would have been unreasonable for Plaintiff (or the market generally) to conclude that the average cough frequency of the patient population in the RELIEF study would necessarily be as high or higher than that of competitors' studies.  In any event, Dr. Smith's statement was not made recklessly or with an intent to mislead because, at the time the statement was made, Dr. Smith had no basis to know that BLU-5937 would not be effective in patients with fewer than 32.4 coughs per hour, nor does Plaintiff allege any such basis for Dr. Smith's knowledge.  The Amended Complaint does not allege, for example, that any study had revealed more favorable results in patients with higher cough frequency.  Dr. Smith's statement, therefore, is not actionable.

**II.      Plaintiff fails to allege facts supporting statutory standing.**

For the reasons set forth in Part I of Co-Defendants' Reply, Plaintiff lacks standing to bring his claim against Dr. Smith under the Exchange Act.

**III.     Plaintiff fails to plead facts supporting personal jurisdiction.**

Plaintiff does not dispute that he has not established general personal jurisdiction over Dr. Smith. With respect to Plaintiff's failure to allege facts supporting specific personal jurisdiction, Dr. Smith joins in the arguments made by Co-Defendants in Part II of their Reply.

<u>**CONCLUSION**</u>

For all of these reasons, the Court should dismiss with prejudice Plaintiff's claim against Dr. Smith.

Dated:  New York, New York
       March 14, 2022

Respectfully submitted,

LANKLER SIFFERT & WOHL LLP


By:   */s/ Jillian B. Berman*
       Jillian B. Berman
       Daniel E. Reynolds
       Ramya Kasturi

500 Fifth Avenue, 34th Floor
New York, NY 10110
Telephone (212) 921-8399
Fax (212) 764-3701
jberman@lswlaw.com
dreynolds@lswlaw.com
rkasturi@lswlaw.com

*Attorneys for Defendant Jacky Smith*

8