**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARL D. CACHIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BELLUS HEALTH INC., ROBERTO BELLINI, FRANÇOIS DESJARDINS, CATHERINE BONUCCELLI, and JACKY SMITH, <br><br> Defendants. | No. 1:21-CV-02278-GBD <br><br> CLASS ACTION <br><br> ORAL ARGUMENT REQUESTED |

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   RELEVANT PROCEDURAL HISTORY ......................................................................... 4

III.  ARGUMENT ................................................................................................................... 6

    A.    Liberal Standard for Leave to Amend. .......................................................... 6

    B.    Plaintiff's Motion is timely and not the result of bad faith. ......................... 9

    C.    Defendants will not be unduly prejudiced by the amendment. ................... 10

    D.    The requested amendment is not futile. ...................................................... 12

        1.   The PSAC Bolsters the Complaint's Allegations that Defendants Knowingly or Recklessly Made Material Misstatements or Omissions. ................................ 13

        2.   The PSAC More Explicitly Alleges Jurisdiction and Statutory Standing. ........... 18

            a.   The PSAC sufficiently alleges personal jurisdiction. ..................................... 20

            b.   The PSAC sufficiently alleges statutory standing. ........................................ 21

IV.   CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Abbey v. Skokos*,
   303 F. App'x 911 (2d Cir. 2008).................................................................................. 6

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
   677 F.3d 60 (2d Cir. 2012)........................................................................................ 22

*Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*,
   2013 WL 4526246 (S.D.N.Y. Aug. 27, 2013) ........................................................ 10

*Agerbrink v. Model Serv. LLC*,
   155 F. Supp. 3d 448 (S.D.N.Y. 2016)............................................................ 9, 10, 11

*Anthony v. City of N.Y.*,
   339 F.3d 129 (2d Cir. 2003)........................................................................................ 7

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993)...................................................................................... 11

*Bodum Holding AG v. Starbucks Corp.,*
   2020 WL 6135714 (S.D.N.Y. Oct. 16, 2020) ............................................................ 9

*Boyer Works USA, LLC v. Rubik's Brand Ltd.,*
   2022 WL 355398 (S.D.N.Y. Feb. 7, 2022) .............................................................. 10

*City of Omaha Police & Fire Ret. Sys. V. Evoqua Water Techs. Corp.*,
   450 F. Supp. 3d 379 (S.D.N.Y. 2020)...................................................................... 23

*Contrera v. Langer*,
   314 F. Supp. 3d 566 (S.D.N.Y. 2018)........................................................................ 9

*Cotto v. Fed. Nat'l Mortgage Ass'n,*
   2021 WL 4340668 (S.D.N.Y. Sept. 22, 2021)..................................................... 8, 10

*Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*,
   2021 WL 2075586 (S.D.N.Y. May 24, 2021)........................................... 7, 8, 10, 11

*Fed. Hous. Fin. Agency for Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.,*
   873 F.3d 85 (2d Cir. 2017)................................................................................. 13, 14

*Francisco v. Abengoa, S.A.*,
   559 F. Supp. 3d 286, 312 (S.D.N.Y. 2021)....................................................... 10, 11

*Giunta v. Dingman*,
   893 F.3d 73 (2d Cir. 2018)........................................................................................ 21

*Gordon v. Tencent Music Ent. Grp.,*
  2021 WL 6113263 (E.D.N.Y. Dec. 27, 2021) ............................................................... 12

*Hamstead v. W. Va. State Police,*
  2019 WL 12313517 (N.D. W. Va. Jan. 7, 2019) ............................................................. 8

*Hayden v. County of Nassau,*
  180 F.3d 42 (2d Cir. 1999) .............................................................................................. 12

*In re Atlas Worldwide Holdings, Inc. Secs. Litig.,*
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) ............................................................................ 19

*In re Banco Bradesco S.A. Sec. Litig.,*
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ............................................................................ 20

*In re Barclays Liquidity Cross & High Frequency Trading Litig.,*
  390 F. Supp. 3d 432 (S.D.N.Y. 2019) ............................................................................ 21

*In re BRF S.A. Sec. Litig.,*
  2019 WL 12875444 (S.D.N.Y. May 3, 2019) ................................................................ 12

*In re Express Scripts/Anthem ERISA Litig.,*
  285 F. Supp. 3d 655 (S.D.N.Y. 2016) ............................................................................ 12

*In re Madison Asset* LLC,
  2021 WL 1894032 (S.D.N.Y. May 11, 2021) ............................................................. 6, 12

*In re Moody's Corp. Sec. Litig.,*
  599 F. Supp. 2d 493 (S.D.N.Y. 2009) .............................................................................. 8

*In re OSI Pharms., Inc. Sec. Litig.,*
  2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007) ............................................................... 15

*In re Pareteum Sec. Litig.,*
  2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) ............................................................... 23

*In re Petrobras Sec. Litig.,*
  116 F. Supp. 3d 368 (S.D.N.Y. 2015) ............................................................................ 22

*In re Take-Two Interactive Sec. Litig.,*
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) .............................................................................. 8

*In re World Wrestling Ent., Inc. Sec. Litig.,*
  180 F. Supp. 3d 157 (D. Conn. 2016) ............................................................................ 14

*Indiana Pub. Ret. Sys. v. SAIC, Inc.,*
  818 F.3d 85 (2d Cir. 2016) ................................................................................................ 7

*Joint Stock Co. v. Infomir LLC,*
    2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ....................................................... 8, 10

*Lapiner v. Camtek, Ltd.*,
    2011 WL 445849 (N.D. Cal. Feb. 2, 2011)............................................................... 21

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021)..................................................................... 14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)............................................................................... 3, 6

*Michael Miller Fabrics, LLC v. Studio Imps. Ltd., Inc.*,
    2012 WL 4513546 (S.D.N.Y. Oct. 1, 2012) ............................................................. 9

*Micholle v. Ophthotech Corp.*,
    2019 WL 4464802 (S.D.N.Y. Sept. 18, 2019).......................................................... 15

*Morrison v. Nat'l Aus. Bank Ltd.*,
    561 U.S. 247 (2010) .......................................................................................... 21

*New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*,
    2021 WL 930616 (S.D.N.Y. Mar. 11, 2021) ............................................................ 9

*Oliver Schs., Inc. v. Foley*,
    930 F.2d 248 (2d Cir. 1991)................................................................................. 7

*Osher v. JNI Corp.*,
    183 F. App'x 604 (9th Cir. 2006)........................................................................... 8

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
    2013 WL 3466810 (S.D.N.Y. July 8, 2013) ........................................................... 12

*Owen v. Elastos Found.*,
    2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021)........................................................... 20

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012)................................................................................. 7

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017)................................................................................. 7

*Pettaway v. Nat'l Recovery Sols.*, LLC,
    955 F.3d 299 (2d Cir. 2020)................................................................................. 8

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021)................................................................................. 13

*Richardson Greenshields Sec., Inc. v. Lau*,
825 F.2d 647 (2d Cir. 1987) ............................................................................................ 9

*Schentag v. Nebgen*,
2018 WL 3104092 (S.D.N.Y. June 21, 2018) ................................................................. 22

*Schneiderman v. American Chem. Soc'y*,
2020 WL 2522120 (E.D.N.Y. May 18, 2020) ................................................................ 12

*Schvimmer v. Off. of Ct. Admin.*,
857 F. App'x 668 (2d Cir. 2021) ...................................................................................... 7

*Set Cap. LLC v. Credit Suisse Grp. AG*,
996 F.3d 64 (2d Cir. 2021) ....................................................................................... 14, 18

*Stone v. Agnico-Eagle Mines Ltd.*,
280 F.R.D. 142 (S.D.N.Y. 2012) .................................................................................... 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ........................................................................................................ 18

*United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
889 F.2d 1248 (2d Cir. 1989) ........................................................................................... 6

*W.B. David & Co. v. De Beers Centenary AG*,
2005 WL 3704690 (S.D.N.Y. Sept. 2, 2005) ............................................................. 9, 12

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) ............................................................................................. 6

*Wilson v. Merrill Lynch & Co.*,
671 F.3d 120 (2d Cir. 2011) ...................................................................................... 13, 14

**Other Authorities**

Fed. R. Civ. P. .................................................................................................................... 1, 3, 6

Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2), Lead Plaintiff Carl D. Cachia ("Plaintiff") respectfully submits this Memorandum of Law in Support Thereof his Motion for Leave to Amend the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF No. 33) (the "Motion") and file the Proposed Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "PSAC"), attached as Exhibit B to the Declaration of Constantine P. Economides in Support of Plaintiff's Motion for Leave to Amend Complaint ("Economides Decl.").[1] For the convenience of the Court, Plaintiff has attached as Exhibit A to the Economides Decl. a redline comparison of the PSAC to the Complaint. The new substantive allegations in the PSAC strongly support and elaborate on matters raised in the Complaint and are narrowly tailored to address the concerns raised in Defendants' motions to dismiss (ECF Nos. 54-56, 63-64).[2]

## I. PRELIMINARY STATEMENT

Pursuant to Rule 15, Plaintiff seeks leave to amend to incorporate newly discovered evidence that further supports the allegations in the Complaint; to refine existing allegations, in response to arguments raised in Defendants' motions to dismiss; and to narrow the parties and causes of action. The PSAC adds detailed allegations from a variety of sources, including but not limited to, new information from the Company's December 13, 2021 press release, February 25, 2022 Annual Report, and March 8, 2022 Cowen Health Care Conference transcript—none of which was publicly available prior to the filing of the Complaint.

This new information bolsters the allegations that Defendants acted with knowledge or extreme recklessness when making and/or authorizing the dissemination of materially misleading

---

[1] Unless otherwise noted, "¶" references are to the paragraphs in the PSAC; capitalized terms have the meanings ascribed in the PSAC; all emphasis is added; and internal citations are omitted.

[2] "Defendants" refers to BELLUS Health Inc., Roberto Bellini, Francois Desjardins, Dr. Catherine Bonuccelli, and Dr. Jacky Smith.

statements and omissions to investors. Specifically, Defendants misleadingly touted competitors' successful studies as an indicator that the Company's first Phase 2 trial would demonstrate BLU-5937 was as effective as, if not more effective than, competing P2X3 antagonists. In reality, while competitors had shown that this class of drugs was effective on patients with higher cough counts, Defendants were testing BLU-5937 on a materially different patient population, patients with lower cough counts, for whom efficacy had never been shown. Therefore, contrary to Defendants' heady statements about following competitors' clinical roadmap that had shown efficacy, BELLUS's Phase 2 trial faced far greater risks of failing to meet its primary efficacy endpoint. When the truth was revealed and BELLUS's Phase 2 trial did not show BLU-5937 to be effective, investors lost millions of dollars.

On December 13, 2021—over two months after Plaintiff filed the Complaint—BELLUS announced results from its second Phase 2 trial, conducted in response to failing to meet its primary efficacy endpoint for the first Phase 2 trial. Critically, as shown by the second Phase 2 trial, Defendants had access to competitors' successful clinical trial data demonstrating the correlation between high cough frequency and efficacy. Defendants knew how to follow that clinical trial roadmap but failed to do so when designing and implementing enrollment protocols for BELLUS's first Phase 2 trial. Had Defendants utilized competitors' data and design, as Defendants had claimed to do throughout the Class Period, the Company would not have failed its primary efficacy endpoint for its first Phase 2 trial of BLU-5937. The PSAC includes those allegations and, therefore, bolsters Plaintiff's claims.

The PSAC also narrows the parties and causes of action by removing: (1) all claims against the Underwriter Defendants, pursuant to the previously filed voluntary dismissal; (2) § 12(a)(2) of the Securities Act of 1933 ("Securities Act") claims against all Defendants; and (3) Defendant

2

Bonuccelli from the causes of action under §§ 11 and 15 of the Securities Act claims. And the PSAC supplements to the allegations regarding Plaintiff's purchase of BELLUS securities on a domestic exchange, which took place after, and are traceable to, the Company's U.S. IPO.

Under the "permissive standard" of Rule 15, Plaintiff respectfully seeks leave to file the PSAC and raise those allegations. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("[W]e hew to the liberal standard set forth in Rule 15, which states that '[t]he court should freely give leave [to amend] when justice so requires.' Fed. R. Civ. P. 15(a)(2). As we have explained, the 'permissive standard' of Rule 15 is consistent with our strong preference for resolving disputes on the merits."). Under that permissive standard, moreover, Defendants cannot establish grounds for denying Plaintiff's request.

First, Plaintiff's Motion is timely and not sought in bad faith. Plaintiff sought leave to amend after identifying new information that was not publicly available until after the Complaint was filed and after the benefit of full briefing on Defendants' motions to dismiss. As specified herein, the PSAC provides further allegations supporting Plaintiff's claims that Defendants materially misled investors and also addresses arguments raised in Defendants' motions.

Second, the amendment will not unduly prejudice Defendants. The Court has not yet ruled on Defendants' pending motions to dismiss, and no discovery has taken place pursuant to the PSLRA's discovery stay provision. Moreover, the PSAC's additions are factual allegations that supplement and corroborate previously alleged facts; importantly the PSAC does not seek to assert new claims, name additional defendants, or redefine the Class Period. Also, Defendants are free to file a renewed motion to dismiss as to the PSAC, meaning Defendants will not lose any rights.

Finally, granting Plaintiff leave to amend and file the PSAC would not be futile because, as detailed below, the PSAC alleges enough facts to state a claim for relief that is plausible on its

3

face. Specifically, the proposed new facts corroborate that Defendants made material misstatements and/or omitted material information required to be disclosed with scienter. The updated allegations also clarify that this action addresses solely domestic, not extraterritorial, purchases of BELLUS securities traceable to the Company's U.S. IPO. For these reasons, the Court should grant leave to amend the Complaint and file the PSAC.

## II.    RELEVANT PROCEDURAL HISTORY

On September 29, 2021, Plaintiff filed the Complaint asserting claims on behalf of a putative class under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder, and §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") against BELLUS Health Inc. and certain corporate insiders, including Roberto Bellini, François Desjardins, Catherine Bonuccelli, and Jacky Smith. ECF No. 33. Plaintiff also raised claims against the underwriters for the Company's U.S. IPO, including Jefferies LLC, Cowen and Company, LLC, Guggenheim Securities, LLC, Robert W. Baird & Co. Incorp., and Bloom Burton Securities Inc (the "Underwriter Defendants"). *Id.* The Class consisted of all persons or entities who purchased or otherwise acquired (a) BELLUS common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with the Company's September 2019 initial public offering ("IPO") of its common shares (collectively, the "IPO Documents") and/or (b) BELLUS securities between September 5, 2019 and July 5, 2020,[3] both dates inclusive (the "Class Period"). *Id.*

Specifically, the Complaint alleges that, throughout the Class Period, Defendants portrayed that the enrollment protocols for BELLUS's Phase 2 clinical trial were copied from its

---

[3] Due to a clerical error, the Complaint states that the Class Period ends on July 6, 2020. *See* ECF No. 33 at 1. It is clear from Plaintiff's previous filings, including, his initial complaint and Motion for Appointment as Lead Plaintiff and supporting documents (*see* ECF Nos. 1, 16, 17-2, 18), that Plaintiff did not intend to alter the end date of the Class Period, and it has been corrected in the PSAC. *See* ¶1.

competitors' trials, which had successfully demonstrated that similar P2X3 inhibitors were effective at treating chronic cough. Based on Defendants' misleading comparisons to the Company's competitors, investors believed that BLU-5937 faced no substantial risk as to efficacy; rather, any potential risks were tied to whether the Phase 2 trial would reduce known adverse effects associated with the competing drug products.

In reality, Defendants had disregarded that competitors' products showed efficacy only as to high cough frequency patients. Despite repeatedly stating that it was following competitors' successful studies, BELLUS failed to enroll patients in the target population and, instead, enrolled patients with a materially lower cough frequency. On April 7, 2020, BELLUS partially revealed the truth, stating that a second Phase 2 trial may be necessary if the current Phase 2 trial could not demonstrate a minimum efficacy dose. In response to that revelation, the Company's stock price fell 9%. On July 6, 2020, the Company finally revealed the truth. BELLUS had failed to meet the primary efficacy endpoint for its Phase 2 trial, given that the patients had lower cough frequencies and did not respond to the drug. In response, BELLUS's stock price plummeted over 75%.

On November 12, 2021, the Parties stipulated to the voluntary dismissal of all claims against the Underwriter Defendants without prejudice, subject to a tolling agreement with respect to the Exchange Act claims. ECF No. 51.

In accordance with the briefing schedule set by the Court, BELLUS and the Individual Defendants moved to dismiss the Complaint on November 16, 2021, and Defendant Smith filed a motion to dismiss to the Complaint on January 7, 2022. ECF Nos. 54-56, 63-64. Plaintiff filed his omnibus opposition to Defendants' motions on February 11, 2022 (ECF No. 67), and Defendants filed replies in further support of their motions on March 14, 2022 (ECF Nos. 70-72) ("Replies"). On April 18, 2022, the Court issued an Order setting oral argument on Defendants' motions to

dismiss on July 6, 2022. ECF No. 73.

On May 31, 2022 and June 1, 2022, Counsel for Plaintiff and Defendants exchanged a series of emails and participated in a call regarding Plaintiff's intent to amend the Complaint. After conferring about Plaintiff's basis for the PSAC, the parties jointly proposed an amended briefing schedule, noting Plaintiff's intent to seek leave to amend the Complaint and Defendants' intent to oppose. ECF No. 74. In addition, the Parties proposed adjourning the oral argument on the pending motions to dismiss in consideration of the forthcoming motion for leave to amend. *Id.* On June 14, 2022, the Court issued an Order setting the deadline for Plaintiff to file the present Motion by June 17, 2022, and stating that the oral argument would proceed on July 6, 2022. ECF No. 75.

## III. ARGUMENT

### A. Liberal Standard for Leave to Amend.

Leave to amend is "freely give[n]…when justice so requires." Fed. R. Civ. P. 15 (a)(2). Justice requires leave when there are "at least colorable grounds for relief ... ." *Abbey v. Skokos*, 303 F. App'x 911, 913 (2d Cir. 2008). The "permissive standard" of Rule 15 is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley*, 797 F.3d at 190; *see e.g., United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.,* 889 F.2d 1248, 1254 (2d Cir. 1989) ("[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [they] ought to be afforded an opportunity to test [their] claim on the merits."); *see also Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (describing "the liberal spirit of Rule 15"); *In re Madison Asset* LLC, 2021 WL 1894032, at *2 (S.D.N.Y. May 11, 2021) ("[G]ranting leave to amend is consistent with the liberal standard of Rule 15…., and with the Second Circuit's strong preference for resolving disputes on the merits.").

"Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground." *Oliver Schs., Inc. v. Foley*,

930 F.2d 248, 253 (2d Cir. 1991) (quoting *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir. 1990)). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017); *see also Anthony v. City of N.Y.*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice"). Therefore, leave to amend should only be denied "'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Schvimmer v. Off. of Ct. Admin.*, 857 F. App'x 668, 671 (2d Cir. 2021) (quoting *TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014)).

Amendment is proper when "the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Indiana Pub. Ret. Sys. v. SAIC, Inc.,* 818 F.3d 85, 92 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In assessing whether the proposed complaint states a claim" for the purpose of determining whether amendment would be futile, a court will consider "the proposed amendment[s] ... along with the remainder of the complaint ... accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief[.]" *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Moreover, "in the interest of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss." *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, 2021 WL 2075586, at *2 (S.D.N.Y. May 24, 2021) (quoting *Chubb INA Holdings Inc. v. Chang,* 2016 WL 6841075, at *6 (D.N.J. Nov. 21, 2016) (collecting

cases)); *see also Hamstead v. W. Va. State Police*, 2019 WL 12313517, at *5 (N.D. W. Va. Jan. 7, 2019) (declining to determine the futility of an amendment until Plaintiff had an opportunity to file the amended complaint, subject to the conditions set out by the Court).

In addition, given the stringent standards applicable to securities fraud claims, courts have determined that "leave to amend should be granted liberally." *In re Moody's Corp. Sec. Litig.,* 599 F. Supp. 2d 493, 518 (S.D.N.Y. 2009); *see In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (citing importance of adherence to liberal amendment standards in context of complicated pleading rules of PSLRA and allowing filing of third amended complaint); *see also Osher v. JNI Corp.*, 183 F. App'x 604, 605 (9th Cir. 2006) ("[l]eave to amend is to be granted with extreme liberality…because the heightened pleading requirements imposed by the PSLRA are so difficult to meet.").

Further, courts in the district have found "no good reason to deny leave to amend" in the early stages of litigation. *Cotto v. Fed. Nat'l Mortgage Ass'n,* 2021 WL 4340668, at *5 (S.D.N.Y. Sept. 22, 2021); *see Joint Stock Co. v. Infomir LLC,* 2017 WL 2988249, at *2 (S.D.N.Y. Mar. 27, 2017) (Daniels, J.) (granting plaintiff's cross motion for leave to amend and denying defendants' motions to dismiss as moot "given the early posture of the case"). Indeed, when a plaintiff seeks leave to amend while a motion to dismiss is pending, a court "may either deny [the] pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v. Nat'l Recovery Sols.,* LLC, 955 F.3d 299, 303 (2d Cir. 2020). Faced with those options, "the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." *Cotto*, 2021 WL 4340668, at *4; *see e.g., Conopoco*, 2021 WL 2075586, at *2 ("The Court elects to grant Plaintiff leave to amend and to deny the pending motion to dismiss as

moot. As noted, this is the preferred course where the amended complaint requires leave of court."); *New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*, 2021 WL 930616 (S.D.N.Y. Mar. 11, 2021) ("The Court elects to grant New Oriental's Motion for Leave and to deny the pending Motion to Dismiss as moot."); *Michael Miller Fabrics, LLC v. Studio Imps. Ltd., Inc.,* 2012 WL 4513546, at *3 (S.D.N.Y. Oct. 1, 2012) ("The Court DENIES the pending motions to dismiss as moot (Dkt. Nos. 23 & 32), but GRANTS Defendant leave to amend and re-file the motions after Plaintiff has filed its amended complaint."); *W.B. David & Co. v. De Beers Centenary AG*, 2005 WL 3704690, at *2 (S.D.N.Y. Sept. 2, 2005) (denying as moot motions to dismiss after granting cross-motion for leave to amend).

As detailed below, Plaintiff's request for leave to amend: (1) is not unduly delayed or sought in bad faith; (2) would not unduly prejudice Defendants; and (3) would not be futile. Thus, Plaintiff respectfully requests that the Court grant leave to amend.

### B. Plaintiff's Motion is timely and not the result of bad faith.

"Mere delay . . . , absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Contrera v. Langer*, 314 F. Supp. 3d 566 (S.D.N.Y. 2018) (quoting *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Moreover, in opposing a motion for leave to amend, "[s]imply alleging that the plaintiff could have moved to amend earlier than she did ... is insufficient to demonstrate undue delay." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *see also Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where courts granted leave to amend after delays ranging from two to five years).

Relatedly, a court will not deny a motion to amend simply because a plaintiff "alle[ges] facts that were previously within [its] knowledge." *Bodum Holding AG v. Starbucks Corp.,* 2020 WL 6135714, at *9 (S.D.N.Y. Oct. 16, 2020)); *see also Francisco v. Abengoa, S.A.*, 559 F. Supp.

9

3d 286, 312, n.10 (S.D.N.Y. 2021) ("Even if Plaintiffs had known—or at least, could have uncovered—the new allegations prior to filing their previous iteration of the complaint, the Court concludes that Plaintiffs have met their burden in providing a satisfactory explanation for their delay."); *Agerbrink*, 155 F. Supp. 3d at 452-53 ("[T]he motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge."). Indeed, courts in this District have noted that a party "need not prove that [it] uncovered new facts or law in order for [a court] to grant leave to amend." *Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*, 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (collecting cases).

Here, the requested leave to amend is made absent any undue delay, bad faith, or dilatory motive. Since filing the Complaint on September 29, 2021, Plaintiff has identified additional factual evidence that further supports the claims asserted therein—some of which was not publicly disclosed until December 13, 2021. *See* ¶¶66-68, 190, 195, 200-02. Further, Plaintiff is moving for leave to amend during the pleading stage before Defendants have answered the complaint. *See, e.g., Conopoco*, 2021 WL 2075586, *2 (finding no undue delay or evidence of bad faith when "Plaintiff's request for leave was filed in response to Defendant's motion to dismiss"); *Joint Stock*, 2017 WL 2988249, at *1 (finding no undue delay where plaintiffs moved for leave to amend shortly after defendant moved to dismiss before any defendant answered the complaint); *Cotto*, 2021 WL 4340668, at *5-*6 (same). Thus, Defendants cannot show undue delay or bad faith.

### C.     Defendants will not be unduly prejudiced by the amendment.

"Prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is *undue* prejudice to the opposing party." *Boyer Works USA, LLC v. Rubik's Brand Ltd.*, 2022 WL 355398, at *3 (S.D.N.Y. Feb. 7, 2022) (emphasis in original). To determine what constitutes prejudice, courts must consider whether the proposed amendment, "would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial;

(ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Agerbrink*, 155 F. Supp. 3d at 454 (quoting *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir. 2000)). But "the prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial." *Abengoa*, 559 F. Supp. 3d at 314; *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (granting leave where defendants argued prejudice resulted "solely because of the time, effort and money they expended in litigating this matter"); *Agerbrink*, 155 F. Supp. 3d at 454 (finding defendant not unduly prejudiced where plaintiff sought leave to amend before the close of discovery).

Under controlling Second Circuit precedent, granting Plaintiff leave to file the PSAC would not unduly prejudice Defendants. Defendants have yet to answer the Complaint. Because of the PSLRA discovery stay, no discovery has taken place. No schedule of pre-trial deadlines has been proposed or entered. No trial date has been set. The Court is still assessing the allegations and causes of action that will proceed past Defendants' motions to dismiss.

Furthermore, the PSAC does not name any additional defendants or seek to alter the Class Period. Rather, the PSAC seeks to narrow the parties and claims asserted by eliminating: (1) all claims against the Underwriter Defendants, pursuant to the previously filed voluntary dismissal; (2) § 12(a)(2) of the Securities Act claims against all Defendants; and (3) §§ 11 and 15 of the Securities Act claims against Defendant Bonuccelli. *See generally*, ¶¶25-42, 47-48, 267-83.

Thus, Defendants will not be unduly prejudiced by the proposed amendment. *See Conopoco*, 2021 WL 2075586, at *2 (finding "'no undue prejudice because the parties are far from trial, no Defendant has answered, no Rule 16 conference has been held, and no discovery deadlines have been established.'") (quoting *Joint Stock*, 2017 WL 2988249, at *1); *Agerbrink*, 155 F. Supp.

3d at 454 (supporting a finding of no undue prejudice when "Defendants ha[ve] been on notice of the substance of and theories underlying the plaintiff's claims.").[4]

### D. The requested amendment is not futile.

"[L]eave to amend will be denied as futile only if ... it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Gordon v. Tencent Music Ent. Grp.*, 2021 WL 6113263, at *5 (E.D.N.Y. Dec. 27, 2021). "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile," and, in considering this question, the Court reads the claims at issue "in the light most favorable to plaintiff and drawing all inferences in his favor." *Ouedraogo v. A-1 Int'l Courier Serv., Inc.,* 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013). "A court may deny a motion to amend on the basis of futility only where no colorable grounds exist to support the proposed claim." *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 690 (S.D.N.Y. 2016).

Moreover, "where the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent." *Tencent,* 2021 WL 6113263, at *5, n.7; *see also In re BRF S.A. Sec. Litig.*, 2019 WL 12875444, at *3 (S.D.N.Y. May 3, 2019) ("To the extent that defendants urge that the proposed amendment would be futile, that argument goes to [plaintiff]'s ultimate theories of liability, and [is] more appropriately tested through the anticipated motion to dismiss."); *Madison Asset*, 2021 WL 1894032, at *2-*3 (declining to consider Defendants' futility arguments when granting

---

[4] In addition, if the Court were to grant Defendants' motions to dismiss, "the usual practice is to grant leave to amend." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Therefore, allowing Plaintiff to amend now, rather than after ruling on Defendants' pending motions to dismiss, promotes judicial efficiency and economy, without prejudicing Defendants. *See Schneiderman v. American Chem. Soc'y*, 2020 WL 2522120, at *1 (E.D.N.Y. May 18, 2020) (granting leave to file third amended complaint and denying pending motion to dismiss as moot); *W.B. David*, 2005 WL 3704690, at *1 (S.D.N.Y. Sept. 2, 2005) (granting leave to amend and denying seven pending dispositive motions as moot).

Plaintiff's motion for leave to amend filed shortly after Defendants moved to dismiss).

Thus, under the standards established by courts in this Circuit, Defendants cannot thwart Plaintiff's request to amend and file the PSAC. As a threshold matter, any futility challenge by Defendants is premature and should be raised in a motion to dismiss. Nonetheless, Defendants cannot meet their burden to show that an amendment would be futile.[5] First, the additional allegations only bolster Plaintiff's adequately pled allegations of falsity, scienter and loss causation. Second, the PSAC includes clarifying factual allegations to address arguments raised in Defendants' motions to dismiss, alleviating all arguments as to personal jurisdiction and statutory standing.

1.     The PSAC Bolsters the Complaint's Allegations that Defendants Knowingly or Recklessly Made Material Misstatements or Omissions.

The federal securities laws "are founded on the principle that full and fair disclosure of all material facts must be made to investors so that they may have the benefit of the facts in making their investment decisions." *Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 131 (2d Cir. 2011). Accordingly, § 11 of the Securities Act "imposes strict liability on issuers and signatories, and negligence liability on underwriters, for material misstatements or omissions in a registration statement." *Fed. Hous. Fin. Agency for Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.,* 873 F.3d 85, 99 (2d Cir. 2017). And under § 10(b) of the Exchange Act, "a plaintiff must plead six familiar elements: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S,* 11 F.4th 90, 98 (2d Cir. 2021).

In the Second Circuit, "a statement or omission is material if a reasonable investor would

---

[5] Plaintiff does not yet know Defendants' specific arguments as to futility. Therefore, Plaintiff reserves the right to address those forthcoming arguments on reply.

view it as significantly altering the total mix of information made available." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 84 (2d Cir. 2021). Stated differently, "[a] misrepresentation or omission is material if there is a substantial likelihood that a reasonably prudent investor would consider it important in making a decision." *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 551 (S.D.N.Y. 2021); *see also Nomura,* 873 F.3d at 146 ("A material fact is one that assumes actual significance for a reasonable investor deciding whether to purchase the security at issue, but it need not be outcome-determinative."). Moreover, "dismissal on the basis that the misstatements or omissions are not material is unwarranted unless these misstatements or omissions are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Wilson,* 671 F.3d at 131.

Under those standards, a duty to disclose arises, for example, where defendants "benchmark" their company's performance against competitors' performance (*e.g.*, "television contracts against contracts obtained by live sports") but fail to disclose a material difference between their company and the competitor (*e.g.*, the company's television contracts "brought in a fraction of the advertising revenue that live sports did"). *In re World Wrestling Ent., Inc. Sec. Litig.*, 180 F. Supp. 3d 157, 180, 183-84 (D. Conn. 2016) ("Given the context in which the statements were made—discussions about the defendants' contract negotiations with NBCU[ ] it was misleading to benchmark WWE against sports like NASCAR and [ ] in order to render such a comparison not misleading … the discrepancy in advertising revenue needed to be disclosed.").

Similarly, a duty to disclose arises where defendants compare the enrollment criteria of their clinical trial to the criteria of another trial but "fail[ ] to disclose that they made a 'critical change' to the enrollment criteria" which "significantly affected the trial's enrollment criteria in that patients . . . who had been excluded from Phase 2b may have been eligible to participate in

Phase 3." *Micholle v. Ophthotech Corp.*, 2019 WL 4464802 at *11-*13 (S.D.N.Y. Sept. 18, 2019) (finding actionable "Defendants' repeated assertions that they made no significant changes to the inclusion and exclusion criteria between Phase 2b and Phase 3 of the … clinical trials"); *see also In re OSI Pharms., Inc. Sec. Litig.,* 2007 WL 9672541, at *8 (E.D.N.Y. Mar. 31, 2007) (finding that Defendants "did not adequately convey to the public the limitations of Tarceva that were discovered during the Clinical Study").

While the Complaint satisfies these standards, the PSAC includes additional allegations to bolster Plaintiff's claims. <u>First</u>, the PSAC expands the alleged material misstatements and/or omissions made during the Class Period, including: (i) certain "Risk Factors" relating to BELLUS's responsibility to design and oversee its clinical trials, including the RELIEF trial; (ii) details relating to the design of the RELIEF trial, including therapeutic doses—specifically chosen, in part, based on "data from a Phase 2 clinical trial with a class competitor," inclusion criteria, and locations conducting the clinical trials on behalf of BELLUS; (iii) certain "Risk Factors" relating to competition in the industry potentially rendering BLU-5937 "non-competitive"; and (iv) the specific progress relating to the number of patients enrolled and the number of patients who had completed dosing. *See* ¶¶136-37, 143-44, 146, 148, 157-58, 160, 170, 176, 230-32. For example, Defendants repeatedly told investors that BELLUS "is responsible for ensuring that each of these clinical trials is conducted in accordance with its general investigational plan, protocol and other requirements," that it "*may* not be able to enroll a sufficient number of patients," and that it "*may*" face adverse results "if [the Company]… ha[s] difficulty enrolling a sufficient number of patients." ¶¶136-37, 148, 157-58, 230, 232. However, at the time these statements were made to the public, Defendants had **already** failed to design and implement adequate protocols to support the enrollment of a sufficient number of patients with high cough frequencies, and the risk of the

Company facing adverse results had **already** materialized. *See* ¶¶138, 149, 159, 208-17, 233.

Indeed, as alleged in the Complaint and further bolstered in the PSAC, Defendants continually touted the success of competitors' clinical trials as assurance that BLU-5937 would be as effective, if not more than, other P2X3 antagonists because of its high selectivity. *See* ¶¶12, 89-94, 98-102, 133-34, 150-51, 154, 162-63, 171-72, 178, 180-81, 184, 186. However, unbeknownst to investors, Defendants had **already** disregarded the correlation between high cough frequency and efficacy that had been demonstrated in BELLUS's competitors' clinical trials, and as a result, the Company was **already** testing BLU-5937 on a different population of patients than those enrolled in competitors' successful Phase 2 trials. *See* ¶¶4-5, 10-11, 73, 77, 104, 119-28. Therefore, BELLUS was **already** at risk of not meeting its designated primary endpoint for efficacy, resulting in the Company spending time and money on a second Phase 2 trial and causing it to fall further behind its competitors in the pursuit of FDA approval and commercialization. *See* ¶¶208-17.

Furthermore, BELLUS tacitly concedes the falsity of one its "Risk Factors" stated in the Company's Annual Report for fiscal years of 2018 and 2019 (alleged by Plaintiff to be materially misleading). In the Company's Annual Report for the 2020 fiscal year, filed with the SEC in February 2021, BELLUS updated the same "Risk Factor" to more explicitly explain that Defendants' comparisons to the Company's competitors about equal or better efficacy did not also mean equal or better commercial success. ¶204.

Second, the PSAC provides additional support for scienter, detailing the Company's December 13, 2021 announcement of positive (statistically significant) topline results, achieving its primary efficacy endpoint for its second Phase 2 trial, as a result of designing and implementing inclusion criteria to support the enrollment of a sufficient number of patients with higher cough frequency. ¶201. In other words, once BELLUS utilized the data collected from competitors'

successful clinical trials, as Defendants had claimed to do during the Company's first Phase 2 trial, BELLUS was able to provide an adequate design and sufficient oversight for its clinical trials. Then BELLUS finally studied the patient population that should have been enrolled in its first Phase 2 trial—*i.e.*, the target population of patients consistent with those enrolled in competitors' successful trials that Defendants repeatedly touted to investors.

This newly identified information—which was not publicly available prior to the filing of the Complaint—bolsters the allegations that Defendants acted with knowledge or extreme recklessness. More specifically, Defendants had knowledge or acted recklessly when making misleading statements, and/or omitting material information, when touting competitors' success as being a strong indicator of the Company's prospects for proving that BLU-5937 was effective. *See* ¶¶89-94, 98-102, 120, 189-204. Specifically, the success of BELLUS's second Phase 2 trial further demonstrates that Defendants: (i) had access to competitors' data showing a correlation between high cough frequency and efficacy; (ii) knew how to follow the clinical trial roadmap provided by at least three successful clinical studies, but failed to do so when designing and implementing the enrollment protocols for the Company's first Phase 2 trial; (iii) knew or recklessly disregarded that the failure to utilize competitors' data would result in the insufficient enrollment of patients with high cough frequency; and (iv) knew or recklessly disregarded that the flawed enrollment protocols and failure to enroll a sufficient number of patients with high cough frequency would have an adverse effect on the Company meeting its primary efficacy endpoint in its first Phase 2 trial. *See id.*

Further, Defendant Bellini's own statements demonstrate his knowledge and awareness of how BELLUS was or was not copying Merck. *See, e.g.,* ¶¶90, 171-72, 178, 182, 196-98. In March 2022, for example, Bellini confirmed that the Company's Phase III trial "will mimic more of what

Merck did[,] so we're going to be proposing a 3- and 6-month trial, which is what Merck did" and further commented on Merck's CRL that "when you have kind of like the first – kind of like first-in-disease agent kind of like going through the regulatory process. I think sometimes it's really nice being kind of like behind or like second in class here and learning." ¶202.

Finally, the PSAC addresses Defendants' arguments as to group pleading and provides further support for scienter. The PSAC distinguishes each Defendant's role at the Company and the active role these insider executives and advisor played in designing and implementing the clinical trials. *See* ¶¶29-30, 67, 143, 156, 174, 190, 195, 203. The PSAC also individually identifies which material misstatement each Defendant made and/or authorized for dissemination. *See id.* And the PSAC provides additional factual support as to the relevant independent knowledge each Defendant had leading up to and throughout the Class Period. *See id.*

Accepted as true, construed liberally in their entirety, and scrutinized holistically, the new allegations combined with the original allegations give rise to a strong inference that Defendants acted at least recklessly. *See Credit Suisse*, 996 F.3d 64, 78 ("As the Supreme Court has instructed, [the court] evaluate[s] the sufficiency of a complaint's allegations of scienter 'holistically,' considering 'all of the facts alleged, taken collectively,' rather than 'any individual allegation, scrutinized in isolation.'") (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 326 (2007)). In sum, the PSAC bolsters Plaintiff's already sufficient allegations of falsity and scienter. Defendants cannot meet their burden to show that those allegations would be futile.

2. The PSAC More Explicitly Alleges Jurisdiction and Statutory Standing.

Defendants contend that it is unclear whether Plaintiff purchased his shares on a Canadian exchange or a U.S. exchange. *See* ECF No. 55 at 2. Relying on that purported ambiguity, Defendants argue that they are not subject to specific or general personal jurisdiction in the U.S. *Id.* at 32-35. Defendants further argue that Plaintiff failed to allege any facts showing that his

BELLUS shares were purchased on a domestic exchange, were purchased through a domestic transaction, or are traceable to the Company's U.S. IPO. *Id.*

In raising those arguments, Defendants ignore that the Complaint addresses only BELLUS securities listed in the U.S. (and not those listed on any foreign exchange) and that references to "IPO Documents" are explicitly defined as the documents filed with the SEC in the U.S., pursuant to the federal securities laws. *See* ECF No. 33 at ¶¶1, 7, 18-19, 54, 56-57, 136-37, 206-15.[6] In other words, Plaintiff—who is entitled to all reasonable inferences—adequately pled factual allegations to support that his alleged purchases of BELLUS securities were executed on a U.S. exchange and are traceable to the Company's U.S. IPO Documents.

Nonetheless, to foreclose any further contention relating to personal jurisdiction or statutory standing, the PSAC adds explicit allegations regarding Plaintiff's purchase of BELLUS securities on a domestic exchange. Specifically, the PSAC expanded the party section of the Complaint to include the following detailed allegations related to Plaintiff:

- Mr. Cachia, as set forth in his previously filed certification, purchased or acquired BELLUS securities, on a U.S. exchange;

- The price Mr. Cachia paid for his BELLUS securities matches the market price of BELLUS shares listed on the NASDAQ on each date of purchase;

- Plaintiff's purchase of BELLUS common stock, on a U.S. exchange, is traceable to the Company's false and/or misleading IPO Documents, filed with the SEC;

- Mr. Cachia also purchased BELLUS securities on a foreign exchange, during the Class Period; however, any transactions on a foreign exchange were excluded from Plaintiff's previously filed certification, because such securities are not the subject of this Complaint; and

- Mr. Cachia determined whether to purchase BELLUS securities on a domestic or foreign exchange based on the market price of the securities at that time.

---

[6] Defendants also incorrectly imply that Plaintiff should be required to refile his PSLRA certification with each amended complaint. *See In re Atlas Worldwide Holdings, Inc. Secs. Litig.*, 324 F. Supp. 2d 474, 500 (S.D.N.Y. 2004) (finding that requiring "a class representative [to] file a new certification each time his attorney makes an amendment to the complaint" "would be a useless burden").

¶¶22-24. As elaborated below, these additional allegations further negate Defendants' challenges to personal jurisdiction and statutory standing. Therefore, amendment would not be futile.

### a. *The PSAC sufficiently alleges personal jurisdiction.*

Under the Exchange Act and Securities Act, the relevant jurisdictional inquiry should focus on Defendants' nationwide contacts, not just their contacts with the state of New York. *See Owen v. Elastos Found.*, 2021 WL 5868171, at *7 (S.D.N.Y. Dec. 9, 2021) ("Although the Second Circuit 'has not yet decided' what contacts are relevant to determining whether defendants possess sufficient minimum contacts under a statute permitting nationwide service of process, other circuits hold that 'when a civil case arises under federal law and a federal statute authorizes nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole.'" (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 n.21 (2d Cir. 2014))). "The rationale underlying this national contacts approach is that when the national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation." *Id.*

Additionally, "courts have found personal jurisdiction to exist where an executive of a foreign securities issuer, wherever located, participates in a fraud directed to deceiving United States shareholders." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 643 (S.D.N.Y. 2017). "[I]t is by now well-established that signing or directly manipulating financial statements to cover up illegal foreign action, with knowledge that those statements will be relied upon by United States investors satisfies this test." *Id.*

Although the Complaint provides sufficient allegations under those standards, the PSAC bolsters Plaintiff's allegations and forecloses all challenges to personal jurisdiction. Specifically, the PSAC asserts additional allegations related to each Defendants' participation and/or control

over the content of BELLUS's public statements, filed with the SEC, resulting in the dissemination material misstatements and/or omissions to Plaintiff and the other Class members. ¶¶28-30, 33, 67, 143, 156, 174, 190, 195, 200-02, 204. Additionally, the PSAC explicitly alleges that Plaintiff purchased BELLUS stock on a U.S. exchange, abolishing any notion that he failed the establish a nexus between his claims and the United States. ¶22. Therefore, amendment would not be futile.

b. *The PSAC sufficiently alleges statutory standing*.[7]

In *Morrison v. Nat'l Aus. Bank Ltd.*, the Supreme Court held that "Section 10(b) does not punish deceptive conduct, but only deceptive conduct in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered." 561 U.S. 247, 267 (2010). Accordingly, federal securities laws apply only to "transactions in securities listed on domestic exchanges[ ] and domestic transactions in other securities." *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018) (quoting *Morrison*, 561 U.S. 247 at 266, 270). Under that test, federal securities laws always apply when a plaintiff purchases the subject security on a U.S. exchange. *See, e.g.*, *Lapiner v. Camtek, Ltd.*, 2011 WL 445849, at *2 (N.D. Cal. Feb. 2, 2011) ("the Court finds plaintiff's factual allegations that Camtek stock was traded on the NASDAQ exchange and that he purchased his stock on the NASDAQ exchange are sufficient at the pleading stage to establish the applicability of the Exchange Act.").

Under that precedent, Defendants contend that Plaintiff's purchases of BELLUS stock may

---

[7] As an initial matter, courts recognize that "'what has been called 'statutory standing' in fact is not a standing issue' in the Article-III-jurisdiction sense, 'but simply a question of whether the particular plaintiff has a cause of action under the statute.'" *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 446 (S.D.N.Y. 2019) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016)). Simply put, "some causes of action are designed to redress the injuries of only certain plaintiffs, requiring courts to determine, as an element of the cause of action, whether the plaintiff before the court falls within that category of plaintiffs." *Id.* As explained herein, although the Complaint sufficiently alleges statutory standing, the PSAC extinguishes all arguments to the contrary.

have been extraterritorial, rather than domestic based on inapposite case law.[8] However, Defendants ignore the Complaint's allegations that:

- BELLUS securities were traded on the NASDAQ, a national exchange;
- As a regulated issuer, the Company filed public reports with the SEC, including the **U.S. IPO Documents**, containing material misstatements and/or omissions;
- The alleged misstatements and/or omissions were included in the Company's public SEC filings and artificially inflated the price of BELLUS securities, regulated under the federal securities laws, and issued throughout the Class Period; and
- when the truth was disclosed, Plaintiff and other members of the Class, who purchased those securities in reliance of the Company's public statements, including its U.S. IPO Documents, were damaged thereby.

*See* ECF No. 33 at ¶¶1, 7, 9, 11-14, 17-20, 23, 221-22. Those allegations plausibly show Plaintiff alleged transactions were executed on a domestic exchange, in connection with public statements filed with the SEC.[9]

Nevertheless, the PSAC more explicitly alleges that Plaintiff purchased BELLUS securities on a U.S. exchange (*see* ¶22), foreclosing any further arguments related to whether Plaintiff has statutory standing to sue under the Securities Act or Exchange Act.

Finally, the PSAC further rebuts Defendants' flawed argument about tracing Plaintiff's purchases of BELLUS stock to the materially misleading IPO Documents. ECF No. 70 at 5 (asserting that Plaintiff's Securities Act claims should be dismissed because the Complaint "pleads

---

[8] *See In re Petrobras Sec. Litig.,* 116 F. Supp. 3d 368 (S.D.N.Y. 2015); *Absolute Activist Value Master Fund Ltd. v. Ficeto,* 677 F.3d 60, 70 (2d Cir. 2012); *Schentag v. Nebgen*, 2018 WL 3104092, at \*11 (S.D.N.Y. June 21, 2018). These cases address the issue of domestic transactions under the second prong of *Morrison*'s transactional test, not transactions on U.S. exchanges. As discussed herein, the Complaint adequately pleads that Plaintiff purchased BELLUS stock on a domestic exchange. Hence, it is irrelevant whether BELLUS cross-listed its securities or Plaintiff is physically in the U.S. *See Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 145 (S.D.N.Y. 2012) ("[M]ovants who purchase the securities of a company on multiple exchanges are suitable plaintiffs to lead PSLRA actions.").

[9] Moreover, Plaintiff's PSLRA certification showed that he purchased BELLUS securities in U.S. dollar amounts. *See* ECF Nos. 1, Schedule A; 17-1; 17-2. Therefore, the certification also demonstrates that Plaintiff purchased on a U.S., not Canadian, exchange. *See Sgalambo v. McKenzie*, 268 F.R.D. 170, 175 (S.D.N.Y. 2010) ("The prices in Ströker's schedule of transactions and losses during the class period are delineated in United States dollar amounts", indicating he traded on "an American exchange," which "is more than sufficient at this stage to demonstrate purchases on an American exchange.")

only a single conclusory statement that Plaintiff's alleged purchase was 'traceable' to the Prospectus, while pleading **no** facts regarding how many shares Plaintiff allegedly purchased, or when, or whether and how such shares are temporally related to the issuing of the Prospectus." (emphasis in original)).

"To establish standing under § 11 at the motion to dismiss stage, Plaintiffs need only assert that they purchased shares issued pursuant to, or traceable to the public offerings." *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *20 (S.D.N.Y. Aug. 11, 2021). In other words, "the pleading requirement for Section 11 standing is satisfied by general allegations that plaintiff purchased pursuant to or traceable to [a] false registration statement. At this stage, plaintiffs are not required to explain *how* their shares can be traced." *Id.* (emphasis in original). Even "aftermarket purchasers who can trace their shares to an allegedly misleading registration statement have standing to sue under § 11 of the 1933 Act." *City of Omaha Police & Fire Ret. Sys. V. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 403 (S.D.N.Y. 2020).

As shown in Plaintiff's certification, his purchases occurred **after** the Company's U.S. IPO and at prices within the day's trading range for BELLUS securities listed on the NASDAQ. *See* ECF No. 1, Schedule A; 17-1; *see also* ECF No. 55 at 34 (citing ECF No. 1, Schedule A). And Plaintiff alleges that he purchased BELLUS shares "traceable to the Company's false and/or misleading IPO Documents." ECF No. 33 at ¶20. In sum, the Complaint alleges that Plaintiff purchased BELLUS stock after the Company's U.S. IPO—which permitted BELLUS securities to trade on a U.S. exchange—and he did so pursuant to the Company's U.S.-filed IPO Documents— containing actionable statements and omissions. Therefore, Plaintiff's purchases are traceable to the BELLUS's U.S. IPO and satisfy the pleading requirements. *See Pareteum*, 2021 WL 3540779, at *20 ("To establish standing under § 11 at the motion to dismiss stage, Plaintiffs need only assert

23

that they purchased shares issued pursuant to, or traceable to the public offerings.").

Nevertheless, as explained above, the PSAC more explicitly alleges that Plaintiff purchased BELLUS common stock on a U.S. exchange and are traceable to the Company's misleading IPO Documents filed with the SEC. ¶22. Because the alleged offering was BELLUS's first offering in the U.S., Plaintiff's alleged purchases, executed on a U.S. exchange, are traceable to the Company's U.S. IPO and were tainted by the misleading IPO Documents issued in connection with that offering. Because the additional allegations bolster those asserted in the Complaint, the PSAC would not be futile.

## IV.     CONCLUSION

For all the reasons stated herein, Plaintiff's motion for leave to amend and file the PSAC should be granted.

Dated: June 17, 2022

Respectfully submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides
Velvel (Devin) Freedman
Ivy T. Ngo (*pro hac vice*)
1 SE 3rd Ave., Suite 1250
Miami, Florida 33131
(T): (786) 924-2900
ceconomides@rochefreedman.com
vel@rochefreedman.com
ingo@rochefreedman.com

*Counsel for Lead Plaintiff and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
(T): (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 17, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Constantine P. Economides*
Constantine P. Economides