**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CARL D. CACHIA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BELLUS HEALTH INC., ROBERTO BELLINI, FRANÇOIS DESJARDINS, DR. CATHERINE BONUCCELLI, DR. JACKY SMITH, JEFFERIES LLC, COWEN AND COMPANY, LLC, GUGGENHEIM SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, and BLOOM BURTON SECURITIES INC.,<br><br>    Defendants. | No. 1:21-CV-02278-GBD<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE**
**<u>TO AMEND THE AMENDED CLASS ACTION COMPLAINT</u>**

Jillian B. Berman
Daniel E. Reynolds
Ramya Kasturi
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 34th Floor
New York, NY 10110
Telephone (212) 921-8399
Fax (212) 764-3701
jberman@lswlaw.com
dreynolds@lswlaw.com
rkasturi@lswlaw.com

*Attorneys for Dr. Jacky Smith*

Caroline H. Bullerjahn
Courtney D. Orazio (*pro hac vice*)
Tucker DeVoe (*pro hac vice*)
Katherine M. Fahey *(pro hac vice pending)*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
cbullerjahn@goodwinlaw.com
corazio@goodwinlaw.com
tdevoe@goodwinlaw.com
kfahey@goodwinlaw.com

*Attorneys for Defendants BELLUS Health,*
*Inc., Roberto Bellini, François Desjardins,*
*and Dr. Catherine Bonuccelli*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT BACKGROUND ........................................................................................... 2

I.      FACTUAL BACKGROUND ................................................................................... 2

II.     PROCEDURAL BACKGROUND ........................................................................... 3

ARGUMENT ....................................................................................................................... 7

I.      THE COURT SHOULD DECIDE THE MOTION FOR LEAVE TO AMEND
        TOGETHER WITH THE SUBSTANTIVE ARGUMENTS OF DEFENDANTS'
        MOTIONS TO DISMISS. ......................................................................................... 7

II.     THE PSAC DOES NOT CURE THE DEFICIENCIES OF PLAINTIFF'S
        EXCHANGE ACT CLAIMS. ................................................................................... 9

   A.   The New Allegations of the PSAC Only Strengthen the Non-Fraudulent
        Inferences and Undermine Scienter. ..........................................................................10

   B.   The PSAC Adds No Facts to Support that Defendants' Statements (Old and
        New) Are Actionable Under the Exchange Act. ........................................................14

   C.   The PSAC Still Does Not Plead Loss Causation. ......................................................19

III.    THE PSAC DOES NOT CURE THE DEFICIENCIES OF PLAINTIFF'S
        SECURITIES ACT CLAIMS. ................................................................................ 20

   A.   The PSAC's Securities Act Claims Remain Time Barred. ........................................21

   B.   The PSAC Adds No Facts to Support that Defendants' Statements (Old and
        New) Are Actionable Under the Securities Act. ........................................................21

IV.     AMENDMENT IS FUTILE BECAUSE PLAINTIFF WAIVED HIS RIGHT TO
        ASSERT STATUTORY STANDING IN THE PSAC. ........................................... 22

CONCLUSION .................................................................................................................. 24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abely v. Aeterna Zentaris Inc.*,
   2013 WL 2399869 (S.D.N.Y. May 29, 2013) ...........................................................................15

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ..................................................................................................8, 17

*In re Aratana Therapeutics Inc. Sec. Litig.*,
   315 F. Supp. 3d 737 (S.D.N.Y. 2018)......................................................................................12

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ..................................................................................... *passim*

*Attestor Value Master Fund v. Republic of Argentina*,
   940 F.3d 825 (2d Cir. 2019)......................................................................................................7

*In re Axonyx Sec. Litig.*,
   2009 WL 812244 (S.D.N.Y. Mar. 27, 2009) ..........................................................................13

*Coronel v. Quanta Cap. Holdings Ltd.*,
   2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ...........................................................................11

*ECA, Local 134 IBEW Joint Pension v. JP Morgan Chase*,
   553 F.3d 187 (2d Cir. 2009)........................................................................................11, 13, 21

*Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*,
   2021 WL 2075586 (S.D.N.Y. May 24, 2021) ...........................................................................8

*In re FBR Inc. Sec. Litig.*,
   544 F. Supp. 2d 346 (S.D.N.Y. 2008)......................................................................................19

*In re Gentiva Sec. Litig.*,
   932 F. Supp. 2d 352 (E.D.N.Y. 2013) .....................................................................................20

*In re GeoPharma, Inc. Sec. Litig.*,
   411 F. Supp. 2d 434 (S.D.N.Y. 2006)......................................................................................12

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016)......................................................................................12

*Guzman v. Macy's Retail Holdings, Inc.*,
   2010 WL 1222044 (S.D.N.Y. Mar. 29, 2010) .........................................................................23

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016) .................................................................................................7

*Johnson v. Sequans Commc'ns S.A.*,
   2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) .......................................................................22

*Joint Stock Co. v. Infomir LLC*,
   2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) .....................................................................8

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*,
   2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) ......................................................................10

*Kleinman v. Elan Corp.*,
   706 F.3d 145 (2d Cir. 2013) .................................................................................................9

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ...............................................................................................20

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., plc*,
   2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013), *aff'd*, 783 F.3d 383 (2d Cir.
   2015) .....................................................................................................................................7

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...............9, 12, 19

*In re Merrill Lynch & Co. Inc., Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003)................................................................................12

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003)..................................................................................8

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)...............................................................................................12

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   681 F.3d 114 (2d Cir. 2012)..................................................................................................7

*Pettaway v. Nat'l Recovery Sols., LLC*,
   955 F.3d 299 (2d Cir. 2020)..................................................................................................8

*In re ProShares Tr. Sec. Litig.*,
   728 F.3d 96 (2d Cir. 2013)..................................................................................................22

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..................................................................................................9

*Rosenblatt v. City of New York*,
   2007 WL 2197835 (S.D.N.Y. July 31, 2007) ............................................................9, 20, 24

*Schaffer v. Horizon Pharma plc*,
2018 WL 481883 (S.D.N.Y. 2018) ............................................................................................14

*Wandel v. Gao*,
2022 WL 768975 (S.D.N.Y. Mar. 14, 2022) .........................................................................17

*Zagami v. Cellceutix Corp.*,
2016 WL 3199531 (S.D.N.Y. June 8, 2016) ....................................................................1, 15

**Statutes**

15 U.S.C. § 78u-4 ..............................................................................................................................4

## PRELIMINARY STATEMENT

Plaintiff's Motion for Leave to Amend should be denied as futile. Plaintiff raised the possibility of this motion little over a month before this Court was set to hear oral argument on the Defendants' pending Motions to Dismiss (ECF Nos. 54, 55, 63, 64), and nearly 7 months after BELLUS Health Inc. ("BELLUS"), Roberto Bellini, Catherine Bonuccelli, and Francois Desjardins (together, the "BELLUS Defendants") filed their pending motion to dismiss. Plaintiff's Proposed Second Amended Complaint (ECF Nos. 78-1, 78-2) (the "PSAC") adds nothing to cure the fundamental deficiencies in the operative Amended Complaint ("AC") (ECF No. 33), including that the entirety of Plaintiff's case is an improper attempt to "second guess how clinical trials are designed and managed." *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *12 (S.D.N.Y. June 8, 2016).[1]

Much of the redline text in the PSAC (*see* ECF No. 78-1) has nothing to do with "new" facts at all, including numerous immaterial line edits that do not change the AC's substantive allegations. Though Plaintiff purports to include more than a dozen additional allegedly misleading statements, many of the "new" statements are largely identical to the statements already included in the AC, and all of them were available to Plaintiff at the time he filed the AC. Moreover, none are actionable under the securities laws.

The few new facts alleged in the PSAC fall into two categories: *First*, Plaintiff finally makes a claim to statutory standing by alleging he made stock purchases on a U.S. exchange. This Court should still find that Plaintiff's long delay in failing to assert a fundamental element of his case waived the issue, but regardless, whether the Plaintiff has statutory standing has no effect on

---

[1] The Court will hear argument on Defendants' respective motions to dismiss the AC this Wednesday, July 6, 2022. (ECF No. 73.) Counsel for Defendants will be prepared to argue the pending motion for leave to amend and Defendants' instant opposition to that motion, as well as the motions to dismiss.

the other independent defects in the AC. ***Second***, Plaintiff adds allegations related to the fact that, after the clinical trial at issue, RELIEF, Defendants conducted a ***subsequent, successful trial*** of BELLUS's drug candidate. Whatever Plaintiff hopes to gain from these facts, they do not salvage his claims. Indeed, attempting to insert facts into the record that the same Defendants conducted a ***successful*** clinical trial only bolsters the innocent inference that their goal, then and now—and in accordance with their public statements—was to design and carry out successful clinical trials in order to help patients suffering from debilitating chronic cough. For these reasons, and those discussed below, Plaintiff's motion should be denied.

**RELEVANT BACKGROUND**

### I.    FACTUAL BACKGROUND[2]

This case concerns the development of BELLUS's sole clinical drug candidate, BLU-5937, a potential treatment for chronic cough currently in clinical development. (BD Mem. at 3.) Prior to September 2019, and continuing to the present, BELLUS is publicly traded on the Canadian Toronto Stock Exchange ("TSX"). (*Id.*) BELLUS common shares first began trading on NASDAQ on September 5, 2019 with the issuance of a final prospectus (the "Prospectus"). (*Id.*; Ex. 3.) In that filing with the SEC, and in subsequent filings and public statements, Defendants explained that BLU-5937 was undergoing clinical testing through a Phase 2 double-blind, placebo-controlled clinical trial called RELIEF. (*See* BD Mem. at 5-6.) BELLUS began enrolling patients for RELIEF in July 2019, and was still in the early stages of patient enrollment at the time of the September 2019 public offering. (*Id.*) Enrollment was not completed until March 2020. (*Id.*)

---

[2] For a more fulsome background on this matter, Defendants refer to the BELLUS Defendants' Memorandum of Law in Support of their Motion to Dismiss (ECF No. 55) ("BD Mem.") at 3-11. That background was derived from the AC's allegations, which are substantially unchanged in the PSAC, and the documents incorporated therein by reference or otherwise judicially noticeable and filed with Defendants' moving papers, including the BD Memorandum and the BELLUS Defendants' Reply Memorandum in support of their motion (ECF No. 70) ("BD Reply"). As with the motion to dismiss papers, all exhibits are to the prior declarations of Caroline Bullerjahn (ECF Nos. 56, 71) or the new declaration filed contemporaneously herewith, and are cited to as "Ex. _."

2

From the beginning of Plaintiff's designated Class Period—the filing of the initial Prospectus on September 5, 2019—Defendants warned the investing public about potential risks with RELIEF and BLU-5937, including that "[t]he clinical effectiveness of BLU-5937 is not yet supported by clinical data" and that "future studies" could "call into question the safety or efficacy of BLU-5937." (*Id.* at 8.) Defendants further warned that "[b]ased on results at any stage of clinical trials, [BELLUS] may decide to repeat or redesign a trial" and that its clinical development of BLU-5937 could be affected by "failures in clinical trials." (*Id.* at 8-9.) BELLUS continued making these and other robust disclosures, including that, even as designed, there was a significant chance of the RELIEF study failing to meet its primary endpoint based on its statistical "power" of 80% (translating into a 20% chance of failure while also assuming underlying efficacy). (*Id.* at 9-10.)[3] And of course, because RELIEF was double-blind, ***no one*** (including Defendants) knew or could have known how the study was performing or what its outcome might be before completion. (*Id.*)

On July 6, 2020, BELLUS announced the results of the Phase 2 RELIEF trial. While BLU-5937 had a positive effect at reducing cough in the overall population of study participants, that result was not statistically significant. (*Id.* at 11.) When looking at the subset of patients who had cough frequencies above the study population's median, however, the positive effect ***was*** statistically significant. (*Id.*) BELLUS stock traded down on the news. (*Id.*)

## II.     PROCEDURAL BACKGROUND

Plaintiff filed this action on March 16, 2021. Plaintiff's initial Complaint (ECF No. 1) brought claims under only Sections 10(b) and 20(a) the Securities Exchange Act of 1934. The theory posited by the Complaint was that various Defendants had failed to disclose that BLU-

---

[3] **Exhibit 2** is a chart of relevant risk disclosures made by BELLUS and other Defendants throughout the Class Period.

5937's "high selectivity" for the target protein of interest in treating chronic cough (known as P2X3) "contributed to the drug potentially being less efficacious and thus likely not be able to meet the primary endpoint of the Company's Phase 2 trial." (Compl. ¶ 42.)

Then, following the lead-plaintiff process under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *see* 15 U.S.C. § 78u-4, Plaintiff amended his initial complaint with the filing of the operative AC on September 17, 2021.[4] Plaintiff abandoned his allegations that Defendants had failed to disclose the impact of BLU-5937's "high selectivity" on its efficacy. Instead, the AC takes a different tack, now alleging that Defendants "failed to disclose" a purported "correlation between high cough frequency and high efficacy that Merck's studies [of a competitor drug] had demonstrated." (*See, e.g.*, AC ¶ 140.) The AC claims that an alleged "design flaw" in the RELIEF trial of setting a cough frequency threshold of 10 per hour "meant there was a high risk" RELIEF would not succeed. (*Id.*) Additionally, despite being filed more than a year after BELLUS's July 2020 disclosure, Plaintiff for the first time in the AC brought claims under Sections 11, 12, and 15 of the Securities Act of 1933 against certain Defendants based on statements in the Prospectus. Plaintiff also added Dr. Jacky Smith as a defendant, naming her in the fraud-based claim brought pursuant to § 10(b) of the Exchange Act.

On November 16, 2021, the BELLUS Defendants filed their Motion to Dismiss, seeking to dismiss the AC with prejudice. (ECF Nos. 54, 55.)[5] On January 7, 2022, Defendant Smith filed a motion to dismiss the claim against her, fully incorporating the BELLUS Defendants' arguments. (ECF Nos. 63, 64.)[6] In those motions, Defendants raised numerous independent deficiencies with the AC, including that none of Defendants' factually accurate descriptions of the RELIEF trials or

---

[4] The AC was refiled correcting certain issues with the case caption on September 29, 2021.
[5] That same day, this Court granted the stipulated dismissal of Plaintiff's claims against the underwriter defendants named in the AC. (ECF No. 53.)
[6] Defendant Smith's Memorandum in Support her Motion to Dismiss (ECF No. 64), hereinafter "Smith Mem."

their obvious statements of opinion expressing belief in RELIEF were contradicted by any contemporaneous fact raised in Plaintiff's pleadings. (*See, e.g.*, BD Mem. at 18-25; Smith Mem. at 4-6.)  Plaintiff also failed to show scienter; his assertion that Defendants would intentionally sabotage RELIEF was facially illogical, and Plaintiff alleged no facts in the AC—because there were none—showing Defendants were contemporaneously aware of any information that contradicted their public statements.  (BD Mem. at 13-18; Smith Mem. at 3-4.)  In addition, the Securities Act claims themselves were time barred.  (*Id.* at 30-32.)  And Plaintiff had failed even to allege—either in the Complaint or the AC—that he had purchased his shares on NASDAQ, depriving him of statutory standing for all claims.  (*Id.* at 32-35.)

Plaintiff filed his consolidated Opposition to the motions to dismiss on February 11, 2022. (ECF No. 67.)  In that filing, Plaintiff did not contest that he had failed to plead statutory standing, nor did he suggest that he had any facts he would add to yet another amended pleading.  The BELLUS Defendants and Defendant Smith filed reply briefs responding to Plaintiff's arguments on March 14, 2022.  (ECF Nos. 70, 72.)[7]  On April 18, 2022, this Court set oral argument on Defendants' motions to dismiss for July 6, 2022.  (ECF No. 73.)

### III.    THE PSAC'S NEW ALLEGATIONS

On June 17, 2022, Plaintiff filed his Motion for Leave to Amend, to which he attached the PSAC. (ECF Nos. 76-78.)  As the redline version of the PSAC (ECF No. 78-1) makes clear, the PSAC includes essentially all the same factual allegations and contentions contained in the AC. Many of the changes Plaintiff did make are not new facts at all, but rather fall into a few immaterial categories:

- **Deletion of Conceded Claims**: The PSAC removes all the claims against the various underwriter defendants Plaintiff previously dismissed from the case. (*See, e.g.*, ECF No. 78-1 at 17-20.)  Plaintiff also removed Defendant Bonuccelli from the Section 11, 12(a)(2),

---

[7] Defendant Smith's Reply Memorandum (ECF No. 72), hereinafter "Smith Reply."

and 15 counts and excised entirely the Section 12(a)(2) count (*id.* at 122-27), apparently conceding that those were improperly brought in the first instance for being outside the limitations period and brought without standing, respectively. (*See* BD Mem. at 30-31, 32-33.) The Opposition had failed to address either issue.

- **Irrelevant Line Edits**: The redline of PSAC is replete with trivial changes to paragraph after paragraph. (*See, e.g.*, PSAC ¶ 28 (changing "Defendant Bellini is, and has been since January 1, 2010, serving as the President and [CEO]" to "Defendant Bellini has served as President and [CEO] since January 1, 2010"); PSAC ¶ 73 (moving a clause that "the mean awake cough frequency was 56.9 coughs per hour at baseline" from the second sentence of the paragraph to the end of the paragraph).) Plaintiff also modified the substantially identical text copied nearly verbatim 13 times that framed his "design flaw" theory in the AC to now include the argument BELLUS "conceal[ed]" that it "had failed to alter or adjust the criteria for enrollment" mid-trial, an illogical allegation because BELLUS never claimed it had done so. (*See, e.g.*, PSAC ¶ 46.)

- *More* **Alleged Misleading Statements**: While the AC was already filled with overlapping, similar purportedly actionable statements, the PSAC added even more from the same time period, many of which are duplicative of statements already alleged. (PSAC ¶¶ 136-37, 143-44, 146, 148, 156-58, 160, 170, 174-76, 230-32.) None of the newly added statements makes out a disclosure claim. *See infra* at 14-19, 21-22.

Notably, none of those categories are *facts* added to the PSAC that might cure any deficiencies identified by Defendants' prior motions to dismiss, and thus none of them stave off futility. The few new factual allegations added to the PSAC do nothing to address the AC's deficiencies either:

- **Share Purchasing**:  The PSAC adds allegations that Plaintiff "purchased or acquired BELLUS securities, on a U.S. exchange." (PSAC ¶ 22.) On the merits, had this been included in an initial complaint, that is likely sufficient for purposes of pleading statutory standing. However, as discussed below, having had this issue explicitly raised to Plaintiff before, and then having refused to even respond, Plaintiff has waived the ability to add these allegations. Regardless, these facts do not speak to the other independent reasons Plaintiff's claims should be dismissed.

- **SOOTHE Trial**:  After the RELIEF results came out, Defendants conducted a subsequent clinical trial on BLU-5937 known as SOOTHE. (PSAC ¶¶ 200-01.) Building off of the knowledge gained from RELIEF, BELLUS set the minimum cough frequency threshold at 25 per hour (it had been 10 per hour in RELIEF). (*Id.*) The trial was a success, supporting subsequent, forthcoming, Phase 3 clinical trials of the product. (*Id.* ¶¶ 201-02.) These facts are entirely irrelevant to what Defendants knew *at the time* of the challenged statements regarding the RELIEF trial years earlier and instead support an inference *opposing* scienter, namely that Defendants have *always* been working to obtain successful trial results and to help patients.

That is it.  The PSAC adds no confidential witness allegations, no internal reports, no documents,

6

and no other particularized facts suggesting any contemporaneous inaccuracy of any statement of any Defendant.  The arguments levied by Defendants against the AC apply with full force to the claims in the PSAC.

### ARGUMENT

The PSAC is futile because it "fail[s] to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  As explained below, for both the Exchange Act and Securities Act claims, the PSAC adds no factual content that cures the infirmities previously articulated by Defendants.  The PSAC, like the AC, still fails to plead scienter, any actionable statement, and loss causation.  For the Securities Act claims, the PSAC still fails to articulate why its allegations relate back to the original Complaint, and thus these claims are time barred.  Finally, Plaintiff has waived his ability to fix the statutory standing defect of the AC.

**I.  THE COURT SHOULD DECIDE THE MOTION FOR LEAVE TO AMEND TOGETHER WITH THE SUBSTANTIVE ARGUMENTS OF DEFENDANTS' MOTIONS TO DISMISS.**

Under Rule 15(a)(2), a plaintiff "may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Though a generally permissive standard, "denial of leave to amend is proper if amendment would be futile." *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019). Proposed amendments are futile if they "fail to cure prior deficiencies or to state a claim." *Panther Partners*, 681 F.3d at 119.  The District Court assesses futility "as [it] would a motion to dismiss, determining whether the proposed complaint" satisfies the pleading standards. *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016).  This Court has denied motions for leave to amend in securities cases where amendment would be futile.  *See, e.g.*, *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., plc*, 2013 WL 4405538, at *1 (S.D.N.Y. Aug. 5, 2013) (Daniels, J.),

*aff'd*, 783 F.3d 383 (2d Cir. 2015). The Court should follow those precedents here, assess the newly added allegations of the PSAC for whether they "cure prior deficiencies" in the AC, and ultimately, conclude that allowing Plaintiff's proposed amended pleading is futile.

Plaintiff's cases, cited for the proposition that the "preferred" course is to moot a pending motion to dismiss (*see* Pl.'s Mem. of Law in Supp. (ECF No. 77) ("Pl.'s Mem.") at 7-9), are inapposite to the situation at hand. In *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, the plaintiff had not yet responded to the defendant's motion to dismiss when it cross-moved for leave to amend, the defendant did not oppose the motion for leave to amend, and the allegations that the plaintiff sought to add went "to the heart of its claim." 2021 WL 2075586, at \*1-2 (S.D.N.Y. May 24, 2021); *see also Joint Stock Co. v. Infomir LLC*, 2017 WL 2988249, at \*1 (S.D.N.Y. Mar. 27, 2017) (Daniels, J.) (reviewing, on clear error grounds, and adopting unobjected-to report and recommendation of magistrate judge that granted motion to amend where plaintiffs filed motion twenty-four days after defendant filed motion to dismiss). By contrast, here, Plaintiff ***chose*** to file an opposition to Defendants' motions to dismiss, the parties have fully briefed all issues in those motions, the Court has scheduled a hearing addressing these issues, and the additional allegations that Plaintiff seeks to add, as the remainder of this opposition explains, are of no legal consequence.[8] The better course, given the time and effort the parties and the Court have placed into reviewing these issues is to "consider[] the merits of the motion[s] [to dismiss] in light of the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020).[9]

---

[8] Defendants further note that much of the "new information" in the PSAC was available ***before*** the parties' motion to dismiss briefing was completed. Plaintiff's opposition to the motions to dismiss was filed on February 11, 2022, 60 days after Defendants announced the positive results from the SOOTHE trial that underlie most of Plaintiff's new factual allegations. *Cf. In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003) (disallowing amendment where "the purportedly 'new' information was within plaintiffs' knowledge before argument on the motion to dismiss").

[9] For the same reason, Plaintiff cannot honestly "not yet know Defendants' specific arguments as to futility." (*See* Pl.'s Mem. at 13 n.5.) Defendants' arguments for futility here are largely drawn from those already in the briefing.

The pleading standards Plaintiff faces in this posture are the same as before.  The Exchange Act claims must meet the heightened pleading standards of Rule 9(b) of the Federal Rules and the PSLRA.  *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  Because Plaintiff's Securities Act claims sound in fraud, Rule 9(b)'s heightened pleading standards apply to them as well.  (*See* BD Mem. at 27 (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).)  Key among these pleading requirements are that, under Rule 9(b), the PSAC must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach*, 355 F.3d at 170.  And under the PSLRA, plaintiffs must similarly "do more than simply assert that a statement is false—'they must demonstrate with specificity why that is so.'"  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (quoting *Rombach*, 355 F.3d at 174).

## II.   THE PSAC DOES NOT CURE THE DEFICIENCIES OF PLAINTIFF'S EXCHANGE ACT CLAIMS.

Defendants previously moved to dismiss the AC's securities fraud claims under Sections 10(b) and 20(a) of the Exchange Act for (i) failure to allege facts giving rise to a strong inference of scienter (*see* BD Mem. at 13-18; BD Reply at 7-13; Smith Mem. at 3-4; Smith Reply at 2-4); (ii) failure to allege actionable statements or omissions (*see* BD Mem. at 18-25; BD Reply at 13-19; Smith Mem. at 4-8; Smith Reply at 4-7); and (iii) failure to allege loss causation (*see* BD Mem. at 25-27; Smith Mem. at 8 n.7).  The revisions contained within the PSAC do not resolve any of these fundamental defects already present in the AC.  Indeed, the most substantive new facts the PSAC adds ***undermine*** scienter.

Further, while Plaintiff saw fit to add over a dozen ***new*** allegedly misleading statements to the PSAC (all already available to Plaintiff at the time of the Complaint and AC), the PSAC adds

*no new facts* bolstering that any of Defendants' statements (including the newly added ones) were misleading when made.  Instead, in more armchair quarterbacking, Plaintiff adds criticism not to the accuracy of Defendants' statements concerning RELIEF's protocols, but to Plaintiff's own (retrospective) belief that Defendants did a poor job with RELIEF.  (*See* PSAC ¶ 46.)  This is not a disclosure claim, but rather is just another attempt by Plaintiff to use the securities laws as "a tool to second guess how clinical trials are designed and managed," an approach long rejected by this Court.  *In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, 2014 WL 585658, at *1 (S.D.N.Y. Feb. 14, 2014).  (*See also* BD Mem. at 22; BD Reply at 13-14.)  Plaintiff had no answer to these cases in the Opposition, and still does not.

Moreover, as Defendants cited in their reply briefing, the Second Circuit recently rejected a claim that a company's discussion of its clinical drug trial was false or misleading because the *inclusion criteria threshold for trial participants was set too low*, closely mirroring Plaintiff's claim now.  *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) ("All of the statements identified by the [plaintiffs] were made on earnings calls or in presentations in which the relevant risk—that the trial may fail to reach its primary endpoint—was fully disclosed . . . .  although [plaintiffs] claim that Bristol-Myers had an obligation to disclose *why* the trial might fail—*i.e.*, the selection of a 5% threshold—they cite no law to support such an argument." (emphasis in original)); *id.* ("Although the [plaintiffs] argue at length that the trial was riskier than the [plaintiffs] (with hindsight) believe was necessary, they make no claim (and allege no facts indicating) that these statements of opinion were false.").  Again, Plaintiff does not even attempt to address these cases in his Motion for Leave to Amend.

### A. The New Allegations of the PSAC Only Strengthen the Non-Fraudulent Inferences and Undermine Scienter.

To avoid dismissal, Plaintiff must "plead with particularity facts giving rise to a strong

inference that the defendant[s] acted with the required state of mind," which is "an intent to deceive, manipulate, or defraud." *ECA, Local 134 IBEW Joint Pension v. JP Morgan Chase*, 553 F.3d 187, 198 (2d Cir. 2009) (quotation marks omitted).  A "strong" inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 198.  To do that, Plaintiff must "show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*  As stated in Defendants' motion to dismiss papers, Plaintiff has not alleged that Defendants had the motive or opportunity to commit fraud.  (BD Mem. at 14; BD Reply at 7-8; Smith Mem. at 3-4; Smith Reply at 2.)  Likewise, the AC failed to plead conscious misbehavior or recklessness.  (BD Mem. at 15-18; BD Reply at 9-13; Smith Mem. at 4; Smith Reply at 3-4.)

Plaintiff's Motion for Leave to Amend argues that three sets of new allegations in the PSAC bolster the AC's scienter allegations.  (*See* Pl.'s Mem. at 16-18.)  None do so.

***First***, the PSAC now includes the fact that, after the Class Period and after every alleged misleading statement in the PSAC, Defendants conducted the successful Phase 2b SOOTHE clinical trial of BLU-5937, and announced the results in December 2021.  (PSAC ¶¶ 200-01.)  Despite the fact that every purportedly misleading statement in this case was made in 2019 or 2020, Plaintiff contends that the December 2021 results of the SOOTHE trial somehow show Defendants "had knowledge or acted recklessly ***when making*** misleading statements, and/or omitting material information."  (Pl.'s Mem. at 16-17 (emphasis added).)

This argument gets causation exactly backwards.  Defendants cannot ***have known in 2019 and 2020*** that their statements were false or misleading on account of blinded clinical trial results ***released in 2021***.  *See, e.g.*, *Coronel v. Quanta Cap. Holdings Ltd.*, 2009 WL 174656, at \*27

11

(S.D.N.Y. Jan. 26, 2009) (finding scienter allegation inadequate where "[c]omplaint alleges no specific facts demonstrating that Defendants possessed—*at the time they made the allegedly false statements* concerning the reserve amounts—information contradicting their statements") (emphasis added). Facts that did not exist at the time of Defendants' statements are the opposite of the "concrete allegations as to defendants' knowledge" that this Court requires of securities fraud complaints. *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018); *see also Lululemon*, 14 F. Supp. 3d at 574 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)); *Bristol-Myers Squibb*, 28 F. 4th at 356 (finding that drug company's admission that problem in clinical trial enrollment criteria had led to trial's failure "provide[d] no information regarding [the company's] state of mind when initially describing the study.").

Further, Plaintiff seems to miss that the fact that Defendants (the same people who conducted RELIEF) successfully conducted the SOOTHE trial directly contradicts that Defendants had any knowledge they were "spend[ing] years and millions of dollars to test BLU-5937 on the wrong patients." (*See* PSAC ¶ 14.) As Defendants previously explained, these sorts of executives-wanted-the-drug-to-fail claims are already illogical and implausible to begin with. (BD Mem. at 14-15.) *See also Gillis v. QRX Pharma Ltd*., 197 F. Supp. 3d 557, 600-01 (S.D.N.Y. 2016) (describing as "implausible" allegations that executives would invest "substantial time and resources in clinical studies and NDA submissions that [they] knew were doomed to fail," and noting that "[c]ourts regularly refuse to infer scienter" in those circumstances).[10]

---

[10] *See also, e.g.*, *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 (S.D.N.Y. 2006) (granting motion to dismiss where "the tenuous plausibility of the alleged scheme substantially weakene[d] the overall strength of plaintiffs' scienter allegations"); *In re Merrill Lynch & Co. Inc., Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 263 (S.D.N.Y. 2003) (allegations "affirmatively refute[d] scienter" because they contradicted assumption that

Now, Plaintiff would have the Court believe that it was *more* likely that Defendants intended to hamstring their own success by sabotaging a clinical trial (RELIEF) because they later ***didn't*** sabotage a clinical trial (SOOTHE).  This chain of inferences is nonsense and does nothing to create a "***cogent and compelling***" inference of fraudulent intent.  *ECA*, 553 F.3d at 198 (emphasis added).  Instead, the evidence Plaintiff has voluntarily submitted before the Court bolsters the obvious innocent inference, that Defendants "did [their] best to design and carry out a successful clinical trial" in RELIEF.  (BD Mem. at 17-18 (quoting *In re Axonyx Sec. Litig.*, 2009 WL 812244, at *4 (S.D.N.Y. Mar. 27, 2009)).)

***Second***, Plaintiff claims that because in March 2022 Defendant Bellini, BELLUS's CEO, stated that a forthcoming Phase 3 clinical trial (after RELIEF and after SOOTHE) "will mimic more of what Merck did," he somehow "demonstrate[d] his knowledge and awareness of how BELLUS was or was not copying Merck" when making statements months and years earlier.  (Pl.'s Mem. at 17-18 (quoting PSAC ¶ 202).)  But nothing about the March 2022 statement concerning later trials creates a strong inference about Defendant Bellini's knowledge during the time of the RELIEF trial years earlier, particularly while the RELIEF trial's own results were blinded at that time, and does not constitute a "particulariz[ed] fact[]" about his knowledge in 2019 and 2020.  *See ECA*, 553 F.3d at 198.  Plaintiff cannot connect one to the other.

***Third***, Plaintiff claims to have addressed certain arguments about the group pleading doctrine through additional allegations "distinguish[ing] each Defendant's role at the Company and the active roles these insider executives and advisor played."  (Pl.'s Mem. at 18 (citing PSAC ¶¶ 29-30, 67, 143, 156, 174, 190, 195, 203).)  To begin, because the PSAC, like the AC, fails to identify any specific facts known by any Defendants undercutting any statements—as Defendants

---

defendants would act in their own economic self-interest).

already addressed in prior briefing—the group pleading doctrine is a moot point.[11]  (*See* BD Mem. at 15-17; BD Reply at 9-11; Smith Mem. at 5-6; Smith Reply at 5-7.)   Beyond that, these allegations do not cure any group pleading issue; instead they add largely irrelevant background detail.  (*See, e.g.*, PSAC ¶¶ 29-30 (alleging Defendants Desjardins and Bonuccelli, already named as corporate executives in the AC, were "officer[s]" or "member[s] of [BELLUS'] management team"); PSAC ¶¶ 143, 156, 174 (alleging certain BELLUS Defendants signed certain public filings); PSAC ¶ 67 (alleging that in November 2018, Dr. Smith expressed enthusiasm about the positive top-line Phase 1 results for BLU-5937).)  More importantly, these allegations do not (a) add anything about Defendants' contemporaneous knowledge at the time of their challenged statements or (b) address Defendants' other substantive reasons for dismissal on scienter grounds.

The AC included zero facts contemporaneously known to Defendants undermining their statements, much less "identify[ing] with specificity the documents or way in which [] contrary information was communicated to Defendants." *Schaffer v. Horizon Pharma plc*, 2018 WL 481883, at \*12 (S.D.N.Y. 2018).  The PSAC adds nothing to that score, and amendment should thus be denied as futile.

**B.  The PSAC Adds No Facts to Support that Defendants' Statements (Old and New) Are Actionable Under the Exchange Act.**

As Defendants already explained, neither the AC nor the PSAC put forward a disclosure claim at all.  (BD Mem. at 1-2, 11-12, 22, 28-29; BD Reply at 2, 13-14, 19; Smith Mem. at 6.) And the PSAC does not add a single contemporaneous fact that renders any of Defendants' statements misleading, because no such facts exist.  Rather, Plaintiff continues to pursue his theory

---

[11] Defendant Smith raises the group pleading doctrine in large part to reaffirm that she could not be held responsible for statements not made by her.  (*See* Smith Mem. at 6-8.)  After failing to address this argument in his Opposition, Plaintiff now appears to attribute statements to specific individuals (*see* PSAC ¶ 190), but he still has not provided any basis for why any individual should be held liable for statements he or she did not make.  Defendants fully preserve this argument in all respects.

that Defendants failed to disclose a purported "design flaw" in the RELIEF trial (despite accurately disclosing all of its details). This is nothing more than "second guess[ing]" Defendants' scientific judgment, *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *12 (S.D.N.Y. June 8, 2016), amounting "to a competing view of how the trial should have been designed, not [a] material misstatement or omission." *Abely v. Aeterna Zentaris Inc.*, 2013 WL 2399869, at *10 (S.D.N.Y. May 29, 2013). Furthermore, because all Defendants did was (a) accurately describe RELIEF and (b) describe cautious optimism in RELIEF through forward-looking and opinion statements, Plaintiff's securities law claims fail. *Bristol-Myers Squibb*, 28 F.4th at 353-55.

Having failed to dig up contemporaneous facts undercutting Defendants' alleged statements, Plaintiff tries three tactics in the PSAC to dodge dismissal of his claims. None succeed in curing the failure to plead with specificity any misleading statement.

***First***, Plaintiff tries, again, manufacture a reason why a disagreement about study design can be a disclosure claim. To the previous hindsight "design flaw" allegations, the PSAC adds one new hindsight theory—that Defendants made their statements "to conceal or downplay that . . . BELLUS had failed to alter or adjust the criteria for enrollment." (*See, e.g.*, PSAC ¶ 46.) But this theory that BELLUS should have "alter[ed] or adjust[ed] the criteria," on its face, is not a disclosure claim. It is just more "second guess[ing] how clinical trials are designed and managed." *Zagami*, 2016 WL 3199531, at *12.[12] Moreover, Defendants did not "conceal" that they did not "alter or adjust" the RELIEF trial's protocols because they ***did not*** alter or adjust them. Plaintiff appears to claim that Defendants violated the securities laws for not disclosing something that did not happen and that Defendants never said would happen. That makes no sense.

---

[12] Again, RELIEF was a blinded trial, which means that Defendants had no insight as to what the Phase 2 results were until they were unblinded and disclosed. Thus, there would have been no reason to redesign the RELIEF protocol mid-trial. (*See also, e.g.*, BD Mem at 16-17 & n.20 (discussing same).)

15

*Second*, Plaintiff claims that because BELLUS updated its risk disclosure about competition from other pharmaceutical companies to reflect those competitors' additional clinical success, BELLUS somehow "tacitly concede[d] the falsity of one [of] its 'Risk Factors.'" (Pl.'s Mem. at 16.)  Not so.  Plaintiff ignores that on September 5, 2019, with the Prospectus, BELLUS gave a lengthy cautionary warning about potential competitors:

> **Competition in the biopharmaceutical industry is intense, and development by other companies could render our product candidate or any future product candidates or technologies noncompetitive.**
>
> The biopharmaceutical industry is intensely competitive and is subject to rapid and significant change.  We face potential competition from many sources, including major pharmaceutical, specialty pharmaceutical and biotechnology companies.  We consider our primary competitors to be those companies that are developing products specifically to treat chronic cough that, when approved, could be used off-label to treat cough.  We are aware of other companies targeting chronic cough as the primary outcome measure in clinical studies of products.  There are multiple companies developing products at varying stages of development specifically intended to treat chronic cough including Merck & Co., Bayer AG, Shionogi Inc., Attenua Inc. and NeRRe Therapeutics Ltd, some of which have substantially greater product development capabilities and financial, scientific, marketing, and human resources than us.  Of these companies, Merck, Bayer and Shionogi are developing P2X3 antagonists for chronic cough that could compete directly with BLU-5937.  Moreover, there are multiple companies developing therapeutic treatments for atopic dermatitis specifically, or various other forms of pruritus which could also have a therapeutic effect on atopic dermatitis itch including Sanofi S.A., Bayer AG, Pfizer Inc., Novartis International AG, LEO Pharma Inc., Menlo Therapeutics Inc., Vanda Pharmaceuticals Inc., Trevi Therapeutics Inc., Galderma S.A., Sienna Biopharmaceuticals, Inc., Tioga Pharmaceuticals, Inc. and Cara Therapeutics Inc.

(Ex. 3 at S-15.)  After this disclosure, as the PSAC admits, several of these competitors announced additional results of their clinical trials on chronic cough, including Merck, which announced the "results from its two pivotal Phase 3 trials" on March 17, 2020, along with other, more detailed data from trials by Bayer and Shionogi that came out *after* the Prospectus.  (*See, e.g.*, PSAC ¶¶ 104, 107, 111-13).  Thereafter, in February 2021, BELLUS added two sentences in the middle of the risk disclosure noted above to address these new developments (along with other, minor changes):

16

Certain of these companies have announced top-line data in mid- to late-stage clinical trials of their product candidates, and such product candidates may be more advanced in development than BLU-5937 or have shown or show in the future comparable or superior efficacy, safety and/or tolerability data as compared to BLU-5937. Even if BLU-5937 successfully completes clinical trials and is approved by regulatory authorities, it may not be able to achieve a degree of market acceptance necessary for commercial success if other treatments demonstrate superior efficacy, safety, tolerability, ease of administration and/or cost-effectiveness.

(PSAC ¶ 204.)

Nothing about the new, accurate statements that certain companies had announced top-line data renders anything about the prior warning of competition misleading. Indeed, the Company could ***not*** have warned of "late-stage" clinical trial data, such as Merck's Phase 3 trial results, before they had even occurred. The Prospectus was also already full of warnings about BELLUS's competitive risks and the "market acceptance of BLU-5937." (*See, e.g.*, Ex. 3 at S-10-14.) As importantly, Plaintiff does not allege how these general statements that other companies have issued clinical trial results rendered Defendants' disclosures about the still-blinded RELIEF trial false and misleading.

Plaintiff appears to believe that the securities laws operate as a straitjacket, such that any time a company provides a minor adjustment, or describes additional information, it has conceded liability to a securities fraud claim. That is not the law. "Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995); *see also Wandel v. Gao*, 2022 WL 768975, at *10 (S.D.N.Y. Mar. 14, 2022) ("the mere fact that Phoenix Tree eventually revised the financial picture several months after the IPO does not connote that that the Company's earlier statement about its earnings expectations was false or misleading when made").

***Third***, despite the fact that the AC already held dozens of statements Plaintiff claimed to

17

be actionable, he attempts to add over a dozen more in the PSAC—none are actionable.[13] Many of the newly added statements are identical to statements already alleged in the AC and addressed in Defendants' motions to dismiss.[14] Most of the rest fall into the same general category already described in Defendants' moving papers of factually accurate statements about the RELIEF trial. (*See* BD Mem. at 19.) This includes statements such as "[BELLUS] designed the clinical trials for BLU-5937" and is "responsible for ensuring that each of these clinical trials is conducted accordance with [its] general investigational plan, protocol and other requirements." (PSAC ¶ 136.) Nothing in these statements is called into question by Plaintiff's hindsight "design flaw" theory.[15]

The last batch of new purportedly misleading statements added to the PSAC are BELLUS's own disclosures of certain risks faced in its clinical trial programs. Specifically, the PSAC complains about BELLUS's disclosures that it faced risks: (a) by using third parties to assist with its clinical trials; and (b) in enrolling a sufficient number of patients in its trials. (*See* PSAC ¶¶ 136-37.) (Defendants already identified the enrollment risk disclosure as a reason why none of Defendants' statements are misleading. (BD Mem. at 9, 23-24.) Contrary to Plaintiff's suggestion,

---

[13] For the Court's convenience, **Exhibit 37** is a chart that quotes from the purported materially misleading statements that are new to the PSAC, with context from judicially noticeable transcripts and SEC filings that are Exhibits to the prior Declarations of Caroline Bullerjahn (ECF Nos. 56, 71), or the contemporaneously filed supplemental Declaration. **Exhibit 37** cross-references the legal arguments herein and in Defendants' prior briefing as to why each alleged misstatement and omission is not actionable, including because they are forward-looking, puffery, or statements of opinion, as applicable. In addition, where the new alleged statements are substantially similar to statements already contained in the AC, the chart identifies that comparison.

[14] For example, PSAC ¶ 160, a new allegation, quotes language from BELLUS's Management Discussion and Analysis section of one of its annual reports stating that other pharmaceutical companies' products "could compete directly with BLU-5937." But the exact same language is in the Prospectus, and Plaintiff already challenged it there. (PSAC ¶ 139; AC ¶ 141.) So too with the statement that RELIEF completed dosing in 52 patients and had an 80% power (*see* PSAC ¶ 176), that statement was already in the AC (PSAC ¶¶ 171-173, 178-79; AC ¶¶ 161-65.) And Defendants already responded to these allegations—so they add nothing to the PSAC. (BD Mem. at 19-23.)

[15] The various certifications Plaintiff points to signed by Defendants Bellini and Desjardins add nothing either. (*See, e.g.*, PSAC ¶ 143.) They merely state that the signed filings did not, to those Defendants' knowledge, contain materially misleading statements or omissions—a statement which remains true if there are no other actionable statements.

a risk disclosure is not actionable because it does not disclose exactly "**why** the trial might fail—*i.e.*, the selection of a 5% [patient inclusion criterion] threshold"—the Second Circuit rejected precisely that argument in March of this year. *Bristol-Myers Squibb*, 28 F.4th at 355 (emphasis in original). Plaintiff also argues that somehow these risks had already materialized. (*See* Pl.'s Mem. at 15-16.) But Plaintiff has never identified any undisclosed issue resulting from the BELLUS's use of third parties in its clinical trials. As for patient enrollment, that was actively in progress throughout most of the Class Period (including at the time of the Prospectus), so any outcome from the trial's ongoing enrollment efforts **could not** have been realized. *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (explaining risk disclosures were not misleading because risks had "neither 'transpired' nor become a 'near certainty'"). Moreover, because RELIEF was double-blind, the effect of enrollment was unknowable and nonexistent until the release of the data. "[W]ithout contemporaneous falsity, there can be no fraud." *Lululemon*, 14 F. Supp. 3d at 571.[16]

### C. The PSAC Still Does Not Plead Loss Causation.

Plaintiff has pled no new facts concerning loss causation in the PSAC. Like the AC, the PSAC refers to the same two events, a stock drop on April 9, 2020, and the end-of-the-Class-Period stock drop on July 6, 2020. (PSAC ¶¶ 13-14.) As to the former, the PSAC doubles down on the claim that in April 2020, "Defendants suggested, for the first time, the potential need for a Phase 2b trial if the ongoing Phase 2 trial failed to indicate a minimum efficacy dose." (*Id.* ¶ 13.) As Defendants have previously explained, this is untrue. (BD Mem. at 25-26.) Defendants had disclosed all of that in the Prospectus:

---

[16] And where a new issue did materialize affecting enrollment, Defendants disclosed that too. With the onset of the COVID-19 pandemic in early 2020 (an event Plaintiff surely cannot blame Defendants for not predicting), BELLUS openly announced it closed the trial early due to the effects of the pandemic and that patients had dropped out of the study on account of those effects. (Ex. 26.)

19

- "The clinical effectiveness of BLU-5937 is not yet supported by clinical data" (Ex. 3 at S-12);

- "Based on results at any stage of clinical trials, we may decide to repeat or redesign a trial or discontinue the development of a product candidate" (*id.*);

- "If we fail to adequately demonstrate the safety and efficacy of BLU-5937, we will not be able to obtain the required regulatory approvals to commercialize that product candidate" (*id.*);

- "If our Phase 2 clinical trial is successful, we expect to initiate either a Phase 2b or a Phase 2/3 trial to further pursue the development of BLU-5937 for the treatment of chronic cough," (*id.* at S-4).

The market knew all along that a Phase 2b trial was possible. With no corrective disclosure, there is no loss causation. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173-75 (2d Cir. 2005).

The loss causation framework also shows that the July 6, 2020 announcement of the RELIEF trial's top-level results generated no disclosure claim either. "[L]oss causation is not adequately pled simply by allegations of a drop in price following an announcement of bad news if the news did not disclose the fraud." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 384 (E.D.N.Y. 2013). The disclosures of July 6, 2020 were all **new** information concerning the RELIEF trial's **results**, which on account of the study being double-blind had never before been disclosed. (*See* Ex. 27.) The PSAC, like the AC before it, does not allege that a revelation about "the **subject** of the [purported] fraudulent statement or omission"—*i.e.*, prior statements about how RELIEF was designed and compared to competitors' trials—"was the cause of the loss suffered," because the market already knew those facts. *Lentell*, 396 F.3d at 173 (emphasis in original).

## III.   THE PSAC DOES NOT CURE THE DEFICIENCIES OF PLAINTIFF'S SECURITIES ACT CLAIMS.

The PSAC does not revive Plaintiff's Securities Act claims either. All the Securities Act counts are time barred. Moreover, none of the statements Plaintiff seeks to hold Defendants liable for in the Prospectus are actionable.

20

### A. The PSAC's Securities Act Claims Remain Time Barred.

Plaintiff has not, and cannot, cure the statute of limitations issues by subsequent amendment. In the PSAC, Plaintiff claims that the BELLUS Defendants have "been on notice of the claims asserted [in the PSAC] since the initial complaint was filed on March 16, 2021" (PSAC ¶ 36), but that conclusory assertion is unsupported by the actual pleadings. Both the AC and now the PSAC were filed *after* the expiration of the one-year statute of limitations which expired, at the latest, in July 2021, one year after the end of the Class Period. Neither the PSAC nor the AC relates back to the original Complaint filed in March 2021. That original Complaint was predicated entirely on allegations that certain of the Defendants misled investors about how BLU-5937's high selectivity affected its efficacy—a claim that is absent from both the AC and PSAC, including Plaintiff's Securities Act allegations. (BD Mem. at 30-31; BD Reply at 19-20.) The PSAC also includes several purportedly actionable statements from the Prospectus that are asserted for the very first time in that pleading and do not relate back either. (*See* PSAC ¶¶ 230-32.) Plaintiff's Securities Act claims are time barred.

### B. The PSAC Adds No Facts to Support that Defendants' Statements (Old and New) Are Actionable Under the Securities Act.

As with the Exchange Act claims, the Securities Act claims (which only concern the Prospectus) fail because Plaintiff has alleged no actionable statement, and the PSAC has added no facts to explain why the statements he has asserted were misleading when made. *See ECA*, 553 F.3d at 206 (affirming dismissal of Securities Act claims).

Curiously, the Securities Act section of the PSAC alleges a single additional set of risk statements as purportedly misleading that were not included in the Exchange Act section. (*Compare* PSAC ¶¶ 136-37, *with* PSAC ¶¶ 230-32.) This set of risk factors concern the possibility that BELLUS may "fail to adequately demonstrate the safety and efficacy of BLU-5937." (PSAC

21

¶ 231; *see also id.* ("Clinical trials are length, complex, costly, and uncertain processes.  It takes several years to complete testing, and failure can occur at any stage of testing.").)

These statements are non-actionable for the same reason already discussed.  Plaintiff can identify no facts explaining how these statements were misleading or false when made, particularly because RELIEF was a ***pending*** blinded clinical trial in the middle of enrollment.  Thus, a particular outcome (like the "fail[ure] to adequately demonstrate [] safety and efficacy") did not ***exist*** at the time of these warnings.  And *Bristol-Myers Squibb* directly forecloses the argument that Defendants needed to—back in September 2019—look into a crystal ball and determine the precise means by which RELIEF might fail; disclosing that it could fail is enough.  28 F.4th at 355; *see also In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (where disclosure "warns of the exact risk that later materialized, a [S]ection 11 claim will not lie as a matter of law"); *Johnson v. Sequans Commc'ns S.A.*, 2013 WL 214297, at *12 (S.D.N.Y. Jan. 17, 2013) ("The Court adjudges the accuracy of offering materials 'by assessing the facts as they existed' at the time the materials became effective").  (*See* BD Mem. at 28-30; BD Reply at 17-19.)  Plaintiff cannot contend that risk disclosures are inaccurate when the outcome had not yet been realized and could not have been known.

## IV.    AMENDMENT IS FUTILE BECAUSE PLAINTIFF WAIVED HIS RIGHT TO ASSERT STATUTORY STANDING IN THE PSAC.

As articulated in the BELLUS Defendants' motion to dismiss papers, Plaintiff failed to adequately allege statutory standing in the AC.  (BD Mem. at 32-33; BD Reply at 2-6.)  Simply put, neither the original Complaint nor the AC contained factual allegations that he purchased BELLUS's cross-listed foreign and domestic shares on a U.S. exchange.  In his Opposition to the motions to dismiss, Plaintiff did not address statutory standing at all.  (*See also* BD Reply at 2-6 (discussing Plaintiff's waiver of statutory standing).)

In the PSAC, Plaintiff for the first time adds allegations that he "purchased or acquired BELLUS securities, on a U.S. exchange, at artificially inflated prices during the Class Period" and that "the price Mr. Cachia paid for his BELLUS securities, as set forth in his previously filed certification, matches the market price of BELLUS shares listed on the NASDAQ on each date of purchase." (PSAC ¶ 22.) Even if this Court finds such allegations to be sufficient to plead statutory standing at the motion to dismiss stage,[17] Plaintiff's allegations do not address the other issue Defendants raised in their reply briefing: waiver. Plaintiff could have addressed these issues in his Opposition, or raised in his Opposition or in a pre-Opposition motion to amend that he could plead facts that he purchased BELLUS shares on a domestic exchange, but he did not. As a consequence, Defendants spent several pages of briefing in their reply papers on an issue Plaintiff now believes he can moot with a couple sentences. That is not proper litigation procedure.

By ignoring Defendants' arguments in his Opposition to the motions to dismiss, Plaintiff waived his right to assert statutory standing (BD Reply at 6), and the Court should not allow Plaintiff to revive his claims with a new assertion that that statutory standing exists. Where a party fails to respond to an argument, that party waives any point to the contrary. *Guzman v. Macy's Retail Holdings, Inc.*, 2010 WL 1222044, at *8 (S.D.N.Y. Mar. 29, 2010) ("Plaintiff does not address this argument in her opposition brief, and therefore has waived this claim."); *see also*

---

[17] These additional allegations still leave some wrinkles. Plaintiff strangely seems unable to say straight-out that "Plaintiff purchased BELLUS shares on NASDAQ." Rather, the pleading relies on price-matching to connect his purchases on an unnamed "U.S. exchange" to purchases on NASDAQ. (*See* PSAC ¶ 22.) The allegations of PSAC ¶ 23 also directly contradict Plaintiff's prior certification filed with the Complaint. In the certification accompanying the Complaint, Plaintiff signed under penalty of perjury that "[t]o the best of [his] current knowledge, the attached sheet (Schedule 'A') lists **all of my transactions in BELLUS securities during the Class Period**, as specified in the Complaint." (ECF No. 1 at 27 (emphasis added).) Paragraph 23 of the PSAC states that "Mr. Cachia also purchased BELLUS securities on a foreign exchange, **during the Class Period**; however, transactions on a foreign exchange **were excluded from Plaintiff's previously filed certification**, because such securities are not the subject of this Complaint." (PSAC ¶ 23 (emphasis added).) One of those statements is inaccurate.

Defendants' personal jurisdiction arguments were premised on Plaintiff's failure to plead a domestic transaction as well. (*See* BD Mem. at 35.) Particularly in light of the above, Defendants expressly preserve their personal jurisdiction objections should Plaintiff not have engaged in domestic transactions.

*Rosenblatt v. City of New York*, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) ("Plaintiff effectively concedes defendants' other arguments . . . by her failure to respond to them"). Plaintiff does not even address waiver in his Motion for Leave to Amend papers despite that issue being raised by Defendants months ago—he should not obtain a free pass now. (*See also* BD Reply at 6 ("Nor does Plaintiff preserve anything with the Opposition's final sentence, 'request[ing] leave to amend' should the Court grant Defendants' motion[s] to dismiss.").)[18]

## CONCLUSION

For these reasons and those previously stated in the Defendants' motions to dismiss, Plaintiff's Motion for Leave to Amend should be denied as futile, and he should be denied any further leave to amend. He has had three complaints to try to make out a claim, and has failed to so do. He does not deserve more. *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend securities claims where "[p]laintiffs have already had one opportunity to amend their complaint").

---

[18] Plaintiff's belated arguments in the Motion for Leave to Amend that his prior pleadings sufficiently alleged standing fail as well. The fact that the Complaint and AC referenced SEC filings—the motion's primary argument—does not fill the hole left by Plaintiff failing to allege a statutory and factual requirement of his own claim, that he bought shares domestically. (*See* Pl.'s Mem. at 19, 22.) Several of the filings Plaintiff references, including the Prospectus itself, were ***cross-filed*** in both the U.S. and Canada, and so are not inherently domestic. Moreover, the fact that Plaintiff's certification (which nowhere referenced NASDAQ or U.S. purchases) had dollar-denominated figures does not point solely to the United States; Canada uses dollars too.

Dated: July 1, 2022                                    Respectfully submitted,


DR. JACKY SMITH                                        BELLUS HEALTH, INC., ROBERTO
                                                       BELLINI, FRANÇOIS DESJARDINS, AND
                                                       DR. CATHERINE BONUCCELLI

By her attorneys,
*/s/ Jillian B. Berman*                                By their attorneys,
Jillian B. Berman                                      */s/ Caroline H. Bullerjahn*
Daniel E. Reynolds                                     Caroline H. Bullerjahn
Ramya Kasturi                                          Courtney D. Orazio (*pro hac vice*)
LANKLER SIFFERT & WOHL LLP                             Tucker DeVoe (*pro hac vice*)
500 Fifth Avenue, 34th Floor                           Katherine M. Fahey *(pro hac vice pending)*
New York, NY 10110                                     GOODWIN PROCTER LLP
Telephone (212) 921-8399                               100 Northern Avenue
Fax (212) 764-3701                                     Boston, MA 02210
jberman@lswlaw.com                                     Tel.: 617.570.1000
dreynolds@lswlaw.com                                   Fax: 617.523.1231
rkasturi@lswlaw.com                                    cbullerjahn@goodwinlaw.com
                                                       corazio@goodwinlaw.com
                                                       tdevoe@goodwinlaw.com
*Attorneys for Dr. Jacky Smith*                        kfahey@goodwinlaw.com

                                                       *Attorneys for Defendants BELLUS Health,*
                                                       *Inc., Roberto Bellini, François Desjardins,*
                                                       *and Dr. Catherine Bonuccelli*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all attorneys of record.

*/s/ Caroline H. Bullerjahn*
Caroline H. Bullerjahn
