# Exhibit 37

**EXHIBIT 37[1]**

## NEWLY ALLEGED MISLEADING STATEMENTS AND OMISSIONS AND WHY THEY ARE NOT ACTIONABLE

I.    STATEMENTS ALLEGEDLY SUPPORTING EXCHANGE ACT AND SECURITIES ACT CLAIMS

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission[2] | Why Statement is Not Actionable[3] |
|---|---|---|---|
| 136, 138; 230, 233 | Ex. 3, Form SUPPL (Prospectus) (Sept. 5, 2019)<br><br>S-10-S-11 | *We have designed the clinical trials for BLU-5937*. However, we rely on contract research organizations and other third parties to assist in managing, monitoring and otherwise carrying out these trials. We compete with many other companies for the resources of these third parties. The third parties on whom we rely generally may terminate their engagements at any time, and having to enter into alternative arrangements would delay development and commercialization of our drug candidate. The U.S. Food and Drug Administration, or the "FDA", and comparable foreign regulatory authorities require compliance with regulations and standards for designing, conducting, monitoring, recording, analyzing, and reporting the results of clinical trials to assure that the data and results are credible and accurate and that the rights, integrity and confidentiality of trial participants are protected. Although we rely on third parties to conduct our clinical trials, they are not our employees, and *we are responsible for ensuring that each of these clinical trials is conducted in accordance with our general investigational plan, protocol and other requirements*. Our reliance on these third parties for research and development activities will reduce our control over these activities but will not relieve us of our responsibilities.<br><br>If these third parties do not successfully carry out their duties under their agreements, if the quality or accuracy of the data they obtain is compromised due to their failure to adhere to clinical trial protocols or to | • No Duty to Disclose<br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B; III.B<br><br>• Not False or Misleading<br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B; III.B<br><br>• Risk Explicitly Disclosed / Bespeaks Caution<br>  o *See* Mem., Background Section D, Argument Section I.B.1, II.A<br>  o *See also* MTA Opp., Section II.B; III.B |

[1] The BELLUS Defendants cross-reference the legal arguments set forth in their Memorandum of Law in Support of their Motion to Dismiss ("Mem.") (ECF No. 55) and arguments in Defendants' Opposition to Plaintiff's Motion for Leave to Amend the Amended Class Action Complaint ("MTA Opp.").

[2] This column lists the allegedly misleading statements identified in the Proposed Second Amended Complaint ("PSAC"). Emphases are as they appear in the PSAC, and language in **bolded italics** reflects the portions of each statement that Plaintiffs allege are misleading.

[3] For the Court's convenience, this column identifies the reasons, as set forth in the Memorandum and the MTA Opposition, why each alleged misstatement is not actionable. Along with the reasons set forth in this Exhibit, the alleged misstatements identified herein fail to state a claim for securities fraud for the independent reasons set forth elsewhere in the Memorandum and the MTA Opposition. Where Defendants previously addressed prior similar language from Plaintiff's Amended Complaint ("AC") in the Memorandum and **Exhibit 1**, this chart cross-references the prior AC paragraph addressed by **Exhibit 1**.

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission[2] | Why Statement is Not Actionable[3] |
|---|---|---|---|
| | | regulatory requirements, or if they otherwise fail to comply with clinical trial protocols or meet expected deadlines, the clinical trials of BLU-5937 may not meet regulatory requirements. ***If clinical trials do not meet regulatory requirements*** *or if these third parties need to be replaced, **preclinical development activities or clinical trials may be extended, delayed, suspended or terminated. If any of these events occur, we may not be able to obtain regulatory approval of BLU-5937 on a timely basis or at all.*** | • Forward Looking Statement<br>   ○ *See* Mem., Section I.B.2<br>   ○ *See also* MTA Opp., Section II.B; III.B |
| 137, 138; 232-33 | Ex. 3, Form SUPPL (Prospectus) (Sept. 5, 2019)<br><br>S-12-S-13 | Clinical trials for product candidates require us or third parties we contract with to identify and enroll a large number of patients with the disorder under investigation. We or the third parties we contract with may not be able to enroll a sufficient number of patients to complete clinical trials in a timely manner. ***Patient enrollment is a function of many factors, including the following: design of the protocol***, size of the patient population, eligibility criteria for the trial in question, perceived risks and benefits of the drug under study, availability of competing therapies, efforts to facilitate timely enrollment in clinical trials, patient referral practices of physicians, and availability of clinical trial sites. ***If we or the third parties we contract with have difficulty enrolling a sufficient number of patients to conduct our clinical trials as planned, we may need to delay or terminate ongoing clinical trials.*** | • No Duty to Disclose<br>   ○ *See* Mem., Section I.B.1; II.A<br>   ○ *See also* MTA Opp., Section II.B; III.B<br><br>• Not False or Misleading<br>   ○ *See* Mem., Section I.B.1; II.A<br>   ○ *See also* MTA Opp., Section II.B; III.B<br><br>• Risk Explicitly Disclosed / Bespeaks Caution<br>   ○ *See* Mem., Background Section D, Argument Section I.B.1, II.A<br>   ○ *See also* MTA Opp., Section II.B; III.B<br><br>• Non-Actionable Statements of Opinion<br>   ○ *See* Mem., Section I.B.4<br>   ○ *See also* MTA Opp., Section II.B |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission[2] | Why Statement is Not Actionable[3] |
|---|---|---|---|
|  |  |  | • Forward-Looking Statement<br>○ *See* Mem., Section I.B.2<br>○ *See also* MTA Opp., Section II.B; III.B |

## II.   STATEMENTS ALLEGEDLY SUPPORTING EXCHANGE ACT CLAIMS ONLY

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| 143, 145 | Ex. 39, R. Bellini Form 52-109F2 (Nov. 14, 2019 6-K Ex. 99.3)<br><br>Ex. 39, F. Desjardins Form 52-109F2 (Nov. 14, 2019 6-K Ex. 99.4) | Defendants Bellini and Desjardins each signed, and filed therewith, a Form 52-109F2, "Certification of Interim Filing, Full Certificate", certifying that "based on [their] knowledge, having exercised reasonable diligence, *the interim filings do not contain any untrue statement of a material fact or omit to state material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.*" | • No Duty to Disclose<br>○ *See* Mem., Section I.B.1; II.A<br>○ *See also* MTA Opp., Section II.B; III.B<br><br>• Not False or Misleading<br>○ *See* Mem., Section I.B.1; II.A<br>○ *See also* MTA Opp., Section II.B<br><br>• Non-Actionable Statements of Opinion<br>○ *See* Mem., Section I.B.4<br>○ *See also* MTA Opp., Section II.B |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| 144, 145 | Ex. 39, 3Q19 MD&A (Nov. 14, 2019 6-K Ex. 99.2)<br><br>p. 3 | ***The four doses selected for the RELIEF trial were based on pharmacokinetic/pharmacodynamic modeling using data gathered from preclinical cough studies, data from a Phase 2 clinical trial with a class competitor and the BLU-5937 Phase 1 trial.*** Based on that modeling, it is anticipated that the optimal therapeutic doses will be 50 mg to 100 mg BID; however, to allow a better characterization of the dose response range and proper dose selection for future clinical trials, the 25 mg BID and 200 mg BID doses are also being evaluated.<br><br>. . .<br><br>***The key inclusion criteria in the RELIEF trial are that patients must have unexplained or refractory chronic cough for at least one year, an awake cough count of ≥ 10 per hour*** (Awake Cough Count at Screening) and a score of ≥ 40mm on the Cough Severity VAS at Screening. Current or past smoking (within the past six months) or a diagnosis of chronic obstructive pulmonary disease, bronchiectasis, or idiopathic pulmonary fibrosis are key exclusion criteria.<br><br>The RELIEF trial is being conducted with Illingworth Research Group***, a clinical research organization which has conducted multiple clinical trials in chronic cough. Each of the trial sites are experienced in conducting chronic cough trials. Many of the sites*** are Centers of Excellence for the treatment of chronic cough and ***have access to a significant pool of patients.*** | • <u>No Duty to Disclose</u><br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B; III.B<br><br>• <u>Not False or Misleading</u><br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Non-Actionable Puffery</u><br>  o *See* Mem., Section I.B.3; II.A<br><br>• <u>Non-Actionable Statements of Opinion</u><br>  o *See* Mem., Section I.B.4<br>  o *See also* MTA Opp., Section II.B |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| 146-47 | Ex. 39, 3Q19 MD&A (Nov. 14, 2019 6-K Ex. 99.2)<br><br>p. 1<br><br>Ex. 38, FY 2018 Annual Information Form (Sept. 3, 2019 F-10 EX-4.1)<br><br>p. 14 | Competition in the biopharmaceutical industry is intense, and development by other companies *could render* BELLUS Health's drugs or technologies non-competitive.<br><br>…<br><br>The biopharmaceutical industry is highly competitive. ***New drugs developed by other companies could render the Company's drugs or technologies noncompetitive.*** Competitors are developing and testing drugs and technologies that would compete with the drugs that BELLUS Health is developing. Some of these drugs may be more effective or have an entirely different approach or means of accomplishing the desired effect than the Company's drugs. BELLUS Health expects competition from biopharmaceutical and pharmaceutical companies and academic research institutions to increase over time. Many of BELLUS Health's competitors and potential competitors have substantially greater drug development capabilities and financial, scientific, marketing, and human resources. The Company's competitors *may succeed* in developing drugs earlier and in obtaining regulatory approvals and patent protection for such drugs more rapidly than BELLUS Health can or at a lower price. | • <u>No Duty to Disclose</u><br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Not False or Misleading</u><br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Risk Explicitly Disclosed / Bespeaks Caution</u><br>  o *See* Mem., Background Section D, Argument Section I.B.1, II.A<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Forward Looking Statement</u><br>  o *See* Mem., Section I.B.2<br>  o *See also* MTA Opp., Section II.B<br><br>• **<u>Previously Addressed By Exhibit 1 at AC ¶¶ 141-42; 219-20</u>** |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| 148-49 | Ex. 38, FY 2018 Annual Information Form (Sept. 3, 2019 F-10 EX-4.1)<br><br>p. 10 | ***BELLUS Health has designed the clinical trials for BLU-5937.*** However, the Company relies on contract research organizations and other third parties to assist in managing, monitoring and otherwise carrying out these trials. The Company competes with many other companies for the resources of these third parties. The third parties on whom the Company relies generally may terminate their engagements at any time, and having to enter into alternative arrangements would delay development and commercialization of its drug candidate. The FDA and comparable foreign regulatory authorities require compliance with regulations and standards for designing, conducting, monitoring, recording, analyzing, and reporting the results of clinical trials to assure that the data and results are credible and accurate and that the rights, integrity and confidentiality of trial participants are protected. Although the Company relies on third parties to conduct its clinical trials, they are not the Company's employees, and ***the Company is responsible for ensuring that each of these clinical trials is conducted in accordance with its general investigational plan, protocol and other requirements.*** The Company's reliance on these third parties for research and development activities will reduce its control over these activities but will not relieve the Company of its responsibilities.<br><br>If these third parties do not successfully carry out their duties under their agreements, if the quality or accuracy of the data they obtain is compromised due to their failure to adhere to clinical trial protocols or to regulatory requirements, or if they otherwise fail to comply with clinical trial protocols or meet expected deadlines, the clinical trials of the Company's drug candidate may not meet regulatory requirements. ***If clinical trials do not meet regulatory requirements*** or if these third parties need to be replaced, ***preclinical development activities or clinical trials may be extended, delayed, suspended or terminated. If any of these events occur, the Company may not be able to obtain regulatory approval of its drug candidate on a timely basis or at all.*** | • <u>No Duty to Disclose</u><br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Not False or Misleading</u><br>  o *See* Mem., Section I.B.1; II.A<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Risk Explicitly Disclosed / Bespeaks Caution</u><br>  o *See* Mem., Background Section D, Argument Section I.B.1, II.A<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Forward Looking Statement</u><br>  o *See* Mem., Section I.B.2<br>  o *See also* MTA Opp., Section II.B |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| 156, 159 | Ex. 40, R. Bellini Certification (Feb. 27, 2020 40-F Ex. 99.4) <br><br> Ex. 40, F. Desjardins Certification (Feb. 27, 2020 40-F Ex. 99.5) | BELLUS also filed with the SEC a Form 40-F….Filed therewith were also Certification forms pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002, signed by Defendants Bellini and Desjardins, certifying that "based on [their] knowledge, *th[e] [Form 40-F] report does not* contain any untrue statement of a material fact or *omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period by this report."* | • No Duty to Disclose <br> ○ *See* Mem., Section I.B.1; II.A <br> ○ *See also* MTA Opp., Section II.B; III.B <br><br> • Not False or Misleading <br> ○ *See* Mem., Section I.B.1; II.A <br> ○ *See also* MTA Opp., Section II.B <br><br> • Non-Actionable Statements of Opinion <br> ○ *See* Mem., Section I.B.4 <br> ○ *See also* MTA Opp., Section II.B |
| 157-59 | Ex. 4, FY 2019 Annual Information Form (Feb. 27, 2020 40-F Ex. 99.1) <br><br> pp. 22, 24 <br><br> Ex. 40, FY 2019 MD&A (Feb. 27, 2020  40-F Ex. 99.3) <br><br> pp. 22, 25 | *We have designed the clinical trials for BLU-5937.* However, we rely on contract research organizations and other third parties to assist in managing, monitoring and otherwise carrying out these trials. We compete with many other companies for the resources of these third parties. The third parties on whom we rely generally may terminate their engagements at any time, and having to enter into alternative arrangements would delay development and commercialization of our product candidate. The U.S. Food and Drug Administration, or the "FDA", and comparable foreign regulatory authorities require compliance with regulations and standards for designing, conducting, monitoring, recording, analyzing, and reporting the results of clinical trials to assure that the data and results are credible and accurate and that the rights, integrity and confidentiality of trial participants are protected. Although we rely on third parties to conduct our clinical trials, they are not our employees, and *we are responsible for ensuring that each of these clinical trials is conducted in accordance with our general investigational plan, protocol and other requirements.* Our reliance on these third parties for research and development activities will reduce our control over these activities but will not relieve us of our responsibilities. | • No Duty to Disclose <br> ○ *See* Mem., Section I.B.1 <br> ○ *See also* MTA Opp., Section II.B <br><br> • Not False or Misleading <br> ○ *See* Mem., Section I.B.1 <br> ○ *See also* MTA Opp., Section II.B <br><br> • Risk Explicitly Disclosed / Bespeaks Caution <br> ○ *See* Mem., Background Section D, Argument Section I.B.1, II.A <br> ○ *See also* MTA Opp., Section II.B |

7

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| | | If these third parties do not successfully carry out their duties under their agreements, *if the quality or accuracy of the data they obtain is compromised due to their failure to adhere to clinical trial protocols or to regulatory requirements, or if they otherwise fail to comply with clinical trial protocols or meet expected deadlines, the clinical trials of BLU-5937 may not meet regulatory requirements. If clinical trials do not meet regulatory requirements* or if these third parties need to be replaced, *preclinical development activities or clinical trials may be extended, delayed, suspended or terminated. If any of these events occur, we may not be able to obtain regulatory approval of BLU-5937 on a timely basis or at all.*  . . .  Clinical trials for product candidates require us or third parties we contract with to identify and enroll a large number of patients with the disorder under investigation. We or the third parties we contract with may not be able to enroll a sufficient number of patients to complete clinical trials in a timely manner. *Patient enrollment is a function of many factors, including the following: design of the protocol*, size of the patient population, eligibility criteria for the trial in question, perceived risks and benefits of the drug under study, availability of competing therapies, efforts to facilitate timely enrollment in clinical trials, patient referral practices of physicians, and availability of clinical trial sites. *If we or the third parties we contract with have difficulty enrolling a sufficient number of patients to conduct our clinical trials as planned, we may need to delay or terminate ongoing clinical trials*. | • <u>Non-Actionable Statements of Opinion</u><br>  o *See* Mem., Section I.B.4<br>  o *See also* MTA Opp., Section II.B<br><br>• <u>Forward Looking Statement</u><br>  o *See* Mem., Section I.B.2<br>  o *See also* MTA Opp., Section II.B |
| 160-61 | Ex. 4, FY 2019 Annual Information Form (Feb. 27, 2020  40-F Ex. 99.1)  p. 27 | Competition in the biopharmaceutical industry is intense, and development by other companies *could render* BELLUS Health's drugs or technologies non-competitive.  . . .  We are aware of other companies targeting chronic cough as the primary outcome measure in clinical studies of products. There are multiple companies developing products at varying stages of development specifically intended to treat chronic cough including Merck & Co., Bayer AG, Shionogi Inc. and NeRRe Therapeutics Ltd, some of which have | • <u>No Duty to Disclose</u><br>  o *See* Mem., Section I.B.1<br>  o *See also* MTA Opp., Section II.B.<br><br>• <u>Not False or Misleading</u><br>  o *See* Mem., Section I.B.1<br>  o *See also* MTA Opp., Section II.B |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| | Ex. 40, FY 2019 MD&A (Feb. 27, 2020  40-F Ex. 99.3)  p. 28 | substantially greater product development capabilities and financial, scientific, marketing, and human resources than us. Of these companies, Merck, Bayer and Shionogi are developing P2X3 antagonists for chronic cough that *could compete* directly with BLU-5937…. | • Risk Explicitly Disclosed / Bespeaks Caution <br> o *See* Mem., Background Section D, Argument Section I.B.1, II.A <br> o *See also* MTA Opp., Section II.B <br><br> • Forward Looking Statement <br> o *See* Mem., Section I.B.2 <br> o *See also* MTA Opp., Section II.B <br><br> • **Previously Addressed By Exhibit 1 at AC ¶¶ 141-42; 219-20** |
| 170 | Ex. 41, FY 2019 Consolidated Annual Report (Apr. 7, 2020 6-K Ex. 99.1)  pp. 23, 26, 29 | Thus, this document reiterated the materially misleading statements discussed in ¶¶158-60, 162 which were still materially false and misleading for the reasons provided in ¶¶161, 163. | • No Duty to Disclose <br> o *See* Mem., Section I.B.1; II.A <br><br> • Not False or Misleading <br> o *See* Mem., Section I.B.1; II.A <br><br> • Risk Explicitly Disclosed / Bespeaks Caution <br> o *See* Mem., Background Section D, Argument Section I.B.1, II.A |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| | | | • <u>Non-Actionable Statements of Opinion</u><br>   o *See* Mem., Section I.B.4<br>   o *See also* MTA Opp., Section II.B<br><br>• <u>Forward Looking Statement</u><br>   o *See* Mem., Section I.B.2<br>   o *See also* MTA Opp., Section II.B |
| 174 | Ex. 42, R. Bellini Form 52-109F2 (May 14, 2020 6-K Ex. 99.4)<br><br>Ex. 42, F. Desjardins Form 52-109F2 (May 14, 2020 6-K Ex. 99.5) | Defendants Bellini and Desjardins each signed, and filed therewith, a Form 52-109F2, "Certification of Interim Filing, Full Certificate", certifying that "based on [their] knowledge, having exercised reasonable diligence, ***the interim filings do not*** contain any untrue statement of a material fact or ***omit to state material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings***." | • <u>No Duty to Disclose</u><br>   o *See* Mem., Section I.B.1; II.A<br>   o *See also* MTA Opp., Section II.B; III.B<br><br>• <u>Not False or Misleading</u><br>   o *See* Mem., Section I.B.1; II.A<br>   o *See also* MTA Opp., Section II.B<br><br>• <u>Non-Actionable Statements of Opinion</u><br>   o *See* Mem., Section I.B.4<br>   o *See also* MTA Opp., Section II.B |
| 175-77 | Ex. 42, 1Q 2020 MD&A (May 14, 2020 6-K Ex. 99.2)<br><br>pp. 6, 7 | . . .<br><br>the misleading statements detailed in ¶¶158-60, 162 were incorporated by reference in the 1Q20 MD&A.<br><br>. . .<br><br>In April 2020, we completed the patient dosing in our RELIEF clinical trial, with ***52 patients having completed the treatment and an additional 13 patients having completed at least 50% of dosing***. A total of 68 patients | • <u>No Duty to Disclose</u><br>   o *See* Mem., Section I.B.1; II.A<br>   o *See also* MTA Opp., Section II.B; III.B |

10

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| | | with refractory chronic cough were enrolled into the trial. We decided to close the trial early due to the impact of the COVID-19 pandemic on the RELIEF clinical trial activities. Sixteen patients dropped out in total, including 13 as a result of difficulties with conducting follow-up visits related to the COVID-19 pandemic or early termination of the trial. ***With 52 patients completing dosing, the RELIEF trial is the largest crossover study conducted in refractory chronic cough, providing the powering needed to evaluate the efficacy and safety of BLU-5937.***<br><br>The RELIEF trial is a randomized, double–blind, placebo-controlled, dose escalation and two-period crossover design trial to assess the efficacy, safety and tolerability of BLU-5937 at four doses: 25, 50, 100 and 200 mg BID. Doses were escalated at four-day intervals. Patients with refractory chronic cough were enrolled at 16 clinical sites located in the United Kingdom and United States. ***The four doses selected for the RELIEF trial were based on pharmacokinetic/pharmacodynamic modeling using data gathered from preclinical cough studies, data from a Phase 2 clinical trial with a class competitor and the BLU-5937 Phase 1 trial.*** Based on that modeling, it is anticipated that the optimal therapeutic doses will be 50 mg to 100 mg BID; however, to allow a better characterization of the dose response range and proper dose selection for future clinical trials, the 25 mg BID and 200 mg BID doses were also evaluated.<br><br>. . .<br><br>***The key inclusion criteria in the RELIEF trial were that patients must have unexplained or refractory chronic cough for at least one year, an awake cough count of ≥ 10 per hour*** (Awake Cough Count at Screening) and a score of ≥ 40mm on the Cough Severity VAS at Screening. Current or past smoking (within the past six months) or a diagnosis of chronic obstructive pulmonary disease, bronchiectasis, or idiopathic pulmonary fibrosis were key exclusion criteria.<br><br>***The RELIEF trial is conducted with Illingworth Research Group, a clinical research organization which has conducted multiple clinical trials in chronic cough. Each of the trial sites are experienced in conducting chronic cough trials. Many of the sites are Centers of*** | • <u>Not False or Misleading</u><br> o *See* Mem., Section I.B.1; II.A<br> o *See also* MTA Opp., Section II.B<br><br>• <u>Risk Explicitly Disclosed / Bespeaks Caution</u><br> o *See* Mem., Background Section D, Argument Section I.B.1, II.A<br> o *See also* MTA Opp., Section II.B<br><br>• <u>Non-Actionable Puffery</u><br> o *See* Mem., Section I.B.3; II.A<br><br>• <u>Non-Actionable Statements of Opinion</u><br> o *See* Mem., Section I.B.4<br> o *See also* MTA Opp., Section II.B<br><br>• <u>Forward Looking Statement</u><br> o *See* Mem., Section I.B.2<br> o *See also* MTA Opp., Section II.B<br><br>• **<u>Previously Addressed By Exhibit 1 at AC ¶¶ 161-62; 164-65</u>** |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| | | *Excellence for the treatment of chronic cough and have access to a significant pool of patients.* | |

III.   **STATEMENTS ALLEGEDLY SUPPORTING SECURITIES ACT CLAIMS ONLY**

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| 231, 233 | Ex. 3, Sept. 3, 2019 Registration Statement  S-12–S-13 | *We will only receive regulatory approval for a product candidate if we can demonstrate in carefully designed and conducted clinical trials that the product candidate is safe and effective.* We do not know whether our current or any future clinical trials will demonstrate sufficient safety and efficacy to obtain the requisite regulatory approvals or if they will result in marketable products.<br><br>Clinical trials are lengthy, complex, costly, and uncertain processes. It takes several years to complete testing, and failure can occur at any stage of testing. The early stage of our product candidate involves risks related to safety, efficacy, drug metabolism, pharmacokinetic profile, tolerability, manufacturing, formulation and distribution, among others. Results attained in preclinical testing and early clinical studies or trials may not be indicative of results that are obtained in later studies. We have suffered, and may suffer further, significant setbacks in advanced clinical trials, even after promising results in earlier studies. For instance, in June 2016, we announced that KIACTA (eprodisate) did not meet the primary efficacy endpoint in a Phase 3 clinical trial. Based on results at any stage of clinical trials, we may decide to repeat or redesign a trial or discontinue the development of a product candidate. Furthermore, actual results may vary once the final and quality-controlled verification of data and analyses has been completed. *If we fail to adequately demonstrate the safety and efficacy of BLU-5937, we will not be able to obtain the required regulatory approvals to commercialize that product candidate.*<br><br>Clinical trials are subject to continuing oversight by governmental regulatory authorities and institutional review boards, and must meet the requirements of these authorities; must meet requirements for informed consent; and must meet requirements for good clinical practices. | • No Duty to Disclose<br> ○ *See* Mem., Section I.B.1; II.A<br> ○ *See also* MTA Opp., Section III.B<br><br>• Not False or Misleading<br> ○ *See* Mem., Section I.B.1; II.A<br> ○ *See also* MTA Opp., Section III.B<br><br>• Risk Explicitly Disclosed / Bespeaks Caution<br> ○ *See* Mem., Background Section D, Argument Section I.B.1, II.A<br> ○ *See also* MTA Opp., Section III.B<br><br>• Forward-Looking Statement<br> ○ *See* Mem., Section I.B.2<br> ○ *See also* MTA Opp., Section III.B |

| PSAC ¶ | Source | Alleged Misleading Statement and/or Omission | Why Statement is Not Actionable |
|---|---|---|---|
| | | ***We may not be able to comply with these requirements***. We rely on third parties, including contract research organizations and outside consultants, to assist in managing and monitoring clinical trials. Our reliance on these third parties may result in delays in completing, or in failing to complete, these trials if one or more third parties fail to perform with the speed and level of competence expected. ***If clinical trials for a product candidate are unsuccessful, we will be unable to commercialize such product candidate. If one or more of the clinical trials is delayed, we will be unable to meet our anticipated development or commercialization timelines. Either circumstance could have a material adverse effect on our business, financial condition, results of operations and prospects.*** | |