## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL D. CACHIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BELLUS HEALTH INC., ROBERTO BELLINI, FRANÇOIS DESJARDINS, CATHERINE BONUCCELLI, and JACKY SMITH,<br><br>Defendants. | No. 1:21-CV-02278-GBD<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED |

## **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ............................................................................................................................. 3

    A.   Plaintiff's "housekeeping amendments" should be allowed. ....................................... 4

    B.   The PSAC's new post-Class Period facts bolster the Complaint's claims................... 5

    C.   Plaintiff adequately alleges standing, and his Securities Act claims are timely. ....... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Abely v. Aeterna Zentaris Inc.*,
 2013 WL 2399869 (S.D.N.Y. May 29, 2013) ............................................................... 7

*Arkansas Pub. Employees Ret. Sys. v. Bristol-Myers Squibb Co.*,
 28 F.4th 343 (2d Cir. 2022) ....................................................................................... 6

*Attestor Value Master Fund v. Republic of Argentina*,
 940 F.3d 825 (2d Cir. 2019) ..................................................................................... 10

*Coronel v. Quanta Cap. Holdings Ltd.*,
 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ................................................................ 8

*ECA, Loc. 134 IBEW Jt. Pension Tr. of Chicago v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009) ....................................................................................... 7

*Francisco v. Abengoa, S.A.*,
 559 F. Supp. 3d 286 (S.D.N.Y. 2021) ........................................................................ 1

*George v. China Auto. Sys., Inc.*,
 2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) .............................................................. 5

*Hanson v. Frazer*,
 2013 WL 5372749 (S.D.N.Y. Sept. 24, 2013) ........................................................... 5

*IBEW Loc. Union No. 58 Pension Tr. Fund and Annuity Fund v.*
 *Royal Bank of Scotland Group, PLC*,
 783 F.3d 383 (2d Cir. 2015) ..................................................................................... 10

*In re Aratana Therapeutics Inc. Sec. Litig.*,
 315 F. Supp. 3d 737 (S.D.N.Y. 2018) ........................................................................ 8

*In re FBR Inc. Sec. Litig.*,
 544 F. Supp. 2d 346 (S.D.N.Y. 2008) ........................................................................ 8

*In re Initial Pub. Offering Sec. Litig.*,
 214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................................ 4

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*,
 2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) .............................................................. 6

*In re Lululemon Sec. Litig.*,
 14 F. Supp. 3d 55 (S.D.N.Y. 2014) ............................................................................ 8

*In re Lululemon Sec. Litig.*,
 604 Fed. Appx. 62 (2d Cir. 2015) .............................................................................. 8

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) ........................................................... 10

*In re Synergen, Inc. Sec. Litig.*,
863 F.Supp. 1409 (D. Colo. 1994) ................................................................... 5

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016) ............................................................................ 10

*Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*,
450 F. Supp. 3d 358 (S.D.N.Y. 2020). ............................................................ 4

*James v. John Jay Coll. of Crim. Just.*,
776 F. App'x 723 (2d Cir. 2019) ................................................................... 10

*Kleinman v. Elan Corp., plc*,
706 F.3d 145 (2d Cir. 2013) .......................................................................... 10

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005) .......................................................................... 10

*Lighthouse Fin. Group v. Royal Bank of Scotland Group, PLC*,
2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013) ................................................ 10

*Micholle v. Ophthotech Corp.*,
2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019) ........................................... 8, 9

*Ophthotech Corp.*,
2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019) ............................................... 7

*Pangburn v. Culbertson*,
*200 F.3d 65 (2d Cir. 1999)* ............................................................................ 4

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012) ............................................................................ 9

*Pettaway v. Natl. Recovery Sols., LLC*,
955 F.3d 299 (2d Cir. 2020) .......................................................................... 10

*Schaffer v. Horizon Pharma plc*,
2018 WL 481883 (S.D.N.Y. 2018) ................................................................. 9

*Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014) ............................................................... 5

*Skiadas v. Acer Therapeutics Inc.*,
2020 WL 3268495 (S.D.N.Y. June 16, 2020) ................................................. 4

*Skiadas v. Acer Therapeutics Inc.*,
  2020 WL 4208442 (S.D.N.Y. July 21, 2020) ............................................................ 5

*Zagami v. Cellceutix Corp.*,
  2016 WL 3199531 (S.D.N.Y. June 8, 2016)............................................................... 7

Plaintiff respectfully submits this Reply in Further Support of his Motion for Leave to Amend the Complaint (ECF No. 76) (the "Motion") and file the PSAC.[1] In opposing, Defendants argue that amendment is futile. *See* ECF No. 80 ("Opp."). Defendants are wrong.

Contrary to Defendants' characterization of Rule 15(a)(2) amendments, futility is met only "when it is '**beyond doubt** that the plaintiff can prove **no set of facts** in support of [its] amended claims.'" *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 315 (S.D.N.Y. 2021) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999)). This Action is still at the pleading stage, and the PSAC properly adds new allegations unknown to Plaintiff when filing the Complaint, refines existing allegations in response to Defendants' motions to dismiss ("MTD"), and narrows the parties and causes of actions. *See* Mem. at 12-24. Thus, amendment would not be futile.

Indeed, the new allegations address, *inter alia*, BELLUS's second Phase 2 trial, SOOTHE, which was designed to be more akin to Merck's Phase 2b trial, by enrolling patients with a baseline awake cough frequency of ≥ 25 c/h. In addition, the PSAC references analysts who, post-Class Period, were bullish on BELLUS in light of its stated focus, in the SOOTHE trial, on patients with high cough frequency – *i.e.,* the Company was finally studying the types of patients for which Shionogi and Merck had previously shown efficacy. And on December 13, 2021, BELLUS announced successful results from its second Phase 2 trial, which the market expected because BELLUS was finally following the clinical trial roadmap Defendants had touted during the Class Period. Defendant Bellini further assured the market in March 2022 that the Company "will mimic more of what Merck did" for its Phase 3 trial and noted "it's really nice being kind of like behind or like second in class here and learning." Lastly, BELLUS, in its Annual Report FY20, clarified

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed in Plaintiff's Memorandum of Law in Support of his Motion (ECF No. 77) ("Mem."); all emphasis is added; internal citations are omitted; and "¶" references are to the paragraphs in the PSAC (ECF No. 78-2).

the language of a risk factor, involving competitors, that Plaintiff has alleged as false or misleading. When taken as true, these facts further refute Defendants' MTD arguments and further demonstrate that Defendants knowingly or recklessly made material misstatements to BELLUS investors.

At the beginning of the Class Period, for example, Defendants knowingly capitalized on the excitement of competitors' Phase 2 trials, repeatedly emphasizing the RELIEF trial's similarity to Merck's studies. *See* ¶¶91-93. Doubling down on their competitors' success, Defendants touted that BLU-5937's "***[c]linically validated target reduces clinical risk***" and even depicted Merck's and Shionogi's Phase 2 trial results in BELLUS's investor presentations. *See, e.g.,* ¶¶150-51, 162-63, 180. As reflected in an April 2020 analyst report, issued after a chat with Defendants Bellini and Bonuccelli, the market understood Defendants to be aware that "baseline cough frequency … should be similar across trials, where studies so far have shown that patients with higher cough frequency have had greater response." ¶198. Yet, Defendants failed to disclose that BELLUS's enhanced risk for failure had already materialized. While touting BELLUS's "reduce[d] clinical risk" and RELIEF's similarities to competitors' trials, BELLUS was not studying patients with high cough frequency. Defendants had failed to design, implement, and/or change enrollment protocols to account for the correlation between high cough frequency and efficacy, as demonstrated in competitors' trials. *See, e.g.,* ¶¶152, 164, 183. As a result, the RELIEF trial had an insufficient number of the types of patients from competitors' successful studies. *See id.*

As the Class Period progressed, Defendants continued to misrepresent and conceal the truth. During a May 27, 2020 "virtual Key Opinion Leader meeting" – held after the completion of patient enrollment and dosing in the RELIEF trial but before releasing topline results – Defendant Bellini stated, "***[t]o be clear, this isn't a study that we invented. This is a trial design that's been conducted many, many times. In the chronic cough space, it works very, very well***."

2

¶178. Defendant Smith added, "*[w]e're also selecting patients with more than 10 coughs per hour in order that we have a sufficient frequency of coughing so we can delineate the effects of the different doses of drug.*" ¶181. And when asked how RELIEF compared to Merck's and Shionogi's Phase 2 trials, Smith responded, "*it's very similar to many of the other Phase II trials that have been done, except the larger numbers.*" *Id.* Bellini further stated that "*including the RELIEF study, more recently, studies have been also using a cough frequency cutoff*. And so I think *it's fair to assume the patients included in these studies are at the more severe end*." ¶182. A key takeaway of an analyst who attended the meeting was that the Company's "baseline patient characteristics for Ph[ase] 2 are similar to competitors' prior Ph[ase] 2 trials: <u>awake cough frequency/hour of 40.3</u>, average age of 64.2 y.o., & average duration of cough of 13.9 yrs." ¶199.

As a result of Defendants' misleading Class Period statements – pointing to the cough frequencies of patients enrolled in prior successful Phase 2 trials – the market understood and expected BELLUS to study patients that did not differ materially from its competitors. But unbeknownst to investors, the RELIEF patients did materially differ as to a core characteristic: baseline cough frequency. As such, on July 6, 2020, BELLUS shocked the market when it revealed that its Phase 2 trial failed to show efficacy and that RELIEF had "<u>unusually low baseline cough counts compared to competitive trials</u>." ¶214. This news caused BELLUS's stock price to plummet over 75% from the Class Period high, significantly damaging Plaintiff and the Class. ¶¶15-16, 211.

In sum, the PSAC states plausible claims for relief. Plaintiff filed the Motion in good faith, and Defendants have not identified prejudice. Thus, the Motion should be granted.

## ARGUMENT

Defendants argue that the PSAC is futile because the newly alleged: (1) misstatements are largely identical to the existing ones, were available at the time of the Complaint and are not actionable; (2) facts relating to the SOOTHE trial bolster the competing inference that Defendants

acted innocently; and (3) facts relating to the Securities Act claims and statutory standing are irrelevant because these claims are either time barred or waived. Opp. at 1-2, 7-24. However, an amendment is futile "only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn*, 200 F.3d 65 at 70-71. Moreover, the opposing party "has the burden of establishing its futility." *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 377 (S.D.N.Y. 2020). Defendants have not met their burden.

### A. Plaintiff's "housekeeping amendments" should be allowed.

Defendants claim that much of the proposed amendment is "immaterial." Opp. at 1, 5-6, 9-10, 13-14, 17-19. This argument fails. "[A]bsent a showing of prejudice or bad faith," "the policy of freely granting leave to amend" applies to the proposed changes whether they are deemed "errata" or "substantive." *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 124-25 (S.D.N.Y. 2002) (granting leave to make "housekeeping amendments" even if they "are substantive" because of the lack of prejudice to defendants). Additionally, "[w]here. . . the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent. That rule is especially true here, where the parties have already fully briefed this issue in their motion to dismiss." *Id*. at 125.

Defendants do not argue prejudice or bad faith as to the claimed "immaterial" changes. They only raise an insufficient futility argument. Specifically with regard to the purported "background detail" (*see* ¶¶29-30, 67, 143, 156, 174, 190, 195, 203), the proposed additions – *e.g.*, regarding the Individual Defendants' and Defendant Smith's roles as members of BELLUS's management and/or responsibilities as to alleged misconduct – are relevant details that should be considered as part of the holistic scienter inquiry. *See Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *10 (S.D.N.Y. June 16, 2020), *reconsideration denied*, 2020 WL 4208442 (S.D.N.Y.

July 21, 2020) ("The inquiry on a motion to dismiss is as follows: 'When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?"). Thus, in light of the Supreme Court's guidance "that a plaintiff 'ought to be afforded an opportunity to test his claim on the merits," amendment should be granted. *See id*. at 120 (quoting *Foman v. Davis*, 371 U.S. 178, 183 (1962)).[2]

**B.     The PSAC's new post-Class Period facts bolster the Complaint's claims.**

Defendants characterize new post-Class Period facts as undermining Plaintiff's claims and strengthening an inference that Defendants acted innocently. Opp. at 1-2, 6-7, 9-14. Not so.

First, such arguments (more appropriate for a motion to dismiss) do not support denial of the Motion. *See e.g., Spec. Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 447 (S.D.N.Y. 2014) (granting leave to amend to include "multiple facts absent from the FAC, or not clearly stated therein, [which] would permit the Court to draw stronger inferences of scienter"); *Hanson v. Frazer,* 2013 WL 5372749, at *8 (S.D.N.Y. Sept. 24, 2013) (granting leave to replead where plaintiffs' opposition brief and oral argument cited facts that "drew inferences that are either absent from the Complaint or are not made clear there"); *George v. China Auto. Sys., Inc.,* 2012 WL 3205062, at *1 (S.D.N.Y. Aug. 8, 2012) (granting leave to amend where allegations proffered in plaintiff's opposition brief, might, if properly plead, raise a strong inference of scienter). Indeed, post-Class Period events have been found to be circumstantial evidence of scienter precluding judgment "as a matter of law." *See In re Synergen, Inc. Sec. Litig.,* 863 F.Supp. 1409 (D. Colo. 1994) ("[B]ased only on the revised Phase III protocol and Opal's post-class period presentation, a reasonable jury could infer defendants knew before Phase III was completed and the class period ended that the Phase II trial results were, at best, inconclusive.").

---

[2] Defendants factually dispute loss causation (Opp. at 19-20), but as discussed, Plaintiff has alleged the requisite "indication" of his loss and "plausible causal link." *See* ¶¶13-16, 205-17; ECF No. 67 ("Omnibus Opp.") at 23-25.

Drawing all reasonable inferences in favor of Plaintiff, as the Court must, the PSAC pleads particularized facts that give rise to a strong inference that Defendants knew or were reckless as to the fact that their statements, comparing BELLUS's RELIEF trial to competitors' trials (including baseline cough frequency comparisons), were misleading. BELLUS failed to enroll a sufficient number of patients with high baseline cough frequencies for its Phase 2 trial to be comparable to its competitors' trials. Whereas competitors had shown that similar drugs (P2X3 antagonists) worked in high-cough-frequency patients, Defendants were gambling on whether BLU-5937 would demonstrate efficacy in patients with lower cough frequencies. However, Defendants were touting the success of competitors' Phase 2 trials – success that was achieved by enrolling patients with a high average cough frequency – as an indicator that the Company's Phase 2 trial would similarly demonstrate efficacy. *See, e.g.,* ¶¶131-204. And, although investors understood there was some risk associated with clinical trials, Defendants were downplaying that risk, constantly noting the purported similarities between RELIEF and competitors' successful Phase 2 trials (including patients' cough frequency). Investors had no idea of the added risk that BELLUS was the first company to study this class of drugs on an entirely new patient population (those with materially lower cough frequencies). Moreover, that undisclosed added risk was the exact reason the Company's Phase 2 trial failed. Contrary to Defendants' arguments, therefore, Plaintiff does not take issue with the actual design of the RELIEF trial; rather, he takes issue with Defendants' repeated likening of the trial to competitors' Phase 2 trials when, as Defendants knew then and investors know now, the trials differed materially.[3]

---

[3] Thus, Defendants' cases involving trial design and management are inapposite as they did not involve misstatements likening the company's trial to competitors' trials. *See In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, 2014 WL 585658, at *9 (S.D.N.Y. Feb. 14, 2014) (Noting that "[t]he crux of plaintiffs' claim is that the design of the Phase 2 trial was flawed, and therefore the statistically significant results it generated were inherently unreliable," but leaving open the possibility of amendment if it would not be futile); *Arkansas Pub. Employees Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (declining to find actionable "statements of subjective opinion, such as

Furthermore, as previously discussed, Plaintiff has adequately alleged that Defendants "knew facts or had access to information suggesting that their public statements were not accurate"; or "failed to check information they had a duty to monitor" relating to BELLUS's Phase 2 trial for the ***only*** drug that it was developing. Mem. at 16-18; Omnibus Opp. at 23-33; *see, e.g., ECA, Loc. 134 IBEW Jt. Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 199, 202 (2d Cir. 2009) (no scienter where transactions at issue were "a minute fraction of assets on JPMC's balance sheet"). In further support of scienter, Plaintiff seeks to add three categories of allegations.

First, the PSAC alleges BELLUS's successful second Phase 2 trial, SOOTHE, to show that Defendants had the knowledge and ability to conduct a Phase 2 trial of BLU-5937 that followed the roadmap provided by at least three successful clinical studies of competing P2X3 antagonists. *See* ¶¶200-01. Specifically, BELLUS designed the SOOTHE trial to be more akin to its competitors' Phase 2 trials, setting the enrollment threshold to patients with a baseline cough frequency of $\geq 25$ c/h. ¶200. And, as a result, BELLUS showed efficacy as to those patients. ¶201. These actions simply confirm that baseline cough frequency is a material distinction between trials and that Defendants knew (and/or should have known) how to account for that distinction.

Nonetheless, Defendants misconstrue the PSAC as alleging that they knew the future results of the SOOTHE trial during the Class Period (*see* Opp. at 11-12, 19), relying on inapposite

---

that the Opdivo trial was strongly designed" where there were no facts indicating "that these statements of opinion were false"); *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *12 (S.D.N.Y. June 8, 2016) (no falsity where plaintiff alleges "that p21 is not an appropriate or accurate barometer for Kevetrin's efficacy"); *Abely v. Aeterna Zentaris Inc.*, 2013 WL 2399869, at *10 (S.D.N.Y. May 29, 2013) (no falsity where "Plaintiff does not allege that the existence of these multiple research arms was undisclosed or misleadingly described").

Plaintiff's allegations fall squarely within the holdings of *Micholle v. Ophthotech Corp.* and *Acer*. *See Ophthotech*, 2019 WL 4464802, at *12 (S.D.N.Y. Sept. 17, 2019) (finding falsity adequately alleged where defendants disclosed to investors that Phase 2 and 3 trials included different patients but misleadingly stated that "we have made no meaningful changes to the inclusion and exclusion criteria" for those trials); *Acer*, 2020 WL 3268495, at *9 (finding an "ambiguous" statement plausibly misleading because, "[a]t the motion to dismiss stage of a securities fraud action, the court reads ambiguities in challenged statements "in [the plaintiff's] favor").

cases pleading fraud by hindsight without contemporaneous facts.[4] In addition, Defendants incorrectly insinuate allegations that they knew the RELIEF trial would fail. *See* Opp. at 12-13.

Plaintiff alleges that, based on BELLUS's <u>enrollment</u> of patients with materially lower cough frequencies, Defendants knew or recklessly disregarded that the RELIEF trial faced a far greater risk of failing to meet its primary efficacy endpoint than their competitors faced. In other words, while touting how similar the RELIEF trial was to other trials that had shown efficacy, Defendants knew or should have known that BELLUS was studying a type of patient for which efficacy had never been shown (those with a lower baseline cough frequency). Yet, Defendants failed to disclose those material differences, adding risk to investors. *See, e.g.,* ¶¶10-12. Thus, "Defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." *See Ophthotech*, 2019 WL 4464802 at *17.

Second, the PSAC adds allegations about Defendant Bellini's statements made at the March 2022 Cowen Health Care Conference, showing that he was keeping track of, and "learning" from, Merck's successes and failures. *See* ¶202. Those proposed allegations further support the inference that he was monitoring that information during the Class Period as well.

Indeed, BELLUS is a small company with only 12 employees (as stated in BELLUS's September 2019 Prospectus) developing a single drug in a close race with three competitors. In that context, it is implausible that the Individual Defendants and Defendant Smith, when making

---

[4] *Coronel v. Quanta Cap. Holdings Ltd.*, 2009 WL 174656, at *27 (S.D.N.Y. Jan. 26, 2009) (no scienter where "factual allegations … boil down to the claim that Quanta announced loss estimates, and then revised the estimates upward later"); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 761 (S.D.N.Y. 2018) ("[D]efendants' serial revisions of the commercialization timeline" do not suffice to "demonstrate their culpable knowledge"); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 584 (S.D.N.Y. 2014), *aff'd*, 604 Fed. Appx. 62 (2d Cir. 2015) (That the "Recall was a much bigger problem for the company than prior quality control issues … alone does not transform the events that preceded it into evidence supporting … of scienter"); *Bristol-Myers*, 28 F. 4th at 356 (no scienter where "the success of Merck's comparable trial," defining strong expression as > 50%, was announced a few months before Defendant announced its results, defining strong expression as > 5%, as "the Complaint itself reflects the lack of consensus on the meaning of strong or high expression"); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (no falsity where "the Complaint does not allege that it was sufficiently clear when the 10-Ks were filed on March 28, 2003 and March 15, 2004 that FBR's noncompliance (in 2001) would cause a financial loss").

statements about and comparisons to competitors, ignored the following material data released by those competitors before and during the Class Period:

| Competitor's Drug | Date Phase 2 Trial Results Announced[5] | Patients' Cough Frequency (c/h) | Date Cough Frequency Released[6] |
|---|---|---|---|
| Merck's Gefapixant | 05/18/16 – 05/22/17 | 56.9; 40.3 | 05/18/16; 05/22/17 |
| Shionogi's Sivopixant | 03/14/19 | 56 | 09/13/19 – 09/15/19 |
| Bayer's Eliapixant | 07/25/19 | 35 (anecdotally) | ~ 04/01/20 |

The PSAC alleges that Defendants – armed with the knowledge of competitors' patient populations and results and the RELIEF trial's patient population – were at least reckless in making the alleged misstatements comparing those trials. *See Ophthotech*, 2019 WL 4464802 at \*17 ("[T]hat Defendants had in their possession information suggesting that" there were enrollees in the Phase 3 trial who would have been ineligible for the Phase 2b trial suffices to show that they "were reckless in representing that they had 'changed nothing' between Phase 2b and Phase 3").[7]

Third, the PSAC includes scienter allegations relating to BELLUS's post-Class Period clarification of its risk warning (¶204) (the previous version of which was false or misleading during the Class Period (¶¶139, 146, 160)). Citing irrelevant or distinguishable cases, Defendants again argue that such allegations constitute fraud in hindsight. Opp. at 16-17. But the allegations, which must be accepted as true, support that Defendants stayed abreast of their competitors' developments and contemporaneously considered their impact on BELLUS and BLU-5937.

Because the proposed changes include specific facts that support Plaintiff's claims, Defendants' own caselaw supports granting leave. *See, e.g., Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012) (remanding for leave to amend where plaintiff

---

[5] *See* ¶¶70-77, 81, 84, 92.

[6] *See* ¶¶10, 70-77, 104, 111.

[7] Defendants specifically and knowledgeably spoke about their competitors' clinical trials; thus, scienter is not an "inferential leap" as it was in *Schaffer v. Horizon Pharma plc.*, 2018 WL 481883, at \*12 (S.D.N.Y. 2018) ("[R]outine communication" and pharmacy visits did not show "scienter for the abuses allegedly occurring at those pharmacies").

had adequately alleged that cautionary language was incomplete as not informing "the investing public of the particular, factually-based uncertainties of which it was aware in the weeks leading up to the Secondary Offering"); *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97 (2d Cir. 2016) (remanding for leave to amend upon finding the alleged misconduct "hardly implausible").[8]

### C. Plaintiff adequately alleges standing, and his Securities Act claims are timely.

Defendants argue that Plaintiff did not cure purported deficiencies to bring Securities Act claims and has waived his right to assert statutory standing. Opp. at 20-24. Defendants are mistaken on both counts. First, Plaintiff's Securities Act claims are timely (*see* Omnibus Opp. at 36-37); that said, the PSAC adds further support that Defendants were on notice (¶36) and seeks to refine the claims and parties (*see* Mem. at 2-3). Second, both the Complaint and PSAC sufficiently allege personal jurisdiction and statutory standing. *See* Mem. at 18-24; Omnibus Opp. at 38 ("PLAINTIFF PURCHASED BELLUS ON US-BASED EXCHANGES"). Moreover, even if a plaintiff does not respond to a MTD argument, the court must still assess the sufficiency of the complaint rather than automatically grant a dismissal. *See e.g., James v. John Jay Coll. of Crim. Just.,* 776 F. App'x 723, 724 (2d Cir. 2019) ("[L]ack of opposition does not, without more, justify dismissal" because "the sufficiency of a complaint is a matter of law that the district court is capable of determining based on its own reading of the pleading and knowledge of the law.").

### CONCLUSION

Based on this Reply and prior briefing, Plaintiff respectfully requests that the Court grant leave to amend.

---

[8] *Cf. Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (denying leave to amend where "specific changes" were not offered for the "Amended Complaint to cure its deficiencies"); *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 157 (2d Cir. 2013) (same); *Lighthouse Fin. Group v. Royal Bank of Scotland Group, PLC*, 2013 WL 4405538, at *6 (S.D.N.Y. Aug. 5, 2013) (denying plaintiff's fourth attempt to allege a cause of action); *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 390 (S.D.N.Y. 2003) (denying second request to amend after first amendment was made with the Court's guidance); *Pettaway v. Natl. Recovery Sols., LLC*, 955 F.3d 299, 301 (2d Cir. 2020) (affirming denial of request to amend where complaint "fails to state a plausible claim").

Dated: July 8, 2022

Respectfully submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides
Velvel (Devin) Freedman
Ivy T. Ngo (*pro hac vice*)
1 SE 3rd Ave., Suite 1250
Miami, Florida 33131
(T): (786) 924-2900
ceconomides@rochefreedman.com
vel@rochefreedman.com
ingo@rochefreedman.com

*Counsel for Lead Plaintiff and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
(T): (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

11

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 8, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Constantine P. Economides
Constantine P. Economides